IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

In re:                                          Chapter 11

SHUBH HOTELS PITTSBURGH, LLC,                   Case No. 10-26337-JAD

        Debtor.

CARBON CAPITAL II REAL ESTATE
CDO 2005-1, LTD., and BLACKROCK
FINANCIAL MANAGEMENT, INC.,
as sub-special servicer to CARBON CAPITAL
II REAL ESTATE CDO 2005-1, LTD.'s special
servicer, MIDLAND LOAN SERVICES, INC.,

        Movants,              Dkt. No.


    v.


SHUBH HOTELS PITTSBURGH, LLC,

        Respondent.


**EMERGENCY MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(d)(1) and (d)(2) GRANTING RELIEF FROM THE AUTOMATIC STAY**

Movants Carbon Capital II Real Estate CDO 2005-1, Ltd., and BlackRock Financial

Management, Inc., by and through their undersigned counsel, Reed Smith LLP, files this

Emergency Motion for an Order Pursuant to, inter alia, 11 U.S.C. §§ 105(a) and 362(d)(1) and

(d)(2) Granting Relief from the Automatic Stay ("Motion"), and in support thereof states as

follows:

**Parties**

1.    Carbon Capital II Real Estate CDO 2005-1, Ltd. ("Lender"), is a Cayman Islands exempted company with limited liability, having an address in care of BlackRock, Inc., 40 East 52nd Street, New York, New York, 10022.

2.    BlackRock Financial Management, Inc. ("BlackRock", and with Lender, the "Movants" ) is a Delaware corporation, having an address of BlackRock, Inc., 40 East 52nd Street, New York, New York, 10022.  BlackRock manages and administers the hereinafter described loan as sub-special servicer to Midland Loan Services which is the special servicer to Lender, and, in that capacity, BlackRock is authorized to administer the Loan and enforce Lender's rights and remedies thereunder.

3.    Defendant, Shubh Hotels Pittsburgh, LLC ("Mortgagor"), is a Florida limited liability company with a place of business at 910 Clint Moore Road, Boca Raton, Florida, 33487, and is the record owner of the Property (as hereinafter defined).

4.    Mortgagor is also the Debtor in the above-captioned proceeding.

### Jurisdiction, Venue and Statutory Predicates

5.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(b) and (e).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E), (G) and (O).

6.    Venue of this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

7.    The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 362.

### Summary of Argument

8.    The Debtor is the owner of the property commonly known as the Hilton Hotel located at entrance of Point Park, Downtown Pittsburgh, Pennsylvania ("Hotel").  The Lender holds the first mortgage on the Hotel.  Immediately prior to the filing of the Debtor's Chapter 11 Petition, the Hilton franchise agreement was terminated by the franchisor, and, on that basis, the Lender declared another Event of Default under the Loan Agreement, accelerated the loan balance, and exercised its rights to take control of and ownership in the rents, revenues, receipts and cash accounts related to the Hotel.  The Lender also filed a Complaint to Foreclose the Mortgage, and noticed a Motion for the Appointment of a Receiver.

9.    The Debtor asserts that the Lender is under-collateralized:  (a) in the Injunction Action (defined below), the Debtor asserted that the Debtor "had a debt of approximately $49 million on the property, and the property was realistically worth only $30 million and the property had approximately $8.2 million in liens and judgment against the hotel"; and  (b) the Debtor lists the "unsecured portion of the Lender's claim to be $20 million (estimated).

10.    The Lender asserts that the Debtor has no equity in the Hotel and is without the financial resources to provide the Lender with adequate protection or to have a prospect of reorganization.

11.    The Movants seek expedited relief from the automatic stay to, *inter alia*, foreclose the Lender's interest in its collateral, and avers that further delay will significantly erode the value of the Lender's collateral.

## **Background**

12.    On or about August 17, 2007, Column Financial, Inc. ("CFI"), a Delaware corporation, and Mortgagor entered into that certain Loan Agreement (the "Loan Agreement"),

- 3 -

pursuant to which CFI extended a loan in the aggregate original principal amount of $49,600,000.00 (the "Loan") to Mortgagor.  A true and correct copy of the Loan Agreement is attached hereto as **Exhibit A** and incorporated herein by reference (the "Loan Agreement").

