IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 10-26337 |
| SHUBH HOTELS PITTSBURGH, LLC., <br> Debtor. <br> _____ | Chapter 11 <br><br> Judge Jeffery A. Deller |
| SHUBH HOTELS PITTSBURGH, LLC., | Document No. _____ |
| Movant. | Hearing Date and Time: _____, at _____ __.m. |
| v. | |
| NO RESPONDENTS. | Response Date and Time: _____, at _____ __.m. |

**DEBTOR'S EXPEDITED MOTION FOR AN ORDER AUTHORIZING IT TO USE CASH COLLATERAL OR IN THE ALTERNATIVE TO OBTAIN ALTERNATIVE DEBTOR IN POSSESSION SENIOR LENDING FACILITY**

Shubh Hotels Pittsburgh, LLC (the "Debtor"), through its proposed counsel and by this motion (the "Motion"), seeks entry of an Order authorizing it to use cash collateral in which BlackRock Financial Management, Inc. ("BlackRock") claims an interest (the "Cash Collateral") and in support of that request respectfully states as follows:

I.  **REQUEST FOR EXPEDITED HEARING**

1. Pursuant to local Bankruptcy Rule of Procedure 9013-2, the Debtor moves for a hearing on this Motion on an Expedited Basis. As set forth below, the Debtor owns and operates the Pittsburgh Hilton Hotel. The Debtor has urgent need for the use of cash collateral. Alternatively, the Debtor has arranged for a Replacement Lender to provide a Senior Lending Facility.

2. The Debtor requires use of cash collateral from alleged collateral of BlackRock or new funds from a Replacement Lender to pay wages to employees and adequately provision the hotel for continued operations.

3. The need for the expedited hearing has not been caused by any lack of due diligence on the part of the attorneys or the attorneys' client. It has been brought about solely by the circumstances beyond their control, most notably, the expedited filing of the chapter 11 petition herein.

## II.  BACKGROUND

4.On September 7, 2010, (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

5.The Debtor continues to operate its businesses and manage its property as a debtor in possession pursuant to 11 U.S.C. §§1107 and 1108.  No trustee, examiner or committee has yet been formed or appointed in the Debtor's case.

6.Pursuant to 28 U.S.C. §1334(a), this Court has jurisdiction over this Motion, which is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A), (M) and (O).

7.Venue in this district is proper pursuant to 28 U.S.C. §1409.

8.The statutory predicates for the relief sought herein are 11 U.S.C. §§361 and 363 or 364.

## III.  FACTUAL BACKGROUND

9.The Debtor owns and operates the Pittsburgh Hilton Hotel. The Debtor's ownership arises from an acquisition of the hotel facility from Hilton Hotels International which was acquired on or about May 22, 2006.  Financing for the acquisition was obtained, in part, from BlackRock's predecessor in interest. The Pittsburgh Hilton Hotel is the largest hotel in the City of Pittsburgh, with more than 700 guest rooms.

10.As part of the acquisition and financing, BlackRock became the Debtor's principal secured creditor, and as of the Petition Date was owed a total of $49,600,000.

11.It is important to note that as of the date of the filing, the Debtor was current on all of its non-accelerated financial Obligations owed to BlackRock, a rarity for cases before this court.

12. To secure the Debtor's performance of its financial Obligations, Blackrock claims a first lien on, and security interest in, substantially all of the Debtor's real and personal assets including cash and non-cash revenues from its hotel operations (i.e. "Cash Collateral"). In addition, Blackrock also holds the personal guaranty of Atul Bisaria, the Managing Member of the Debtor.

13. In the past several months the operations of the hotel have been strained for a variety of reasons which will be more fully reviewed at the hearing on this matter.

14. On September 3, 2010, Blackrock commenced a Mortgage Foreclosure Proceeding citing non-monetary defaults under the Lending Documents. BlackRock further sought the appointment of a contractual state court receiver to safeguard the interests of BlackRock but no other creditors. Thus, the Debtor filed the within Chapter 11 case to preserve on-going hotel operations and resolve the impasse that currently exists at the hotel.

