IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE:<br><br>SHUBH HOTELS PITTSBURGH, LLC.,<br><br>    Debtor,<br><br><br><br>SHUBH HOTELS PITTSBURGH, LLC.,<br><br>    Movant.<br><br>        v.<br><br>CARBON CAPITAL II REAL ESTATE CDO 2005-1, LTD., and BLACKROCK FINANCIAL MANAGEMENT, INC., as sub-special servicer to CARBON CAPITAL II REAL ESTATE CDO 2005-1, LTD.'s special servicer, MIDLAND LOAN SERVICES, INC.,<br><br>    Respondent. | Bankruptcy Case No. 10-26337<br><br>Chapter 11<br><br>Judge Jeffery A. Deller<br><br>Document No. _____<br>Related to: Doc. No. 13<br><br><br>Hearing Date and Time:<br>September 10, 2010, at 9:30 am<br><br>Response Date and Time: _____, at _____ ___.m. |

### STIPULATED BRIDGE ORDER APPROVING STIPULATION RELATING TO PAYMENT OF OPERATING EXPENSES AND PAYROLL PENDING INTERIM CASH COLLATERAL HEARING

WHEREAS, the Debtor has filed an Emergency Motion seeking an Order Authorizing the Debtor to Pay Certain Pre-petition Payroll and Employee Benefits Expenses pursuant to 11 U.S.C. § 105(a) and in connection with 11 U.S.C. § 507(a)(4) and (5) ("**Prepetition Pay Motion**", Dkt No. 12) and an Emergency Motion Authorizing the Debtor to Use Cash Collateral ("**Cash Collateral Motion**", Dkt. No. 13);

US_ACTIVE-104491466.3

WHEREAS, Carbon Capital II Real Estate CDO 2005-1, Ltd., and BlackRock Financial Management, Inc., (collectively for the purpose herein, the "**Lender**") filed an Emergency Motion for an Order Pursuant to, inter alia, 11 U.S.C. §§ 105(a) and 362(d)(1) and (d)(2) Granting Relief from the Automatic Stay ("**Motion for Relief**")(Dkt. No. 7); and

WHEREAS, the Debtor and the Lender have agreed to stipulate to payment of certain operating expenses (as more fully set forth below) in this order intended to be a bridge order (proposed "**Bridge Order**") pending the cash collateral hearing on the Cash Collateral Motion to be rescheduled;

NOW THEREFORE, the Debtor and the Lender stipulate as follows:

1.      The Lender asserts that the ownership, management and use of the **Rents** generated by the Pittsburgh Hilton (the "**Property**") is governed by three separate agreements between and among, inter alia, the Debtor and the Lender:  the Loan Agreement, the Blocked Account Agreement and the Cash Management Agreement.

2.      The Lender asserts that under Section 2.5 of the Loan Agreement, all Rents are required to be deposited into the Lockbox Account.  Rents includes all rents under leases, hotel room and other revenue and any other rent, revenues or royalties generated by the operation of the hotel.  The Lockbox Account and Cash Management Account are under the sole dominion and control of Lender and only the Lender has the right to make withdrawals from the Lockbox Account and the Cash Management Account.  A Cash Sweep Period is currently in place. During a Cash Sweep Period, all Rents are swept daily from the Lockbox Account daily to the Cash Management Account.

- 2 -

US_ACTIVE-104491466.3

3.     The Lender and the Debtor dispute certain legal issues with respect to, *inter alia*, the Rents ("Disputes"):  the Lender asserts ownership in the Rents; the Debtor maintains the Rents are property of the estate subject to the Lien of the Lender under section 552(b)(2) of the Bankruptcy Code.

4.     Notwithstanding the Dispute, the Debtor and the Lender acknowledge the need to pay current operating expenses to preserve the Property.

5.     The Debtor reaffirms the existing terms and conditions of existing financing documents with the Lender.

6.     Subject to the provisions of this Stipulated Bridge Order being approved by the Bankruptcy Court, the Lender agrees to fund from the Cash Management Account, ordinary operating expenses of the Property until September 15, 2010 as set forth on the attached Interim Operating Budget (attached as Exhibit #1), provided that: (a) the Debtor does not interfere with the deposit of Rents into the Lock Box Account; (b) there are sufficient funds in the Cash Management Account to pay the requests based on the Interim Operating Budget; and (c) no Insider (as defined in the Bankruptcy Code) receives any distribution.

    a.  The Prepetition Pay as set forth in the Prepetition Pay Motion is included in the Interim Operating Budget.

    b.  To the extent that the Sales Tax collected by the Debtor is deposited into the Lock Box Account or the Cash Management Account, then such amounts shall be paid when due to the Commonwealth of Pennsylvania, pursuant to and in accordance with Rule 2015-1 of the Local Rules and Local Court Procedure #2 from the Cash Management Account.  To the extent that Sales Tax collected by the Debtor is not

US_ACTIVE-104491466.3

deposited into the Lock Box Account or the Cash Management Account, then

such amounts shall be segregated in an independent account for the timely filing

with the timely returns by the Debtor, and paid when due to the Commonwealth

of Pennsylvania, pursuant to and in accordance with Rule 2015-1 of the Local

Rules and Local Court Procedure #2.

7.      The hearing on the Cash Collateral Motion, and to determine the interim use of

Cash Collateral, shall be continued and will be heard contemporaneously with the Motion for

Relief, currently scheduled for September 15, 2010.  Responses to the Cash Collateral Motion

shall not be required to be filed until September 14, 2010 at 2:30 p.m.

