IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>SHUBH HOTELS PITTSBURGH, LLC,<br>Debtor.<br><br>―――――――――――――――――――<br>CARBON CAPITAL II REAL ESTATE CDO 2005-1, LTD., and BLACKROCK FINANCIAL MANAGEMENT, INC., as sub-special servicer to CARBON CAPITAL II REAL ESTATE CDO-2005-1, LTD.'S special servicer, MIDLAND LOAN SERVICES, INC.<br><br>Movants,<br><br>v.<br><br>SHUBH HOTELS PITTSBURGH, LLC,<br><br>Respondent. | Bankruptcy Case No. 10-26337-JAD<br><br>Chapter 11<br><br>Judge Jeffery A. Deller<br><br>Re. Document No. 7<br><br>Hearing Date and Time:<br>September 15, 2010 at 10:30 a.m.<br><br>Response Date and Time:<br>September 14, 2010 at 2:30 p.m. |

**DEBTOR'S RESPONSE TO
EMERGENCY MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND
362(d)(1) AND (d)(2) FOR RELIEF FROM THE AUTOMATIC STAY**

*AND*

<u>**MEMORANDUM OF LAW**</u>

<u>**PRELIMINARY STATEMENT**</u>

On just the second day of this bankruptcy case, Movants filed the within Motion seeking to obtain relief from the automatic stay in order to protect their own exclusive interests by having this Court prematurely close this case and return the parties to mortgage foreclosure proceedings in the Court of Common Pleas of Allegheny County. In that action, the Movants would seek the appointment of a contractual receiver whose sole and exclusive fiduciary duty would be to the Movants, to the exclusion and prejudice of all other creditors of the Debtor's hotel operations.

The Debtor has already formulated the basis of a Plan of Reorganization which will propose to pay all creditors, including the lender, their claims in full and will preserve over 300 jobs for the Debtor's hotel employees and permit Pittsburgh's largest hotel to remain open for business and continue to serve lodging guests locally, nationally and internationally. Subject to the approval of this Court, the Debtor has negotiated a Debtor in Possession Senior Lending Facility (see Exhibit A) and a Letter of Intent to propose a Plan of Reorganization (see Exhibit B). Moreover, the Debtor has reached agreement to "re-flag" its hotel forthwith and affiliate with a prestigious and highly recognized world wide hotelier. The continued operations of the hotel property will provide a valuable service to the local community and maintain the going concern value of the Debtor's assets. Conversely, allowing the Movants to proceed with their state court foreclosure action would result in the liquidation and sale of the hotel, to the prejudice of all other parties and interests. Movants' requested relief should be denied.

1. Paragraph 1 of the Motion is admitted.

2. Paragraph 2 of the Motion is admitted.

3. Paragraph 3 of the Motion is admitted.

4. Paragraph 4 of the Motion is admitted.

5. Paragraph 5 of the Motion is admitted.

6. Paragraph 6 of the Motion is admitted.

7. Paragraph 7 of the Motion is admitted.

8. Paragraph 8 of the Motion is admitted in part and denied in part. It is admitted that the Debtor owns the largest hotel within the City of Pittsburgh, which is currently known as the Hilton Hotel located at the entrance of Point State Park, downtown Pittsburgh. It is likewise admitted that the lender claims to hold a first mortgage on the hotel. It is denied that Hilton

validly terminated the Debtor's Franchise License Agreement. This issue will become a matter to be determined by this Court. Accordingly, the Debtor submits that the acceleration of the loan by the Movants was improper. The Debtor admits that the lender filed a state-court complaint in mortgage foreclosure and additionally requests the appointment of a receiver pending the conclusion of the mortgage foreclosure. The Debtor believes that the appointment of a contractual receiver serving at the behest of only the Movants will deny the other creditors of the Debtor a right to receive a distribution or payment of their claim. Accordingly, the Debtor believes that the continuation of this chapter 11 and the preparation and filing of a Plan of Reorganization will serve the interests of all creditors and not just the Movants.

