September __, 2010

Atul Bisaria, Manager
Shubh Hotels Pittsburgh, LLC
600 Commonwealth Place
Pittsburgh, PA 15222

In re:   Proposed Plan Terms for Shubh Hotels Pittsburgh, LLC

Dear Atul,

The following is to serve as a letter of intent (the "Letter Agreement") for the Chapter 11 Plan of Reorganization (the "Plan") for Shubh Hotels Pittsburgh, LLC ("Debtor") by 600 Commonwealth Place, L.P. or other entity controlled by Kiran Patel, M.D.'s affiliate (the "Plan Sponsor").  The terms set forth in this Letter Agreement shall be included in definitive agreements (the "Definitive Agreements") to be prepared by the Plan Sponsor's counsel.

1. The Plan.  The Plan shall reorganize all of the liabilities and assets of the Debtor, including the real and personal property associated with the Hilton Hotel located at the entrance of Pointe Park in downtown Pittsburgh, Pennsylvania, all of buildings, improvements, fixtures, personalty, contract rights, leases and licenses appurtenant thereto, and the Debtor's cash and reserves (including reserves for taxes, insurance and construction) in the custody of the Debtor's secured lender, Carbon Capital II Real Estate CDO 2005-I, Ltd. ("Lender").  At the effective date of the Plan, the Reorganized Debtor shall assume and pay (under terms and over a time period to be specified in the Plan) 100% of the Allowed Claims (to be defined in the Plan as Claims as allowed by the Bankruptcy Court) of the Debtor, including without limitation the Allowed Claims of the Lender.  The Plan Sponsor will contribute to the Debtor the amount required the consummate the Plan on the Effective Date by contributing the DIP Loan (as defined below) to the capital of the Reorganized Debtor, and the Plan Sponsor shall further, on the Effective Date, subordinate its unsecured Claims against the Debtor (in the amount of approximately $4 million) to all other Allowed Claims.  In consideration of the foregoing, the Plan Sponsor shall receive on the Effective Date:(a) 89% of the equity interests in the Reorganized Debtor, and (b) the right to acquire the remaining 11% of the equity interests in the Reorganized Debtor, under terms to be provided in the Definitive Agreements.

2. **DIP Loan**. The Plan Sponsor will fund up to three-million dollars ($3,000,000.00) of Debtor-In-Possession Financing, subject to approval of the Court exercising jurisdiction over the Debtor's reorganization proceedings (the "Bankruptcy Court") and pursuant to a DIP Loan Agreement being prepared by the Plan Sponsor's counsel. The DIP Loan Agreement shall provide for, among other things: (a) disbursements pursuant to an agreed 13-week operating budget to be attached as an Exhibit, (b) interest at [ten per cent (10%)] per annum, (c) security including a super priority priming lien on all of the Debtor's assets (other than Bankruptcy avoidance claims) and a super priority administrative Claim, (d) maturity upon the consummation of the Plan, the dismissal or conversion of the Debtor's Chapter 11 proceedings, or the occurrence of other adverse events in connection with such Chapter 11 proceedings, including without limitation the appointment of a Trustee or Examiner with expanded duties, (e) such representations, warranties, conditions, covenants and agreements as are customary in such transactions. The Debtor shall use the proceeds of the DIP Loan to fund operations pursuant to the agreed 13-week budget, and to pay amounts required to consummate the Plan. The Debtor shall file appropriate motions and applications (in form and content acceptable to Plan Sponsor) with the Bankruptcy Court to seek approval of the DIP Loan Agreement promptly upon finalizing the DIP Loan Agreement, and diligently prosecute the process of obtaining Bankruptcy Court interim and final approval thereof.

3. **Timeline**. The Bankruptcy Court approval of the DIP Loan Agreement, the preparation of the Plan (and related Disclosure Statement) (all of which shall be acceptable in form and content to Plan Sponsor) and the confirmation of the Plan by order of the Bankruptcy Court shall proceed and be concluded pursuant to an expedited timeline acceptable to the Plan Sponsor and set forth in the Definitive Agreement. The Effective Date of the Plan shall occur within two (2) business days after the Bankruptcy Court confirms the Plan by an Order acceptable to the Plan Sponsor.

4. **Definitive Agreements**. The Definitive Agreements shall include such representations, warranties, conditions, covenants and agreements as are customary in such transactions, including without limitation, provisions authorizing the Plan Sponsor to enter into appropriate agreements with Hilton and/or replacement hotels flags, the Lender, vendors, consultants, etc., all of which, if consummated prior to the Effective Date, would be subject to Bankruptcy Court approval to the extent required by law. In addition to other conditions and requirements, the Plan will require that (a) the Reorganized Debtor will either remain entitled to the benefits of the existing Hilton Hotels franchise under modified terms acceptable to the Plan Sponsor, or obtain another comparable hotel flag, under terms acceptable to the Plan Sponsor, and (b) the Reorganized Debtor will maintain the terms, interest rate, and other provisions applicable to the Lender's Allowed Claims, subject to modifications acceptable to Plan Sponsor.

5. **Confidentiality**. The parties Confidentiality Agreement dated _____ shall remain in effect and shall apply to this Letter Agreement and the negotiations and drafts of the Definitive Agreements and DIP Loan Agreement, except as required to obtain Bankruptcy Court approval thereof, but the Plan Sponsor's obligations thereunder shall terminate upon the Effective Date of the Plan.

Debtor and Plan Sponsor also acknowledge and agree that this Letter Agreement is not intended to be, and should not be construed as a binding agreement for any of the transactions contemplated herein; the terms and conditions for such transactions which are outlined herein do not necessarily include all of the material terms and conditions which will be required in the DIP Loan Agreement or the Definitive Agreements; the enumeration of certain contingencies, conditions, warranties and representations in this Letter Agreement is not intended to be exhaustive; and the DIP Loan Agreement and the Definitive Agreements may well contain additional contingencies, conditions, warranties and representations. If the foregoing terms are acceptable, please so indicate by signing and returning a copy of this Letter Agreement (which may be signed in counterparts, all of them constituting an original) to the undersigned. Facsimile signatures affixed hereto shall be binding as originals, and this Letter Agreement may be executed in counterparts, with the same effect as an executed original. Any disputes arising out of this Letter Agreement shall be determined by the Bankruptcy Court.

Very truly yours,
600 COMMONWEALTH PLACE, L.P.

By: _____
    Name:


AGREED TO AND ACCEPTED:

SHUBH HOTELS PITTSBURGH, LLC


By: _____

Dated: _____