13.    The Loan is evidenced by an Amended and Restated Promissory Note dated January 14, 2010, from Mortgagor in favor of Lender in connection with the Loan Amendment (defined below), in the original principal amount of $49,600,000.00 (the "Note").  A true and correct copy of the Note is attached hereto as **Exhibit B** and incorporated herein by reference.

14.    The Note and Loan are secured by, *inter alia*:

a.    that certain Open End Construction Mortgage and Security Agreement dated as of June 18, 2007 and effective as of August 17, 2007 and duly recorded on August 22, 2007 with the Recorder of Deeds of Allegheny County, Pennsylvania in Mortgage Book Volume 34345, Page 431 (the "Mortgage"), which is attached hereto as **Exhibit C** and incorporated herein by reference;

b.    that Certain Assignment of Leases and Rents dated as of June 18, 2007 and effective as of August 17, 2007 and duly recorded on August 22, 2007 with the Recorder of Deeds of Allegheny County, Pennsylvania in Mortgage Book Volume 13348, Page 366 (the "Assignment of Leases"); and

c.    that certain Guaranty of Payment executed as of August 17, 2007 by Atul Bisaria for the benefit of CFI, that certain Guaranty of Completion executed as of August 17, 2007 by Atul Bisaria for the benefit of CFI, that certain Guaranty of Recourse Obligations executed as of August 17, 2007 by Atul Bisaria for the benefit of CFI (collectively, the "Guaranties").

15.    Pursuant to that certain Loan Sale Agreement dated as of August 29, 2007 between CFI and Lender, CFI agreed to sell and Lender agreed to purchase the Loan, pursuant to which CFI assigned all of its rights, title and interest in the Loan to the Lender, as noted in the Assignment from CFI to the Lender, dated August 29, 2007 and recorded on December 19, 2007 duly with the Recorder of Deeds of Allegheny County, Pennsylvania in Mortgage Book Volume 34830, Page 594 (the "Assignment"), which is attached hereto as **Exhibit D** and incorporated herein by reference.

16.    The Loan was amended by the First Amendment to Loan Agreement, dated as of January 14, 2010, a copy of which is attached hereto and marked as **Exhibit E** and incorporated herein by reference ("Loan Amendment", together with the Loan, the "Loan Agreement").

17.    Pursuant to the Loan Amendment, the Mortgage was amended by Amendment to Open-End Construction Mortgage and Security Agreement between the Mortgagor and the Lender, dated January 14, 2010, and recorded on January 28, 2010, with the Recorder of Deeds of Allegheny County, Pennsylvania in Mortgage Book Volume 37682, Page 333, which is attached hereto as **Exhibit F** and incorporated herein by reference, (the "First Amended Mortgage" and together with the Mortgage, the "Mortgage").

18.    In addition to the Mortgage and Assignment of Leases, the Lender also perfected its interest in that collateral subject to the Loan Agreement, by, *inter alia*, filing UCC Financing Statements with the Allegheny County Department of Real Estate at No. 68049, and No. 68168, and No. 68866, copies of are attached hereto marked as **Exhibit G** and incorporated herein by reference; together with a financing statement filed against the Mortgage with the Secretary of State of Florida, copies of are attached hereto marked as **Exhibit H** and

incorporated herein by reference (Exhibit G and Exhibit H collectively referred to as the "UCC's").

19.    The property secured by, *inter alia*, the Mortgage and UCC's include all that real and personal property described in the **Exhibit I**, attached hereto and incorporated herein by reference (the "Property").

20.    Pursuant to the Amended Loan, Atul Bisaria executed and delivered, in favor of Lender, an Amended and Restated Guaranty of Recourse Obligations (the "Amended Recourse Guaranty"), a copy of which is attached hereto marked as **Exhibit J** and incorporated herein by reference.

21.    Management and use of the Rents generated by the Property was governed by three separate agreements, the Loan Agreement, the Blocked Account Agreement and the Cash Management Agreement.  Under Section 2.5 of the Loan Agreement, all Rents are required to be deposited into the Lockbox Account.  "Rents" includes all rents under leases, hotel room and other revenue and any other rent, revenues or royalties generated by the operation of the hotel. The Lockbox Account and Cash Management Account ("Accounts") are under the sole dominion and control of Lender and only the Lender has the right to make withdrawals from the Lockbox Account and the Cash Management Account.  Lender has a first priority security interest in the Lockbox Account and is the holder of the Cash Management Account.