## IV. RELIEF SOUGHT – USE OF CASH COLLATERAL

15. The Debtor has immediate and dire need for Cash Collateral. As evidenced by the Debtor's Expedited Motion of Debtor for Entry of an Order Authorizing the Debtor to Pay Pre-Petition Payroll and Employee Benefit Expenses Pursuant to 11 U.S.C. § 105(a) and In Connection With 11 U.S.C. § 507(a)(4) and (5) that was filed on even date herewith, the Debtor as a duty to insure that the wages and benefits of all of its employs are timely paid. The next pay date is Thursday, September 9, 2010.

16. Additionally, during the weekend of September 10 to 12, 2010, in excess of 500 rooms per night have been reserved at the hotel to host Pittsburgh Steelers and Pittsburgh Panther football fans. It is critical that these guests are treated hospitably and that the hotel is adequately provisioned with food, beverages and other amenities for these guests.

17. By this Motion, the Debtor seeks to use the Cash Collateral in the ordinary course of its business through September 30, 2010. The Debtor expects that what constitutes Cash Collateral in this within case will become an issue of legal dispute. On September 3, 2010, counsel for BlackRock issued a letter to the Debtor alleging, inter alia, that the cash revenues from the Debtor's hotel operations constitute "rents"; that such rents were subject to an existing agreement regarding the Assignment of Leases and Rents; and that the "license" to use such rents had been terminated prior to the filing of the

voluntary petition. As such, BlackRock asserts that revenue from the hotel operations are not property of the estate and, therefore, not cash collateral.

18. The Debtor asserts that BlackRock position is completely opposite to 11 U.S.C. §552(d)(2) which provides:

> Except as provided in sections 363, 506 (c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546 (b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property or the fees, charges, accounts, or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties, then such security interest extends to such rents and such fees, charges, accounts, or other payments acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

In the other words, the revenue of the hotel remains property of the estate subject to the jurisdiction of this court.

19. As of the Petition Date, the Cash Collateral totaled approximately $400,000 comprised of both cash and credit card receivables representing revenue obtained for recent hotel room stays of the transient guests.

20. According to the projections that the Debtor will present at the hearing on this Motion covering the period from the Petition Date through September 30, 2010 (the "Projection Period"), Cash Collateral will either stay reasonably stable or actually increase during the Projection Period. Accordingly, the Debtor does not anticipate any diminution in the value of the Cash Collateral for which it must provide adequate protection. To be clear, the Debtor does not by this Motion seek to compel or authorize an advance of any additional loan proceeds from BlackRock, rather, the Debtor merely seeks to use existing Cash Collateral.

21. Notwithstanding this, the Debtor recognizes that it must, as a condition to using the Cash Collateral, nonetheless provide against any diminution. Therefore, the Debtor proposes that BlackRock be granted the following as adequate protection:

    (a) BlackRock will be granted a post-petition security interest in, and a lien upon, all of the categories and types of collateral in which it held a security interest as of the Petition Date, but such post-petition security interest shall only be to the same extent, and have the same priority, as its security interest as of the Petition Date.

                      All security interests to be granted to BlackRock hereunder as adequate protection will, but only to the extent they are properly perfected as of the Petition Date, be deemed duly perfected under all applicable laws, and no further notice, filing, recordation, or Order will be required to perfect such interest;

(b)      In the event that the adequate protection granted in the above fails to protect the interest of BlackRock <u>in the Cash Collateral</u>, BlackRock will be granted (but only to extent of such diminution) a superpriority administrative claim which will have priority of the kind specified in Bankruptcy Code § 507(b) over any and all administrative expenses specified in Bankruptcy Code § 507(a)(1), except that such superpriority administrative claim will be subject to and subordinate to wages and benefits due employees of the Debtor and the related taxes, the fees of professionals as approved by the Bankruptcy Court and the fees due the United States Trustee; and

(c)      The Debtor shall pay to BlackRock on a monthly basis all post-petition interest that will accrue under the Term Loan, the Revolver and the L/C Facility.