8.      Should a final order be entered determining that the advances made from the Cash

Management Account as authorized in this Stipulated Bridge Order were made from property of

the Debtor's estate, or if property in which the Lender has a security interest is used prior to a

Final Cash Collateral Order, then the Lender shall be entitled to adequate protection pursuant to,

*inter alia*, sections 361 and 552 of the Bankruptcy Code, including but not limited to:

a.   replacement liens on all of the property of the Debtor's estate to the same extent
     and priority as existed at the date of the bankruptcy; and

b.   superpriority administrative claims to the extent of the diminution in the value of
     the Lender's collateral after the date of the Petition.

9.      The prepetition liens of the Lender shall be continued post-petition as to both

prepetition and postpetition assets, but the value of the Lender's liens shall not be greater

postpetition than the value thereof at the time of the filing of the Petition, plus accruals and

advances thereafter, and minus payments to the Lender thereafter.  No additional financing

- 4 -

US_ACTIVE-104491466.3

statements or mortgages need be filed to prefect such postpetition liens and security interests (but

may be filed if the Lender chooses).

10.     The Lender and the Debtor expressly reserve all rights to address all legal and

factual issues, including but not limited to, the ownership of the Rents.

11.     Pursuant to General Court Procedures #10.A.2.j, the Lender and Debtor agree the

use of Cash Collateral under this Stipulated Bridge Order expires at 12:01 a.m. September 16,

2010.

Dated:  September 9, 2010

Respectfully submitted,
Rudov & Stein, P.C.


*/s/ David K. Rudov*
David K. Rudov, Esq.
drudov@rudovstein.com
Pa. I.D. # 35579

100 First Avenue, Suite 500
First & Market Building
Pittsburgh, PA 15222
Tel:    412-281-7300

        AND


*/s/ Scott M. Hare*
Scott M. Hare, Esquire
scott@scottlawpgh.com
Pa. I.D. # 63818

1806 Frick Building
437 Grant Street
Pittsburgh, PA  15219
Tel:    412-338-8632

Attorneys for the Debtor

        AND


*/s/ Robert P. Simons*
Robert P. Simons, Esq.
Pa. ID No. 48892

- 5 -

E-mail:  rsimons@reedsmith.com

Amy M. Tonti, Esq.
Pa. I.D. No. 33468
E-mail:  atonti@reedsmith.com

Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222-2716
Phone:  (412) 288-3131
Fax:      (412) 288-3063

Attorneys for Plaintiffs, Carbon Capital II Real
Estate CDO 2005-1, Ltd. and BlackRock Financial
Management, Inc., as sub-special servicer to Carbon
Capital II Real Estate CDO 2005-1, Ltd.'s special
servicer, Midland Loan Services, Inc.

US_ACTIVE-104491466.3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

SHUBH HOTELS PITTSBURGH, LLC.,

            Debtor,


SHUBH HOTELS PITTSBURGH, LLC.,

            Movant.

            v.

CARBON CAPITAL II REAL ESTATE
CDO 2005-1, LTD., and BLACKROCK
FINANCIAL MANAGEMENT, INC.,
as sub-special servicer to CARBON CAPITAL
II REAL ESTATE CDO 2005-1, LTD.'s
special servicer, MIDLAND LOAN
SERVICES, INC.,

            Respondent.

Bankruptcy Case No. 10-26337

Chapter 11

Judge Jeffery A. Deller

Document No. _____
Related to: Doc. No. 13


Hearing Date and Time:
September 10, 2010, at 9:30 am

Response Date and Time: _____, at
_____ ___.m.


**BRIDGE ORDER APPROVING STIPULATION RELATING TO PAYMENT OF OPERATING EXPENSES AND PAYROLL PENDING INTERIM CASH COLLATERAL HEARING**

AND NOW, this _____ day of September, 2010 after due consideration, it is hereby ORDERED, ADJUDGED and DECREED that:

1.      The above proposed Stipulated Bridge Order is hereby approved.

2.      The Court shall issue a new Hearing Notice on the Cash Collateral Motion, to be heard contemporaneously with the hearing on the Motion for Relief on September 15, 2010; responses to the Cash Collateral Motion shall not be required to be filed until September 14,

US_ACTIVE-104491466.3

2010 at 2:30 p.m.

3.      Should a final order be entered determining that the advances made from the Cash Management Account as authorized in this Stipulated Bridge Order were made from property of the Debtor's estate, or if property in which the Lender has a security interest is used prior to a Final Cash Collateral Order, then the Lender shall be entitled to adequate protection pursuant to, *inter alia*, sections 361 and 552 of the Bankruptcy Code, including but not limited to:

   a. replacement liens on all of the property of the Debtor's estate to the same extent and priority as existed at the date of the bankruptcy; and

   b. superpriority administrative claims to the extent of the diminution in the value of the Lender's collateral after the date of the Petition.

4.      The prepetition liens of the Lender shall be continued post-petition as to both prepetition and postpetition assets, but the value of the Lender's liens shall not be greater postpetition than the value thereof at the time of the filing of the Petition, plus accruals and advances thereafter, and minus payments to the Lender thereafter.  No additional financing statements or mortgages need be filed to prefect such postpetition liens and security interests (but may be filed if the Lender chooses).

IT IS SO ORDERED.

BY THE COURT,

_____

US_ACTIVE-104491466.3