9. Paragraph 9 of the Motion is admitted. Further answering, the Debtor previously filed pleadings evidencing a potential for the lender to be under collateralized. However, the Debtor has formulated an offer to pay the Movants in full pursuant to its existing contractual interest rate. Therefore, the interest of the Movants and all creditors are favorably enhanced by the within chapter 11 proceedings.

10. Paragraph 10 of the Motion is denied. Further answering, the Debtor has equity in the property. For the reasons set forth above and below, a tentative plan has already been reached with a Plan Proponent to promptly formulate, file and approve this Plan of Reorganization.

11. Paragraph 11 of the Motion is denied. Further answering, the expedited relief from the automatic stay is not warranted under the circumstances and the Debtor denies that there will be any eroding of the Movants' collateral. On the contrary, for the reasons set forth above and below, the Movants' interests are best protected by a continuation of the within Chapter 11.

12. Paragraph 12 of the Motion is admitted.

13. Paragraph 13 of the Motion is admitted.

14. Paragraph 14(a) of the Motion is admitted.
Paragraph 14(b) of the Motion is admitted.
Paragraph 14(c) of the Motion is admitted.

15. Paragraph 15 of the Motion is admitted.

16. Paragraph 16 of the Motion is admitted.

17. Paragraph 17 of the Motion is admitted.

18. Paragraph 18 of the Motion is admitted.

19. Paragraph 19 of the Motion is admitted.

20. Paragraph 20 of the Motion is admitted.

21. Paragraph 21 of the Motion is a legal conclusion to which a response is not required.

22. Paragraph 22 of the Motion is admitted.

23. Paragraph 23 of the Motion is a legal conclusion to which a response is not required.

24. Paragraph 24 of the Motion is admitted in part and denied in part. It is admitted that the Movants alleged events of default and asserted a revocation of the license to collect rents. The Debtor denies that it is in default of its agreement with Movants and that Movants were entitled to revoke the license to collect rents.

25. Paragraph 25 of the Motion is admitted.

26. Paragraph 26 of the Motion is admitted in part and denied in part. It is admitted that the Movants have alleged events of default. The Debtor denies that it is in default of its agreement with the Movants. In fact, the Debtor was current on all payments to the Movants when the petition was filed on September 7, 2010.

27 Paragraph 27 admitted in part and denied in part. It is admitted that HLT Existing Franchise Holding, LLC issued a letter purporting to terminate the franchise agreement between the Hilton and the Debtor. It is denied however that Hilton properly terminated such franchise agreement. Accordingly, the Debtor maintains that the Hilton Franchise License Agreement is still in existence and may be assumed pursuant to Section 365 of the Bankruptcy Code and any cure dates are extended by operation of Section 108 of the Code.

28. Paragraph 28 of the Motion is a legal conclusion to which no response is required.

29. Paragraph 29 of the Motion is admitted in part and denied in part. It is admitted that the Movants accelerated the debt based upon alleged events of default. It is denied, however, that the Movant had the right to accelerate the debt since there were no defaults under the loan agreements.

30. Paragraph 30 of the Motion is denied for the same reasons set forth above.

31. Paragraph 31 of the Motion is denied for the same reasons set forth above.

32. Paragraph 32 of the Motion is admitted.

33. Paragraph 33 of the Motion is admitted.

34. Paragraph 34 of the Motion is admitted.

35. Paragraph 35 of the Motion is a legal conclusion to which a response is not required.

36. Paragraph 36 of the Motion is a legal conclusion to which a response is not required.

37. Paragraph 37 of the Motion is a legal conclusion to which a response is not required. Answering further, this paragraph refers to a document which speaks for itself.

38. Paragraph 38 of the Motion is a legal conclusion to which a response is not required. Further answering, the Debtor demands strict proof at trial.

39. Paragraph 39 of the Motion is admitted in part and denied in part. It is admitted that the Debtor filed a list of its top 20 creditors which document speaks for itself. However, for the reasons set forth above and below, it is denied that the lender is under collateralized under the Plan which the Debtor intents to file.