22.    Pursuant to the Amended Loan, the Mortgagor and the Lender also entered into the Post Closing Agreement, dated January 14, 2010, a copy of which is attached hereto as **Exhibit K** and incorporated herein by reference (the "Post Closing Agreement, and together with the Loan Agreement, the Note, the Mortgage, the Assignment of Leases, the UCC's and each of

the other loan documents, and all other agreements, instruments or documents evidencing,

securing or otherwise delivered in connection with the Loan, the "Loan Documents").

     23.    The Mortgage is an "open-end mortgage" as defined in 42 Pa.C.S.A. §8143.

     24.    By letter dated July 18, 2010, the Movants notified the Debtor that Events of

Default had occurred under the Loan Documents, ("July Default Letter") a copy of which is

attached hereto as **Exhibit L** and incorporated herein.  In the July Default Letter, the Movants

revoked the Debtor's license to collect the Rents (as defined in the Assignment of Rents).

     25.    On July 21, 2010, the Debtor filed an action in the Court of Common Pleas of

Allegheny County, Pennsylvania, against, inter alia, the Movants, seeking to bar the management

company, previously approved by the Lender and the Debtor, from exercising its responsibilities,

at No. GD. 10-13590 ("Injunction Action").  The Debtor, Guarantor, and Movants entered into a

forbearance agreement embodied in a Stipulated Order filed at the Injunction Action dated July

23, 2010 (the "Stipulated Order"), a copy of which is attached hereto as **Exhibit M** and

incorporated herein.

     26.    The Debtor failed to cure certain of the Specified Events of Default set forth on

Exhibit A to the Stipulated Order and created, suffered and/or incurred several additional Events

of Default under the Stipulated Order including, without limitation, failure to provide

information necessary to complete the Lender's audit.

     27.    By letter dated September 1, 2010, HLT Existing Franchise Holding, LLC, a

Delaware limited liability company, successor in interest to Hilton Inns, Inc. ("Hilton")

terminated that certain Franchise License Agreement between Hilton, as franchisor, and Debtor,

as franchisee, dated May 19, 2006 (the "Franchise Agreement"), a copy of which notice is

attached hereto as **Exhibit N** and incorporated herein ("Termination Letter").

28.     Termination of the Franchise Agreement is an Event of Default under Section 8.1(a)(xvi) of the Loan Agreement for which no cure period is afforded.

29.     By letter dated September 3, 2010, Movants accelerated the debt due based on the Events of Default and demanded immediate payment of the Indebtedness (as hereinafter defined) (the "Acceleration Letter"), a copy of which is attached hereto as **Exhibit O** and incorporated herein.

30.     In the Acceleration Letter, Movants again restated that pursuant to the July Default Letter, the Lender had revoked the Debtor's license to the Rents.

31.     Because one or more Events of Default have occurred and are continuing under the Loan Documents and the Stipulated Order, including, without limitation, Hilton's termination of the Franchise Agreement, the Lender is entitled, *inter alia*, to take possession of its cash collateral, and foreclose the Mortgage.

32.     On September 3, 2010, Movants filed a Complaint in Mortgage Foreclosure in the Court of Common Pleas of Allegheny County at No. GD. 10-16673 ("Foreclosure Complaint"). A copy of the Foreclosure Complaint (without exhibits) is attached hereto and marked as **Exhibit P**.

33.     On September 3, 2010, Movants served on the Debtor an Emergency Motion to Appoint a Receiver, to be heard by the Court of Common Pleas on September 7, 2010 at 9:30 a.m. A copy of the Receiver Motion (without exhibits) is attached hereto and marked as **Exhibit Q**.

34.     Movants were advised on September 7, 2010 at 9:30 a.m., that the Debtor had filed its chapter 11 Petition with this Court immediately prior thereto.

35.     The Mortgage is the first Mortgage lien on the Property.

- 8 -

36.   Mortgagor has created, caused, incurred, committed, and suffered certain Events of Default under the Loan Documents; the Events of Default have not been cured and cannot be cured.

37.   Pursuant to Section 15.4 of the Mortgage and section 10.13 of the Loan Agreement, Lender is entitled to Costs (as that term is defined in the Mortgage), including, but not limited to, attorneys' fees and receivers' fees, and all costs and expenses incurred in connection with such fees.  All such Costs shall be included as additional indebtedness secured by the Mortgage and bear interest at the Default Rate of fifteen percent (15%) per annum as set forth in section 2.2.5 of the Loan Agreement (as amended by Section 2.1(a) of the First Amendment) until paid in full.