## V. RELIEF SOUGHT – ALTERNATIVE LENDING FACILITY PURSUANT TO 11 USC § 364(D)

22.     In the event that the Debtor and BlackRock cannot reach consensual accord on the use of Cash Collateral, or that this Court declines to permit use of Cash Collateral, the Debtor has received an offer from Dr. Kiran Patel ("Replacement Lender") to provide a Senior Debtor in Possession Lending Facility ("Senior Lending Facility"). This Senior Lending Facility would be in the amount of $1,000,000.00. This Senior Lending Facility has agreed to provide immediately available cash funds contingent only upon providing the Replacement Lender with a post-petition, super-priority lien senior to all existing liens or claims of any creditor or party interest. The exact terms of this Lending Facility are being negotiated as this Motion is being filed but will be presented at the Hearing on this Motion and filed of record as soon as it becomes available.

## VI. REQUEST FOR INTERIM RELIEF

23.     Fed. R. Bankr. P. 400(b)(2) provides in part that "[t]he court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 15 days after service of the motion." However, the court may conduct a preliminary hearing "before such 15 day period, but the

court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."

24. As set forth above, the Debtor's inability to use cash collateral will cause immediate and irreparable harm to the estate - if the Debtor cannot pay its employees and certain of its vendors on time, the Debtor simply will have no business to reorganize. Confronted with this reality and at the same time cognizant of the mandates of Fed. R. Bankr. P. 4001 with respect to notice, the Debtor requests that, prior to the final hearing on the Motion, it be permitted to use Cash Collateral to pay only its employees' wages and salaries and the related taxes and benefits and ordinary course post-petition vendor claims not to exceed an amount approved by the Court. The detail to substantiate this request will be presented at the hearing on this Motion.

## VII.  CLAIMS NOT ADDRESSED BY THIS MOTION

25. In the ordinary course of its business, the Debtor purchases various products that are used in the hotel operations or that are subsequently re-sold to the hotel guests. Certain of these vendors or creditors that provided such products may assert reclamation claims under 11 U.S.C. §546(c), for product received by the Debtor within the forty-five (45) day period prior to the Petition Date (the "Reclamation Creditors"). Therefore, these Reclamation Creditors may assert an interest in the Cash Collateral generated from the sale of such product, as well as for claims under Section 503(b)(9) of the Code ("Reclamation Claims"). These Reclamation Claims are likely subordinated to the security interests of BlackRock, pursuant to 11 U.S.C.§ 546 (c)(1).

26. Further, pursuant to §§ 503(a)(9), 546(c)(1)(B) and 546(c)(2), vendors who provided goods within twenty (20) days of the Petition Date may be entitled to Chapter 11 administrative priority status ("Administrative Claims").

27. Finally, other creditors may assert an interest in the Cash Collateral by virtue of certain financing agreements and Uniform Commercial Code filings (the "Lessor Claims").

28. The validity of these Reclamation Claims, Administrative Claims and Lessor Claims can only be determined after notice and hearing by this Court and with prior notice to BlackRock. These claims will need to be resolved during the case by a process to be established during the case and are not the subject of this Motion nor are they entitled to the benefits of the interim Cash Collateral requested herein.

## VIII.  NOTICE

29. Copies of this Motion were served on the following parties: (i) Office of the United States Trustee for the Western District of Pennsylvania; (ii) Internal Revenue Service; (iii) Pennsylvania Department of Tax and Revenue; (iv) the Debtor's 20 largest unsecured creditors; and (v) BlackRock.  In light of the fact that no trustee, examiner, or creditors' committee has been appointed in this case, the Debtor submits that no further notice need be given.

WHEREFORE, for the reasons set forth above, the Debtor respectfully requests that it be permitted to use the Cash Collateral through the Projection Period on the terms proposed herein, or, alternatively approve the Senior Lending Facility.


Dated:  September 8, 2010   Respectfully submitted,
   Rudov & Stein, P.C.


   */s/ David K. Rudov*
   David K. Rudov, Esq.
   drudov@rudovstein.com
   Pa. I.D. # 35579

   100 First Avenue, Suite 500
   First & Market Building
   Pittsburgh, PA 15222
   Tel:    412-281-7300

        AND


   */s/ Scott M. Hare*
   Scott M. Hare, Esquire
   scott@scottlawpgh.com
   Pa. I.D. # 63818

   1806 Frick Building
   437 Grant Street
   Pittsburgh, PA  15219
   Tel:    412-338-8632

   Attorneys for the Debtor