40. Paragraph 40 of the Motion is a legal conclusion to which a response is not required.

41. Paragraph 41 of the Motion is a legal conclusion to which a response is not required.

42. Paragraph 42 of the Motion is a legal conclusion to which a response is not required. Further answering, the Debtor asserts that it has equity in the property in the form of ongoing business value and that the Plan of Reorganization to be filed in this case will seek to preserve that value for not only the Movants but all other creditors in this case.

43. Paragraph 43 of the Motion is a legal conclusion to which a response is not required. Moreover, the Debtor hereby incorporates herein its responses to the other paragraphs of this Motion.

44. Paragraph 44 of the Motion is a legal conclusion to which a response is not required. Answering further, the Debtor asserts that it has equity in the property in the form of ongoing business value and that the Plan of Reorganization to be filed in this case will seek to preserve that value for not only the Movants but all other creditors in this case.

45. Paragraph 45 of the Motion is specifically denied. The Debtor denies that the Movants had a right to declare a default under the Loan Documents. Moreover, the Debtor maintains that pursuant to, *inter alia*, Section 552 the ongoing hotel revenue is property of the estate and subject to the jurisdiction of this Court.[1]

46. Paragraph 46 of the Motion is denied for the same reasons set forth above and below.

47. Paragraph 47 of the Motion is denied for the same reasons set forth above and below.

48. Paragraph 48 of the Motion is specifically denied. The Debtor has a right either to obtain consensual use of cash collateral or request that the Court order the use of cash

---

[1] If a mortgagor is in default, the "enforcement" of the mortgagee's right to receive rents, even when the mortgage contains an assignment of rents provision, can only be accomplished by the mortgagee taking possession of the mortgaged property and applying the profits to the mortgage until the debt is paid. Commerce Bank v. Mountain View Village, 5 F.3d 34, 38 (3d Cir. Pa. 1993), citing Bulger v. Wilderman and Pleet, 101 Pa. Super. 168, 171 (Pa. Super. 1931); accord, In re SeSide Co., 152 B.R. 878, 883 (E.D. Pa. 1993), citing Randal v. Jersey Mortg. Inv. Co., 306 Pa. 1, 6, 158 A. 865, 866 (Pa. 1932); Peoples-Pittsburgh Trust Co. v. Henshaw, 141 Pa. Super. 585, 592, 15 A.2d 711, 714 (1940). "A mortgagee can obtain 'possession' of realty *and consequently obtain a present right to receive rents* in two ways: (1) by entering into 'actual possession' of the real estate through foreclosure or acting as a mortgagee in possession; or (2) by taking 'constructive possession' of the realty by serving *demand notices on the mortgagor's tenants*." SeSide, 152 B.R. at 883 (emphasis added), citing Fogarty v. Shamokin & Mount Carmel Transit Co., 367 Pa. 447, 451, 80 A.2d 727, 728-29 (Pa. 1951); Colbassani v. Society of Christopher Columbus, 159 Pa. Super. 414, 417, 48 A.2d 106, 107 (1946); Bulger v. Wilderman and Pleet, 101 Pa. Super. at 176-77; accord, Mountain View, 5 F.3d at 38. In other words, until a mortgagee enforces its rights to rentals by taking "possession" of the mortgaged property, the mortgagee has no present rights to rents under Pennsylvania law, and a mortgagor is entitled to continue receiving the rents from the property. See SeSide, 152 B.R. at 883, citing Randal, 306 Pa. at 5, 158 A. at 865-66; Colbassani, 159 Pa. Super. at 417, 48 A.2d at 107; Miners Sav. Bank of Pittston v. Thomas, 140 Pa. Super. 5, 8, 12 A.2d 810, 813 (1940). This is so even though the mortgagee has a valid and enforceable interest in and lien on the rental income stream. Mountain View, 5 F.3d at 38. Movants did not and cannot obtain a present right to receive the rents of the mortgaged property until after issuing rent demand notices upon the tenants, which Movants have not done. Accordingly, Movants' reliance on Sovereign Bank v. Schwab, 414 F.3d 450, 453 (3d Cir. 2005), in which (unlike here) the mortgagee actually delivered notice and a demand for rents upon the tenants, in misplaced.