38.   As a result of such Events of Default, Lender accelerated the debt and declared all sums due under the Loan Documents immediately due and payable.  (See, for example, Article 2 of the Note, authorizing acceleration.)  Thus, the following amounts became due to Lender, and remain outstanding, as of September 3, 2010:

| | |
|---|---|
| Principal Balance | $ $49,600,000.00 |
| Interest | $       66,666.67 |
| Late Fees | $              0.00 |
| Total Due as of | $* 49,666,666.67 |

* Plus costs, legal fees, and other expenses due as of September 3, 2010 as provided by the Loan Agreement, Mortgage and other Loan Documents; plus

    a.  Interest accruing on the  Principal Balance of $49,600,000.00, for each day after September 3, 2010, until the Principal Balance is paid in full at the Default Rate of Interest of 15% per annum; plus

    b.  Late fees, costs, legal fees, satisfaction fees, and other expenses due or becoming due after September 3, 2010, or as otherwise provided by the Loan Agreement, Mortgage and other Loan Documents; plus

    c.  All amounts advanced by the Movants pursuant to the Loan Documents (the "Additional Advances" as defined in the order)

together with interest thereon; plus

d.   Any additional amounts expended by the Movants for the
payment of taxes, assessments, maintenance charges, insurance
premiums or costs incurred for the protection of the Property or
the lien of the Mortgage, expenses incurred by the Plaintiff by
reason of default by the Mortgagor under the Mortgage or
advances made to enable completion of the any of the
improvements for which the Loan Agreement was originally
made, together with interest thereon in accordance with the
Mortgage and Note;

collectively, referred to herein as the "Indebtedness."

39.    The Debtor asserts in its List of Twenty Largest Unsecured Creditors, that the

Lender's claim under the Note is under-collateralized.

**Relief Requested**

40.    By this Motion, Movants seek entry of an order pursuant to Sections 105(a) and

362(d)(1) and (d)(2) of the Bankruptcy Code granting relief from the automatic stay provisions

of Section 362(a) of the Bankruptcy Code to authorize the Movants to proceed with the

Foreclosure Action, including but not limited to the Receiver Motion.

**Basis for Relief Requested**

41.    Section 362(d) of the Bankruptcy Code provides that

A court shall grant relief from the stay provided under subsection (a) of this
section, such as by terminating, annulling, modifying, or condition such stay --

(1)  for cause, including the lack of adequate protection of an interest in property
of such party in interest;

(2)  with respect to a stay of an act against property under subsection (a) of this
section, if –

(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization….

11 U.S.C. § 362(d)(1) and (d)(2)[1].

42.    While "equity" is not defined in Section 362(d)(2), or in any other provision of the Bankruptcy Code, the "classic test" utilized by courts to determine equity compares the total amount of liens encumbering the property against the current value of the property.  In re Indian Palms Associates, Ltd., 61 F.3d 197, 206-207 (3rd. Cir. 1995).  This calculation includes all liens, both junior and senior, and whatever remains is deemed the debtor's equity in the property. Id. at 207.

43.    It is universally accepted that "Section 362(d)(1) and 362(d)(2) are disjunctive; the Court *must* lift the stay if the Movant prevails under either of the two grounds."  *In re Kaplan Breslaw Ash*, 264 B.R. 309, 321 (Bankr. S.D.N.Y. 2001) (emphasis added); *see also In re JII Liquidating, Inc.*, 344 B.R. 875, 881 (Bankr. N.D. Ill. 2006) (noting the alternative grounds for stay relief).

44.    The Debtor asserts that the Lender is under-collateralized: (a) in the Injunction Action, the Debtor asserted that the Debtor "had a debt of approximately $49 million on the property, and the property was realistically worth only $30 million and the property had approximately $8.2 million in liens and judgment against the hotel"[2]; and (b) the Debtor lists the "unsecured portion of the Lender's claim to be $20 million (estimated)."[3]  The Lender asserts that the Debtor has no equity in the Hotel and is without the financial resources to provide the Lender with adequate protection or to have a prospect of reorganization.