collateral pursuant to, inter alia, §§ 365 and 552. The Movants neither obtained possession of the rents by appointment of a receiver nor gave notice to the tenants in the Property, and so the Debtor remains the owner of the cash collateral. The Debtor urgently requires immediate access to, and the use of at least $180,000 in such cash collateral to fund this week's payroll at the Property. Moreover, the Debtor has a right to obtain, with Court approval, the use of new funds pursuant to § 364 of the Bankruptcy Code. In the event that the Debtor is unable to obtain continuing consensual use of cash collateral or persuade the Court to allow the Debtor to continue to use Cash Collateral over the Movants' objections, the Debtor has already negotiated a 13-week, $3 million Senior Lending Facility from an affiliate of Dr. Kiran Patel pursuant to the terms of a Letter of Intent executed on or about September 14, 2010, a copy of which is attached hereto as Exhibit A, and a DIP Loan Agreement in form filed with the Court on September 14, 2010 to supplement the Debtor's Motion for Use of Cash Collateral. The Letter of Intent provides for a Plan of Reorganization which will pay all Allowed Claims (including that of the Movants) in full.

49. Paragraph 49 of the Motion is denied for the same reasons set forth above and below.

50. Paragraph 50 of the Motion is a legal conclusion to which a response is not required.

51. Paragraph 51 of the Motion is denied for the same reasons set forth above and below.

52. Paragraph 52 of the Motion is denied for the same reasons set forth above and below. Further answering, the appointment of a contractual receiver to safeguard the interests of the Movants only is not in the best interest of all creditors of the estate, but in fact substantially impairs the interests of such other creditors.

53. Paragraph 53 of the Motion is a legal conclusion to which a response is not required.

54. Paragraph 54 of the Motion is a legal conclusion to which a response is not required.

55. Paragraph 55 of the Motion is a legal conclusion to which a response is not required.

**MEMORANDUM OF LAW**

**The Court Should Deny the Relief Requested Under 11 U.S.C. Section 362(d)(1)**

56. Pursuant to Section 362(d)(1), the Court may grant relief from the automatic stay "for cause, including lack of adequate protection." The Movant must establish that the value of its collateral is declining as a result of the stay. In re Elmira Litho, Inc., 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994)(relying on United Savings Ass'n v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 370 (1988)); see also, Barclays Bank of New York, N.A. v. Saypol (In re Saypol ), 31 B.R. 796, 800 (Bankr. S.D.N.Y. 1983) ("In the context of the automatic stay, Congress believed the existence *vel non* of such a decline [in the value of the secured creditor's interest] to be almost decisive in determining the need for adequate protection."). If the Movant does not establish that the collateral is declining as a result of the stay, the Movant will have failed to meet its burden under Section 362(d)(1), as further explained by the cases cited above, and the Court is therefore required to deny the relief.

57. The Movant has emphasized and can be expected to rely heavily on the lack of an equity cushion. But, as the United States District Court for the Eastern District of Pennsylvania instructed in In re Philadelphia Consumer Discount Co., 37 B.R. 946 (E.D. Pa. 1984), "the lack of equity alone should not be determinative on that issue [of adequate protection]." Id. at 949 [FN 9]. The District Court continued, stating that "[s]ome courts have improperly narrowed their focus to the equity cushion, instead of making the necessary evaluation, first, of the stability of the collateral; second, of the likelihood of reorganization; and third, of the credibility of the debtor's protection plan." Id. (citing Central Penn Nat'l Bank v. Zimmerman (*In re Ludwig Honold Mfg. Co.*), 33 B.R. 722, 723 (Bkrtcy. E.D. Pa. 1983) (further citations omitted)).

58. In this case, the Debtor will be able to show the stability of the Movant's collateral. For example, the value of the hotel property is not declining. Rather, through the stabilization efforts being implemented, the proposed DIP loan and the work of the current management company - *which was approved by the Movant* - the hotel revenues are expected to increase, thus enhancing the value of the Movant's collateral.