---

[1]   Movants reserve and preserve their rights to assert, as may be appropriate, as a basis for relief, either section 362(d)(3) or (d)(4).

[2]   Paragraph 10 of the Debtor's Injunction Complaint.

[3]   Debtor's List of Top Twenty Unsecured Creditors, Docket No. 3.

45.    Furthermore, the Debtor's interest in the Rents was extinguished pre-petition when the owner defaulted and the Lender exercised its rights under the Assignment of Rents. *See*, <u>Sovereign Bank v. Schwab</u>, 414 F.3d 450, 453 (3d Cir. 2005).

46.    Once the proponent of the motion for relief proves that it is undersecured, the burden shifts to the debtor to prove that the collateral in controversy is necessary to the reorganization plan.  <u>United Sav. Ass'n of Texas v. Timers of Inwood Forest Associates, Ltd.</u>, 484 U.S. 365, 375 (1988).  In order to overcome this burden, the debtor must show that "there is a reasonable possibility of a successful reorganization within a reasonable period of time" and that this property is essential for the prospective plan.  <u>Id.</u> at 376.

47.    Because the Debtor's interest in Rents was extinguished pre-petition, because the Hilton Franchise was terminated, and because the Debtor as asserted that the Lender is undercollateralized, (a) the Lender lacks adequate protection in its interest in the Property, and (b) there is not a reasonable possibility of a successful reorganization within a reasonable period of time.

48.    To the best of the Movants information, the Debtor has no cash with which to operate the Property.

49.    Under the circumstance present in this case, the Movants are entitled to relief from the automatic stay imposed by Section 362(a).


### <u>Need For Emergency Relief</u>

50.    It is imperative that an expedited hearing be held on the Motion to avoid the irreparable harm which would most assuredly result if these matters were adjudicated under the timeframes of the Court's regular docket.

51.   Value of the Property will decline rapidly without effective management, acceptable to the Lender and to Hilton, and significant cash with which to operate the Hotel.  The Debtor has not offered the Lender adequate protection of its interest.

52.   If Relief from Stay is granted, then the Movants can proceed with the appointment of a Receiver in the Foreclosure Action to operate the Property pending foreclosure sale.

53.   Where, as in here, a debtor lacks equity in property, there "may be no reason to make the creditor wait until the final distribution of the estate to get what it bargained for, and indeed early release of the collateral may aid administration of the estate by allowing a quicker determination of the amount of the undersecured creditor's unsecured claim." In re Vitreous Steel Prods. Co., 911 F.2d 1223, 1231-32 (7th Cir. 1990) (discussing the purpose of § 362(d)). The Lender, therefore, is entitled to immediate relief from stay in order to exercise its non-bankruptcy rights with respect to the Property.

54.   The request for an expedited hearing is caused by the events that preceded the Debtor's filing of Petition, including the Debtor's defaults under the Loan Documents and the Hilton Franchise Agreement, and the prepetition exercise of the Lender's rights under the Loan Documents and Hilton's rights under the Franchise Agreement, and is not caused by any lack of diligence by the Movants or their counsel.

55.   Movants reserve their rights to assert additional support for the relief herein sought.

WHEREFORE, for the reasons stated herein, Movants respectfully request that this Court: (a) enter an order, in the form attached hereto, which schedules an expedited hearing on the Motion at the earliest possible time; (b) grant relief from the automatic stay to permit the

Movants to exercise its non-bankruptcy rights with respect to the Property; (c) order that such

stay relief is effective immediately and that the fourteen day delay in the effectiveness of such

relief is waived, and (d) grant such other and further relief as this Court deems appropriate.


Respectfully submitted,

REED SMITH LLP


*/s/ Robert P. Simons*
Robert P. Simons, Esq.
Pa. ID No. 48892
E-mail:  rsimons@reedsmith.com

Amy M. Tonti, Esq.
Pa. I.D. No. 33468
E-mail:  atonti@reedsmith.com

Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Phone:  (412) 288-3131
Fax:       (412) 288-3063

Attorneys for Plaintiffs, Carbon Capital II Real
Estate CDO 2005-1, Ltd. and BlackRock
Financial Management, Inc., as sub-special
servicer to Carbon Capital II Real Estate CDO
2005-1, Ltd.'s special servicer, Midland Loan
Services, Inc.

Dated:  September 8, 2010