**The Court Should Deny the Relief Requested Under Section 362(d)(2)**

59. In order to grant relief from the automatic stay under 11 U.S.C. § 362(d)(2), the Court must find that the Debtor both lacks equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d). In re Ripley, 412 B.R. 690, 698 (Bankr. E.D. Pa. 2008).

60. The burden to prove lack of equity is on the Movant, In re Deep River Warehouse, Inc., 2005 WL 1287987 (Bankr. M.D. N.C. 2005), although at the time the petition was filed, the Debtor concedes it had no equity in the property. The burden then shifts to the non-moving party to show that the property is necessary to an effective reorganization. Ripley, 412 B.R. at 698 (stating "[i]f the movant demonstrates that the debtor has no equity in the property, then the debtor has the opportunity to prevent modification of the automatic stay by showing the court that the property is necessary for an effective reorganization.")(citing In re Epic Capital Corp., 290 B.R. 514, 520 (Bankr. D. Del. 2003)). However, when the creditor's motion relies on an assertion that confirmation of a plan is futile, "the burden rests on the moving creditor to show futility by a preponderance." In re Annicott Excellence, LLC, 258 B.R. 278, 283-84 (Bankr. M.D. Fla 2001). As the Ripley Court noted, "[a]ccording to the Third Circuit, the debtor must show that 'a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed.'" Id. (citing John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs., 987 F.2d 154, 157 (3d Cir. 1993).

61. In <u>United States Assoc. of Texas v. Timbers of Inwood Forest</u>, 484 U.S. 365 (1988), the Supreme Court provided the standard for demonstrating that property is necessary for an effective reorganization, stating as follows:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in the prospect.

<u>Timbers,</u> 484 U.S. at 376-77. In <u>Timbers</u>, the Supreme Court repeated the standard for the analysis of this type, which is that there must be a showing of a "'reasonable possibility of a successful reorganization within a reasonable time.'" <u>Id.</u>

62. Analysis of what a successful reorganization means is not a limited inquiry under Section 362(d)(2). As at least one court has noted, analysis under § 362(d)(2) should "not be restricted to only a consideration of a single method of reorganization but any and all viable and effective methods." <u>In re Dunes Hotel Associates</u>, 188 B.R. 162 (Bankr. S.C. 1995).

63. Clearly, the property at issue here is essential to the Debtor's reorganization efforts. It is unlikely that Movant would deny that fact. Thus, the Court must look to whether or not the Debtor can propose a plan within a reasonable period of time that has a reasonable possibility of being confirmed within a reasonable time. The Supreme Court's <u>Timbers</u>' standard does not require the Debtor to demonstrate now that substantial consummation of its plan is guaranteed. <u>Ripley</u>, 412 B.R. at 698 (<u>citing</u> <u>In re Dupell</u>, 235 B.R. 783, 790 (E.D. Pa. 1990)). Rather, as set forth in <u>Timbers</u>, the Debtor must demonstrate that there is a "reasonable possibility" that the Debtor can reorganize. As the Third Circuit explained in <u>John Hancock</u>, the Debtor must show that a proposed or contemplated plan is not patently unconfirmable. <u>Id</u>. (<u>citing</u> <u>John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.</u>, 987 F.2d at 157).

64. Here, the Debtor has shown that it has taken major steps in overcoming the obstacles presented to it. The Debtor has articulated a proposed plan of reorganization that is reasonable and has the possibility of being confirmed in a reasonable period of time. At a

minimum, in this very early stage of this case, the Court should not deny the Debtor the opportunity to attempt to reorganize.

Dated:  September 14, 2010

Respectfully submitted,
Rudov & Stein, P.C.

***/s/ David K. Rudov***
David K. Rudov, Esq.
drudov@rudovstein.com
Pa. I.D. # 35579

100 First Avenue, Suite 500
First & Market Building
Pittsburgh, PA 15222
Tel:    412-281-7300

       AND

***/s/ Scott M. Hare***
Scott M. Hare, Esquire
scott@scottlawpgh.com
Pa. I.D. # 63818

1806 Frick Building
437 Grant Street
Pittsburgh, PA  15219
Tel:    412-338-8632

Attorneys for the Debtor