**LOCAL BANKRUPTCY FORM NO. 13**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | ) | Bankruptcy No. 10-26337-JAD |
| | ) | |
| **SHUBH HOTELS PITTSBURGH, LLC** | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

## DISCLOSURE STATEMENT
## TO ACCOMPANY PLAN DATED OCTOBER 6, 2010

Debtor furnishes this disclosure statement to creditors in the above-captioned matter pursuant to Bankruptcy Code §1125 to assist them in evaluating debtor's proposed Chapter 11 plan, a copy of which is attached hereto. Creditors may vote for or against the plan of reorganization. Creditors who wish to vote must complete their ballots and return them to the following address before the deadline noted in the order approving the disclosure statement and fixing time. (The Court will schedule a hearing on the plan pursuant to 11 U.S.C. §1129.)

Address for return of ballots:

David K. Rudov
Rudov & Stein, P.C.
100 First Avenue, Suite 500
Pittsburgh, PA 15222

Scott M. Hare, Esquire
The Frick Building Suite 1806
437 Grant Street
Pittsburgh, PA  15219

I.    Background

1.    Name of Debtor

***Shubh Hotels Pittsburgh, LLC***

2.    Type of Debtor (individual, partnership, corporation)

***Limited Liability Company***

3.    Debtor's Business or Employment

***Hotel, restaurant, bar and convention facility***

4.    Date of Chapter 11 Petition

***September 7, 2010***

5.    Events that Caused the Filing:

*In the fall of 2006, the Debtor purchased the hotel located at 600 Commonwealth Place ("Hotel") from Hilton Hotels and Resorts ("Hilton"). At the time of purchase, the Hotel was in terrible physical condition.  In 2007, the Debtor undertook an ambitious renovation program, which included, but was not limited to, the remodeling of every guest room, the remodeling of all of the common areas, the performance of deferred maintenance neglected by Hilton, and the construction of additional conference and spa space. As the Debtor began its construction, it was plagued with delays and contractor difficulties. The Debtor's principal, Atul Bisaria, eventually exhausted his capital before the renovation program was completed.*

*In the fall of 2009, the Debtor realized that it could no longer complete the renovations to the Hotel without the investment of significant capital. Atul Bisaria approached a number of potential capital partners, but none of them were willing to invest. The situation at the Hotel had become precarious as the Hotel was regularly receiving utility shut-off notices, the property was delinquent on its taxes, and there were mechanic's liens and judgments against the property which totaled over $8,000,000.00 on their face.  Mr. Bisaria was concerned that the Hotel would have to close and that all of its employees would have to be laid off. Atul Bisaria arranged to meet with Jai Lalwani, who was an individual with whom he had previously done business.  Mr. Lalwani met with Mr. Bisaria and analyzed the situation. Mr. Lalwani informed Mr. Bisaria that he could assemble a group of investors to acquire the Hotel from him. Mr. Lalwani had discussions with The Related Group ("Related") and Dr. Kiran Patel ("Patel"), each of whom were successful business men in their own right, Patel has frequently stepped in to help fellow businesses of Indian origin. Mr. Lalwani put together this proposed ownership group and they began to negotiate an amendment to the terms of the Loan with the Hotel's secured lender ("BlackRock" or the "Lender").  During these negotiations, the Hotel's operations struggled. Patel became very concerned that the Hotel would not be able to remain open prior to the completion of the deal.  Patel sought the advice*

*of BlackRock, which encouraged him to loan monies to the Hotel prior to the closing of an equity purchase deal. In particular, there were a number of outstanding Union Pension and other obligations that could no longer wait. With the permission and encouragement of BlackRock, Patel loaned the Debtor money to settle or reduce some of these obligations. Patel made these loans with the understanding and agreement that they would be repaid. Based on these repayment representations, Patel quickly loaned the hotel approximately $2,300,000.00. These loans allowed the Hotel's operations to temporarily stabilize.*

*As the negotiations regarding the acquisition of the equity in the Hotel continued, Mr. Bisaria's refusal to walk away from the project resulted in an impasse and the Related/Patel deal died. Bisaria then approached Dr. Patel and asked him to continue his lending relationship with the Hotel. Patel, recognizing that it was the only way to protect his existing loans, agreed to continue lending money to the Debtor. In addition, Bisaria agreed to sell his equity position in the Hotel to Patel should he not be able to operate it in the future. Consistent with Indian culture this deal was sealed with a hand shake.*

*Commencing in late December, Patel begin making a series of additional unsecured loans to the Hotel. Bisaria retained Mr. Lalwani's company, which had already been actively involved in negotiating various settlements with vendors and service providers, to finish this job, and to oversee the construction at the Hotel. Through careful cash planning, the Hotel was able to sustain operations through the winter, its most difficult time. On the recommendation of Hilton, the Hotel hired Crescent Hotels and Resorts, LLC ("Crescent") as its Manager. Shortly after its hire of Crescent, Bisaria became concerned that the Hotel was not being properly managed. The SALT scores were not acceptable; the Hotel received a failing grade for cleanliness of rooms; and the management was mostly run by a team which did not reside in Pittsburgh. Bisaria and his representatives began to express concerns to Crescent. In addition, Crescent was not fulfilling its Property Improvement Plan ("PIP") obligations. The relationship with Crescent began to deteriorate even further, and it became clear to Bisaria that a change was needed in management. Bisaria began to investigate management alternatives, of which Crescent was aware .*

*Throughout the Spring and into Summer of 2010, the number and amount of judgment creditors and lien creditors was significantly reduced at the Hotel. In addition, a new construction team discovered several problems with the proposed exterior expansion of the Hotel, which were structural in nature. The new team developed plans to solve these problems, and further developed plans rapidly to complete the PIP. In late July 2010, the Debtor fired Crescent. Hilton purportedly provided the Debtor with notice of its intent to terminate its franchise if the Hotel had not completed its PIP, and if the Hotel failed to pass its QA inspection on September 1, 2010. The Debtor has also since learned that the Lender was in regular communication with Crescent and Hilton during this period, and that the Lender had developed a plan to foreclose and had selected Crescent as a finalist to be a "Receiver". As a replacement to Crescent, the Debtor hired Prism Hotels and Resorts to be its manager. Notably, Prism was endorsed by the Lender and had actually been engaged by the Lender to consult on this loan for a period of over a year before the foreclosure was commenced. On August 23, 2010 Prism's team performed a review of the Hotel and provided the Lender with a very positive report. Prism turned down the offer from the Lender to act as Receiver and*

*agreed on August 25, 2010 to be the Hotel Management Company.*

*On September 1, 2010, the Hotel passed the physical part of its inspection in terms of completion of the PIP. However, the Franchisor, to the great surprise of the Debtor and Prism, failed the Hotel on technical reasons, including its low SALT scores. As a result, on September 2, 2010, Hilton purported to terminate its franchise. On September 3, 2010, the Lender filed for foreclosure and to appoint a receiver. In response to this filing, and in order to allow it to restructure in a better and more comprehensive manner, the Debtor filed Chapter 11 on September 7, 2010.*

6.    Anticipated Future of the Company & Source of this Information and Opinion

*Management believes that if approved by the Bankruptcy Court at a hearing scheduled for October 7, 2010, the former Hilton Pittsburgh, licensed, "rebranded" and reintroduced to the Pittsburgh and greater regional conference markets as the Wyndham Grand Pittsburgh Downtown Hotel will provide the Debtor with a dynamic and positive business reorganization. The Hotel's physical plant will be further improved with the completed construction of the "expansion area", which includes additional conference space, a new indoor pool, a luxury spa facility, and a retail segment to feature a restaurant and a coffee shop.*

*The theme is to present a new and exciting brand, The Wyndham Grand, along with a new owner that has an impeccable history of success, a business that is backed with the resources and finances to succeed, and operations that are matched with a proven management company.   The well being and stability of the work force and the business is of the highest concern and this Plan is designed to achieve resolution and stabilization expediently and efficiently.*

*The market is already reacting favorably to this theme with a fresh view that is conveying to group meeting planners and the hotel community that this is a time of new beginnings. Management projects the stabilization of the Hotel to occur over the next three years.  The first year will involve completion of the expansion project and launch of the marketing campaign to introduce the new brand to the community. Rates and occupancies will be reset with the completion of the expansion in year two, and by the end of year three management expects the Hotel to be well established as a market leader in meetings and convention business in Pittsburgh. Services and amenities will improve in quality and quantity from that of the former Hilton brand three diamond designation so as to conform to the Wyndham Grand four diamond tier.*

7.    Summarize all Significant Features of the Plan Including When and How Each Class of Creditor Will Be Paid and What, If Any, Liens Will Be Retained By Secured Creditors or Granted to Any Creditor Under the Plan

*Under the Plan, all creditors will be paid the <u>full amount of their Allowed Claim with interest</u>. Moreover, in Order to further demonstrate the feasibility of this Plan, Pittsburgh Grand LLC, a co-proponent of the Plan, has agreed to post <u>Letters of Credit in the total amount of $8 million</u> (see attached letter evidencing the financial ability of the Plan sponsor) to guaranty payments to the various Classes of Creditors under the Plan. Additionally, Pittsburgh Grand LLC <u>shall assure funding the remaining construction of approximately $4 million</u> to complete the hotel exterior and interior modifications as required by Wyndham Hotel and Resorts to*

4

*achieve Wyndham Grand Four Diamond status by utilizing all of the funds remaining in the Key Bank Real Estate Capital construction reserve account and then funding the balance due thereunder, all supported by a construction bond and payment.*

*Specifically, under the Plan, the Debtor shall assume its existing financial obligation with its main Lender, BlackRock (Class 1) and continue to timely make[1] all payments on the Pre-Petition BlackRock Debt of approximately $49,600,000.00 at the existing annual percentage rate of 1.67 %. The Debtor does not intend to modify the financial repayment terms of the Pre-Petition Lender Note. The exact amount of the Allowed Claim due under the Pre-Petition Lender Note shall be determined by the Bankruptcy Court after accounting for various factors included reserve accounts that have not been drawn upon or advanced. BlackRock shall retain its liens on its collateral which as of the date of filing was valued at $54 million and as enhanced under this Plan will be worth $66 million (see Exhibit to the Disclosure Statement). Immediately following the Effective Date, the Reorganized Debtor shall make the monthly payments of $66,666.00 from the existing Interest Reserve Account held at Key Bank Real Estate Capital until the account has been depleted. These payments shall continue to be made by the Reorganized Debtor from the Cash Flow of the Wyndham Grand Pittsburgh Downtown until the maturity date under Pre-Petition Lender Note. In order to guaranty the Reorganized Debtor's agreement to make Distributions to the Class 1 Claimant under the Plan, Pittsburgh Grand LLC shall procure a Letter of Credit in favor of BlackRock in the approximate amount of $2,800.000.00 representing the aggregate amount of the of the payments that remain due under the Pre-Prepetition Lender Note ($66,666.00 per month for the next 51 months less the existing interest reserve in the approximate amount of $567,000.00). The Letter of Credit shall be reset after the Interest Reserve is fully depleted periodically to reflect the declining amount of interest that remains unpaid on the Pre-Petition Lender Note. Insofar as the remaining payments are guaranteed by cash and a Letter of Credit and the value of the Collateral far exceeds the Allowed Claim, the Debtor believes that BlackRock is Unimpaired under this Plan and is presumed to have accepted this Plan treatment. In the event that the Bankruptcy Court determines that the Allowed Claim of BlackRock is Impaired under this Plan, the Debtor believes that this Plan does not discriminate unfairly and provides fair and equitable treatment with respect to the Allowed Claim of BlackRock. Thus, the Debtor will seek to confirm the Plan pursuant to 11 U.S.C §1129(b) if BlackRock is deemed to be impaired and casts a ballot to reject the Plan.*

*Under the Plan, secured creditors holding liens subordinate to Class 1 have been designated as Class 2 Claimants and shall be paid the full amount of their Allowed Claim in quarterly installments (4 payments per year) over a period of 36 months following the Effective Date (12 payments in total) with interest from the Effective Date at the Prime Rate from the Hotel Cash Flow.*

*Under the Plan, creditors asserting Unsecured Priority Claims have been designated as Class 3 Claimants and shall be paid the full amount of their Allowed Claim in quarterly installments (4 payments per year) over a period of 36 months following the Effective Date (12 payments in total) with interest from the Effective Date at the Prime Rate from the Hotel Cash Flow.*

---

[1] When the Voluntary Petition requesting an Order for Relief was filed on September 7, 2010, the Debtor was current on its financial obligations under the Pre-Petition Lender Note.

*Under the Plan, creditors asserting General Unsecured Claims have been designated as Class 4 Claimants and shall be paid the full amount of their Allowed Claim in quarterly installments (4 payments per year) until all Allowed Claims are paid in full with interest from the Effective Date at the Prime Rate from the Hotel Cash Flow. Hotel Cash Flow will be allocated first to pay the installments due in respect of Class 2 and 3 Claims before being distributed to holders of Class 4 Claims. Insofar as the Allowed Claims in Class 4 have not yet been determined and substantial Class 4 Claims are Disputed Claims, the exact amount of time required to fully pay this Class cannot be determined*

*The Debtor estimates that the operations of the Wyndham Grand Pittsburgh Downtown will generate the revenues necessary to fund the Plan and the Distributions to Classes 1, 2, 3 and 4. However, in order to guaranty the Reorganized Debtor's obligation to fund Distributions to Classes 2, 3 and 4, Pittsburgh Grand LLC shall issue a Letter of Credit in the total amount of $4.8 million to provide an additional source of available Plan funds in addition to Hotel Cash Flow. This Letter of Credit will be drawn to the extent that the Hotel fails to achieve at least 85% of its Projected Cash Flow in any quarterly Distribution period. The Debtor estimates that the amount of $4.8 million to be supported by this Letter of Credit is the amount reasonably necessary to guaranty all Distributions to the holders of Allowed Claims in Classes 2, 3, and 4.*

*Attached to this Disclosure Statement is the Financial Projection prepared by Debtor's Hotel Management company, PRISM. The Financial Projection estimates Hotel Cash Flow over the five year period following the Effective Date to be approximately $20,958,576.00 – an amount more than ample to fund all Allowed Claims under the Plan.*

8.    Are All Monthly Operating Statements Current and on File With The Clerk of Court?
      Yes    ☒            No    ☐

      If Not, Explain:

9.    Does the plan provided for releases of nondebtor parties?  Specify which parties and terms of release.

      *No.*

10.   Identify all executory contracts that are to be assumed or assumed and assigned.

      *The Debtor's critical executory contracts and unexpired leases are identified below. The Debtor is also party to several other operating contracts that routine in nature (office equipment leases, pest extermination contracts, etc.) that the Debtor will indentify in its Plan Supplement that will be filed prior to the Confirmation Date. That Plan Supplement will more fully identify the executory contracts and unexpired leases that will be assumed or rejected under the Plan.*

*The Debtor intends to assume all of the executory contracts and unexpired leases identified below:*

| | |
|---|---|
| *Unite Here L-57* | *Collective Bargaining Agreement 10/1/06 to 9/30/10 [as subsequently re-negotiated]* |
| *Operating Engineers L-95* | *Collective Bargaining Agreement 7/1/07 to 6/30/12* |
| *IBEW L-5* | *Collective Bargaining Agreement 1/1/08 to 12/31/10* |
| *Painters District 57, L-6* | *Collective Bargaining Agreement 11/1/05 to 10/31/10 [as subsequently re-negotiated]* |
| *Plumbers L-27* | *Collective Bargaining Agreement 8/1/08 to 7/31/11* |
| *Faber Coe & Gregg of PA* | *Non-Residential real property.  Debtor is landlord. Gift shop. Contract expires 12/34/06.  Currently month-to-month.* |
| *Various Events* | *Numerous political, social and charitable gatherings and Events have been contracted for the Hotel.  The identity of these executory contracts are proprietary and subject to privacy concerns.  Confidentiality is requested by the party.* |

11.     Has a bar date been set?     Yes ☒     No ☐

*On September 30, 2010 the Clerk's Office issued the First Meeting of Creditors Notice for November 3, 2010.  That Notice also established a Bar Date for all Creditors to file their Proof of Claim documents by February 1, 2011 and for Governmental Units to file their Proof of Claim by March 7, 2011.  The Debtor intends to file a Motion with the Bankruptcy Court requesting that these Claim Bar Date be rescheduled and accelerated so that the Debtor can promptly confirm this Plan of Reorganization.*

12.     Has an election under 11 U.S.C. §1121(e) has been filed with the Court to be treated as a small business?

Yes ☐     No ☒

13.     Specify property that will be transferred subject to 11 U.S.C. §1146(c).

*To the extent that any actions under the Plan are deemed to impose a "stamp tax or similar tax", the Plan will seek to obtain safe harbor under 11 U.S.C. §1146(a)*

II.    Creditors

      A.    Secured Claims:

### *SECURED CLAIMS - SCHEDULE D CLAIMS*

| Creditor | Total Amount Owed | Arrearages | Type of Collateral Priority of Lien (1, 2, 3) | Disputed (D) Liquidated (L) Unliquidated (U) | Will Liens Be Retained Under the Plan? (Y) or (N) |
|---|---|---|---|---|---|
| Carbon Capital II/BlackRock Financial | $49,600,000.00 | $0.00 | First lien on all assets | D | Y |
| Central Pension Fund of Int. UOE. | $114,293.00 | $114,293.00 | Judgment lien on real estate | | Y |
| Comm Steel | $216,333.00 | $216,333.00 | Judgment lien on real estate | D | Y |
| Commonwealth of PA | $34,724.28 | $34,724.28 | Judgment lien on real estate | | Y |
| Pittsburgh Building Owners Fund | $93,059.08 | $93,059.08 | Judgment lien on real estate | | Y |
| US Foodservice | $76,042.00 | $76,042.00 | Judgment lien on real estate | | Y |
| **TOTAL** | **$50,134,451.36** | **$534,451.36** | | | |

See Schedule.

B.      Priority Claims

## *PRIORITY CLAIMS - SCHEDULE E CLAIMS*

| Creditor | Total Amount Owed | Type of Collateral | (D) (L) (U) * |
|----------|------------------:|--------------------|---------------|
| Carpenters Contribution Trust Account | $7,655.00 | none | |
| Central Pension Fund of Intl UOE | $50,000.00 | none | |
| HEREIU | $565,240.42 | none | |
| Operating Engineers Local 95 | $1,104.82 | none | |
| Opg Eng Local 95 Training Fund | $229.34 | none | |
| Painters Dist 57 Local Union 6 | $414.93 | none | |
| Painters Dist 57 Local Union 6 | $10,631.03 | none | |
| Pittsburgh Building Owners Welfare | $0.00 | none | |
| Plumbers Local 27 Combined Funds | $2,975.06 | none | |
| Unite-HERE National Retirement | $184,046.95 | none | |
| ACHD Air Pollution Control Fund | $375.00 | none | |
| Allegheny County Liquor Tax | $2,848.02 | none | |
| Allegheny County Occupancy Tax | $112,163.41 | none | |
| Pa Department of Revenue | $125,713.83 | | |
| Pittsburgh Water & Sewer Authority | $57,476.03 | none | |
| **TOTAL:** | **$1,120,873.84** | | |

\* Disputed (D), Liquidated (L), or Unliquidated (U)

C.      Unsecured Claims

|   |   |   |
|---|---|---|
| 1. | Amount Debtor Scheduled (Disputed and Undisputed) | $4,144,897 |
| 2. | Amount of Unscheduled Unsecured Claims[2] | $5,277,994** |
| 3. | Total Claims Scheduled or Filed | $9,422,891 |
| 4. | Amount Debtor Disputes | $6,538,251*** |
| 5. | Estimated Allowable Unsecured Claims | $2,884,640 estimated |

D.      Other Classes of Creditors [Lien Creditors and Priority Creditors]

|   |   |   |
|---|---|---|
| 1. | Amount Debtor Scheduled (Disputed and Undisputed) | $51,300,329 |
| 2. | Amount of Unscheduled Claims | $       77,118 |
| 3. | Total Claims Scheduled or Filed | $51,377,447 |
| 4. | Amount Debtor Disputes | $ not yet determined |
| 5. | Estimated Allowable Claims | $51,377,477 (estimated) |

E.      Other Classes of Interest Holders

|   |   |   |
|---|---|---|
| 1. | Amount Debtor Scheduled (Disputed and Undisputed) | $ The ownership of the Debtor was |
| 2. | Amount of Unscheduled Claims[1] | $ transferred on or about September |
| 3. | Total Claims Scheduled or Filed | $ 24, 2010. A Proof of Interest will |
| 4. | Amount Debtor Disputes | $ be filed prior to |
| 5. | Estimated Allowable Claims | $ confirmation |

** The figure of $5,277,994 includes a claim asserted by HLT Existing Franchise Holding alleging termination damages arising from the termination of the Hilton Franchise Agreement (no Proof of Claim filed as of October 5, 2010); claims asserted by trade vendors alleged to have been omitted from the Schedules of Asset and Liabilities (no Proof of Claim filed); and the difference between claims that are Scheduled at a lower figure and the amount listed in Proofs of claim filed as of October 5, 2010. Also, this amount does not include any claims that will be asserted by Dr. Kiran Patel. However, for the purpose of this Disclosure Statement and Plan Dr. Patel's claim is subordinated by consent of the Claimant until all other Claims, except the Claim of the Class 1 creditor are paid in full.

***The most notable figures in the Disputed Unsecured Claims listing are HLT Existing Franchise Holding ($4,301,018); PJ Dick ($1,264,466 as set forth in the Proof of Claim); Rush Air ($267,931); and Crescent Hotels & Resorts ($172,836).

---

[2] Includes (a) unsecured claims filed by unscheduled creditors; (b) that portion of any unsecured claim filed by a scheduled creditor that exceeds the amount debtor scheduled; and (c) any unsecured portion of any secured debt not previously scheduled.

III.    Assets

### ASSETS

| Assets | Value | Basis for Value ** | Name of Lien Holder (if any) (Fair Market Value/ Book Value) | Amount of Debtor's Equity (Value Minus Liens) |
|---|---|---|---|---|
| Hotel Bldg and Land | $54 to 66 million | Appraisal dated September 27, 2010 | See Section II, A, infra | |
| Cash on hand - House fund | $26,270.00 | The exact amount changes daily | | |
| Credit Card in transit | $222,188.02 | The exact amount changes daily | | |
| KeyBank - funds held | $195,133.71 | The exact amount Changes daily | | |
| Key Bank Loan Reserve (equipment & improvements) | $2,442.525.80 | The exact amount changes daily | | |
| KeyBank Loan Reserves (Insurance) | $164,020.00 | The exact amount changes daily | | |
| KeyBank Loan Reserve (Taxes) | $347,738.00 | The exact amount changes daily | | |
| Kaybank Loan Reserve Interest | $576,000.00 | Interest Reserve to pay monthly interest in case of payment default | | |
| Prism Operating Account | $287,000.01 | The exact amount changes daily | | |
| Brentwood Beer Deposit | $5,000.00 | | | |
| A/R | $574,815.00 | | | |
| Pa Liquor License (intangible) | $25,000.00 | Estimate per counsel | | |
| Contracts 7 years/Contracts 4 year [2006 - remaining life] | $142,877.00 | | | |
| Automobile | $13,608.00 | | | |
| Computers | $9,853.00 | | | |
| FF&E In Plant and Room Upgrades | $ | Included in appraisal above | | |
| Inventory | $368,466.00 | | | |
| Construction in Progress | $ | Included in appraisal above | | |

| Prepaid Insurance (unearned premiums) | $217,585.00 | | | |
|---|---|---|---|---|
| Prepaid taxes | $174,980.00 | | | |
| **TOTAL:** | **$392,565.00** | | | |

**       Value per Debtor's schedules. The Value assigned to the Land and Building referenced above has been updated from the amount listed in Schedule "A" of the Debtor's statement of Assets and Liabilities obtained from report issued by Cushman & Wakefield dated September 27, 2010. (Copy attached.)

1.      Are any assets which appear on Schedule A or B of the bankruptcy petition not listed above?

*The table above consolidates the assets scheduled in the Debtors Schedules of Assets and Liabilities "A" and "B.*

If so, identify asset and explain why asset is not in estate:
*None*

2.      Are any assets listed above claimed as exempt?  If so attach a copy of Schedule C and any amendments.
*n/a*

IV.     SUMMARY OF PLAN

1.      Effective Date of Plan: Approximately 30 days following Plan confirmation

2.      Will cramdown be sought?   Yes   ☒   No   ☐

If Yes, state bar date:  Plan Confirmation hearing date

3.      Treatment of Secured **Non-Tax** Claims

### SECURED NON-TAX CLAIMS

| Name of Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| Carbon Capital II/BlackRock Financial Management, Inc | | $49,600,000 | Not impaired. Contractually required monthly interest only payments for the remaining term of the Allowed Claim arising from the Pre-Petition Lender Note (approximately 50 monthly payments following the Effective Date) to be paid from the existing Interest Reserve and then from Hotel Cash Flow with payments guaranteed by the Plan Proponent pledging Letter of Credit of approximately $2.8 million. Claimant will retain all existing liens in Collateral which under the Plan will achieve value of approximately $66,000,000. |
| Central Pension Fund of Int UOE | | $114,293.00 | Allowed Claim to be paid in full with interest from the Effective Date at the Prime Rate in equal quarterly Distributions (4 Distributions per year) over a period of 3 years following the Effective Date. Payments to be made from Hotel Cash Flow as guaranteed by a Letter of Credit in the Amount of $4.8 million to be procured by the Plan Proponent. |
| Comm Steel | | $216,333.00 | Same as directly above. |
| Commonwealth of Pa. Unemployment Compensation Tax | | $34,724.28 | Same as directly above. |
| Pittsburgh Building Owners Fund | | $93,059.08 | Same as directly above. |
| US Foodservice | | $76,042.00 | Same as directly above. |
| TOTAL: | | $50,134,451.36 | |

4.      Treatment of Secured Tax Claims

## *SECURED TAX CLAIMS*

| Name of Creditor | Class | Amount Owed | Summary of Proposed Treatment |
|---|---|---|---|
| ACHD Air Pollution Control Fund | | $375.00 | Allowed Claim to be paid in full with interest from the Effective Date at the Prime Rate in equal quarterly Distributions (4 Distributions per year) over a period of 3 years following the Effective Date. Payments to be made from Hotel Cash Flow and guaranteed by a Letter of Credit in the Amount of $4.8 million to be issued by the Plan Proponent. |
| Allegheny County Liquor Tax | | $2,848.02 | Same as above. |
| Allegheny County Occupancy Tax | | $112,163.41 | Same as above. |
| Pa Dept. of Revenue | | $125,713.83 | Same as above. |
| Pittsburgh Water & Sewer Authority | | $57,476.03 | Same as above. |
| **TOTAL:** | | **$298,576.29** | |

5.      Treatment of Administrative **Non-Tax** Claims[3]

## *ADMINISTRATIVE NON-TAX CLAIMS*

| Name of Creditor* | Amount Owed | Type of Debt** | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| David K. Rudov / Rudov & Stein | $150,000.00 | P | Payment in Full on the Effective Date from Letter of Credit issued by the Plan Proponent in the amount of $400,000 + carve out of cash Collateral for payment Professional Fees as agreed to by the Lender in the amount $150,000. |
| Scott M. Hare, Esq. | $150,000.00 | P | Payment in Full on the Effective Date as outlined above. |
| Leech Tishman | $100,000.00 | P | Payment in Full on the Effective Date as outlined above. |
| LIST ANY OTHER ADMIN CLAIM | $400,000.00 | | |

**\* Identify and Use Separate Line for Each Professional and Estimated Amount of Payment**

**\*\* Type of Debt (P=Professional, TD=Trade, TX=Taxes)**

---

[3] Include all §503(b) administrative claims.

6.      Treatment of Administrative Tax Claims      **NONE**

### *ADMINISTRATIVE TAX CLAIMS*

| Name of Creditor | Class | Amount Owed | Date of Assessment | Summary of Proposed Treatment |
|---|---|---|---|---|
| none | | | | |
| | | | | |

7.      Treatment of Priority Non-Tax Claims      **NONE**

### *PRIORITY NON-TAX CLAIMS*

| Name of Creditor | Class | Amount Owed | Date of Assessment | Summary of Proposed Treatment |
|---|---|---|---|---|
| Carpenters Contribution Trust Account | | $7,655.00 | To be determined prior to Plan Confirmation | Allowed Claim to be paid in full with interest from the Effective Date at the Prime Rate in equal quarterly Distributions (4 Distributions per year) over a period of 3 years following the Effective Date. Payments to be made from Hotel Cash Flow and guaranteed by a Letter of Credit in the Amount of $4.8 million to be issued by the Plan Proponent. |
| Central Pension Fund of Intl UOE | | $50,000.00 | | As outlined above. |
| HEREIU | | $565,240.42 | | As outlined above. |
| Operating Engineers Local 95 | | $1,104.82 | | As outlined above. |

16

| | | | |
|---|---|---|---|
| Opg Eng Local 95 Training Fund | $229.34 | | As outlined above. |
| Painters Dist. 57 Local Union 6 | $414.93 | | As outlined above. |
| Painters Dist. 57 Local Union 6 | $10,631.03 | | As outlined above. |
| Pittsburgh Building Owners Welfare | $0.00 | | As outlined above. |
| Plumbers Local 27 Combined Fund | $2975.06 | | As outlined above. |
| Unite-HERE National Retirement | $184,046.95 | | As outlined above. |
| **TOTAL:** | **$822,297.55** | | |

8.     Treatment of Priority Tax Claims[4]

### *PRIORITY TAX CLAIMS*

| Name of Creditor* | Amount Owed | Type of Debt** | Summary of Proposed Treatment and Date of First Payment |
|---|---|---|---|
| Pa Department of Revenue | $125,713.83 | | Payment in full by issuing approximately 54 equal monthly payments of principal and interest at the statutory rate per 11 USC §1129(a)(9)(C) such that all payments are completed with 5 years following September 7, 2010. |
| **TOTAL:** | **$125,713.83** | | |

---

[4] Include dates when any §507(a)(7) taxes were assessed.

9.      Treatment of General Unsecured Non-Tax Claims

*NOTE: CLAIMS IDENTIFIED WITH " ** " ARE DISPUTED CLAIMS. PURSUANT TO THE PLAN, UNLESS AGREED TO BY THE DEBTOR (OR THE REORGANIZED DEBTOR) AND THE CLAIMANT, DISPUTED CLAIMS WILL BE RESOLVED BY THE BANKRUPTCY COURT PURSUANT TO THE PLAN TERMS. THE RESULTING ALLOWED AMOUNT, IF ANY, WILL RECEIVE THE SAME TREATMENT AS THE OTHER MEMBER OF THE CLASS. THE DEBTOR RESERVES THE RIGHT TO DISPUTE ANY CLAIM NOT SO DESIGNATED BELOW.*

### GENERAL UNSECURED NON-TAX CLAIMS

| Creditor | Class | Total Amount Owed | Percent of Dividend |
|---|---|---|---|
| A Basket Of Pittsburgh | All Claimants Listed below are in Class 4. | $66.29 | **As to all Class 4 Creditors**<br><br>Allowed Claim to be paid in full with interest at the Prime Rate in equal quarterly Distributions over a period of time following the Effective Date. Payments to be made from Hotel Cash Flow after deducting payments to be made to Classes 1, 2 and 3 as guaranteed by a Letter of Credit in the Amount of $4.8 million to be issued by the Plan Proponent. The length of time required to fully pay Class 4 Claims will be determined by the total amount of Allowed Claims in this Class. |
| A. J. Vater and Company | | $70,885.00 | 100% |
| AB Specialties, Inc. | | $5,792.00 | 100% |
| Accent Electronic Systems | | $7,653.96 | 100% |
| Access Bookings | | $850.50 | 100% |
| Adam Petrovich & Associates, inc. | | $1,877.85 | 100% |

| | | | |
|---|---|---|---|
| ADP INC | | $11,410.94 | 100% |
| Advantage Fitness Products | | $1,686.72 | 100% |
| Aetna Life Insurance Company | | $1,611.12 | 100% |
| Al-Anon | | $2,535.00 | 100% |
| Albert Uster Imports, Inc. | | $183.37 | 100% |
| All Phase Electric Supply Co. | | $65.98 | 100% |
| All Pro Signs, Inc. | | $1,134.20 | 100% |
| Allegheny Cooking Equipment Service | | $1,565.13 | 100% |
| Allen Bailey Tag & Label, Inc. | | $408.57 | 100% |
| Amcom Office Systems | | $872.05 | 100% |
| American Hotel Register Company | | $3,500.00 | 100% |
| American Industrial Contracting | | $14,400.00 | 100% |
| Angela Ilg | | $36.00 | 100% |
| Ann-Lin Glaser | | $33.15 | 100% |
| Annual Conference Office | | $4,240.00 | 100% |
| Architectural Design, Inc. | | $0.00 | 100% |
| Astor Chocolate Corporation | | $243.02 | 100% |
| AT&T | | $794.48 | 100% |
| Audio & Telecom Services | | $1,146.07 | 100% |
| AVC Wallpaper Installation | | $759.00 | 100% |
| Baron Industries Supply, Inc. | | $0.00 | 100% |
| Bearcom Wireless Worldwide | | $278.20 | 100% |
| Best Western Parkway Center Inn | | $148.15 | 100% |
| Blooms Florist, LLC | | $1,528.50 | 100% |
| BMI | | $928.00 | 100% |
| Boys & Girls Club of Chicago | | $906.30 | 100% |
| Boys & Girls Club of Springfield | | $250.80 | 100% |
| Boys & Girls Club of The Brazos Valley | | $294.08 | 100% |
| Boys & Girls Club of the High-Line | | $22.80 | 100% |
| Breadworks | | $27,539.32 | 100% |
| Brentwood Distributing Co. | | $6,475.93 | 100% |

| | | | |
|---|---|---|---|
| Bryan Edelstein, C/O USW LOCAL 13423 | | $105.97 | 100% |
| Buchanan, Ingersoll & Rooney | | $89,746.50 | 100% |
| Builder's Hardware | | $848.00 | 100% |
| C&L Mechanical | | $8,681.20 | 100% |
| Campione Landscaping Co., Inc. | | $2,085.00 | 100% |
| Canvas Deluxe | | $1,680.00 | 100% |
| Carlos Bustamante | | $7,150.00 | 100% |
| CCBC Eastern Great Lakes | | $4,007.35 | 100% |
| Center Cleaners | | $0.00 | 100% |
| Charlee Glenn | | $90.00 | 100% |
| Chester Pool Systems, Inc. | | $107,370.00 | 100% |
| Chocolates A LA Carte | | $1,061.80 | 100% |
| Cintas Corporation #013 | | $1,176.06 | 100% |
| Citiwide Chem-Dry | | $507.60 | 100% |
| Classic Limousine LLC | | $453.60 | 100% |
| Classic Travel & Tours, Inc. | | $3,988.60 | 100% |
| CleanCare Smart Linen | | $122,828.88 | 100% |
| Coca-Cola USA | | $19,381.10 | 100% |
| Comcast | | $0.00 | 100% |
| Connie Duglin Specialty Chair Co | | $1,045.10 | 100% |
| Constellation New Energy, Inc. | | $0.00 | 100% |
| CPR Simplicity LLC | | $640.00 | 100% |
| Craig Distributing Co. | | $2,127.97 | 100% |
| Creative Sign Solutions, Inc. | | $4,410.00 | 100% |
| Crescent Hotels & Resorts **DISPUTED** | | $172,826.00 | ALLOWED AMOUNT WILL BE PAID 100% |
| Cuisine Solutions | | $1,531.04 | 100% |
| Cvent, Inc. | | $819.00 | 100% |
| D.H. Bertenthal and Sons | | $3,192.65 | 100% |
| David Green Organization, Inc. | | $28.96 | 100% |
| Davis Vision | | $422.66 | 100% |
| Design Space LLC | | $2,941.97 | 100% |

| | | | |
|---|---|---|---|
| Dish Network | | $0.00 | 100% |
| Double Tree Hotel | | $181.26 | 100% |
| Duquesne Light Company | | $0.00 | 100% |
| Ecolab Institutional | | $1,786.97 | 100% |
| Ecolab Pest Elimination | | $5,360.01 | 100% |
| Electronic Forms Plus, Inc. | | $1,685.41 | 100% |
| Eleven Wireless, Inc. | | $486.90 | 100% |
| Environmental Air, Inc. | | $2,432.50 | 100% |
| Equitable Energy | | $184.23 | 100% |
| Equitable Gas | | $0.00 | 100% |
| Express Personnel Services | | $2,000.00 | 100% |
| Faber Coe & Gregg of Pennsylvania, Inc. | | $929.12 | 100% |
| FedEx | | $41.33 | 100% |
| Filtech | | $266.43 | 100% |
| Filter Service & Installation, Inc. | | $154.00 | 100% |
| Five Star Ventures, LLC | | $526.25 | 100% |
| Fortessa, Inc. | | $1,468.68 | 100% |
| Frosch | | $2,714.10 | 100% |
| Fudgie Wudgie Fudge & Chocolate | | $108.00 | 100% |
| Future Aids | | $24.90 | 100% |
| Garratt-Callahan Company | | $1,024.78 | 100% |
| Garrow Bros Draft Service | | $625.95 | 100% |
| GE Capital | | $2,850.02 | 100% |
| Gidas Flowers | | $506.09 | 100% |
| Goldberg, Kamin & Garvin | | $120,000.00 | 100% |
| Graphic Controls, LLC | | $174.87 | 100% |
| Greater Pittsburgh Hotel Association | | $1,100.00 | 100% |
| Guest Supply LLC | | $14,124.23 | 100% |
| H D Supply Facilities Maintenance | | $580.87 | 100% |
| Hampton Inn | | $1,763.58 | 100% |
| Harold G. Jones Co. | | $72.64 | 100% |

| | | | |
|---|---|---|---|
| Hepatica | | $63.13 | 100% |
| HEREIU | | $683,911.78 | 100% |
| Highmark Blue Shield | | $33,204.09 | 100% |
| Hilton Hotels Corporation ** | Alleged damages from wrongful termination of Franchise Agreement | $434,654.69 $4,301,018.67 | ALLOWED AMOUNT WILL BE PAID 100% |
| Holiday Inn Express Hotel | | $2,500.00 | 100% |
| Holiday Inn Pittsburgh Central | | $2,500.00 | 100% |
| Hotel Credit Association | | $26.00 | 100% |
| IMI Data Search, Inc. | | $321.00 | 100% |
| Independence Communications, Inc. | | $528.50 | 100% |
| Industry Color Printing, Inc. | | $28.45 | 100% |
| Inspection & Valuation International | | $3,144.55 | 100% |
| International Business Machines | | $21,311.90 | 100% |
| International Nortel Networks | | $4,829.07 | 100% |
| Interpark | | $1,295.00 | 100% |
| Jackson Welding Supply Co., Inc. | | $0.00 | 100% |
| Jan Horn | | $126.54 | 100% |
| Jerry Collins | | $58.84 | 100% |
| Jerry Taggart | | $87.51 | 100% |
| Joe Belan | | $400.00 | 100% |
| John V. Heineman Company | | $1,906.11 | 100% |
| Joint Chemical Group, PPG Industries | | $1,995.00 | 100% |
| Justin Glier | | $80.00 | 100% |
| Kelly Marble & Painting, Inc. | | $1,530.00 | 100% |
| Kenn Cortese | | $300.00 | 100% |
| Keswick Creamery | | $145.86 | 100% |
| Knickerbocker Russell Co., Inc. | | $1,944.19 | 100% |
| Koch Filter Corporation | | $4,094.25 | 100% |
| Koonse Food Equipment Service, Inc. | | $510.27 | 100% |
| Kreiser Distributing Co., Inc. | | $2,920.30 | 100% |

| | | | |
|---|---|---|---|
| Krueger Event Management | | $99.00 | 100% |
| Kubicki Draper | | $31,196.53 | 100% |
| Leger & Ball, PC | | $6,346.25 | 100% |
| Lendable Linens | | $470.80 | 100% |
| Lisa Adams, C/O Peter Friday, Esq. ** | Personal Injury – Slip and Fall Allowed claim to be paid by insurance | $0.00 | ALLOWED AMOUNT WILL BE PAID 100% |
| Litman, Gerson LLP | | $29,000.00 | 100% |
| Lodgenet Interactive Corporation | | $0.00 | 100% |
| Louis Plung & Company LLP | | $20,291.25 | 100% |
| Lutron Service | | $600.00 | 100% |
| Maintenance USA | | $3,942.31 | 100% |
| Mariani & Richards, Inc. | | $11,512.50 | 100% |
| Masterwork Paint & Decorating Co. | | $13,738.36 | 100% |
| Mastro Ice, Inc. | | $312.50 | 100% |
| McIlvried, Didiano & Mox, LLC | | $1,125.00 | 100% |
| Mediterra Bakehouse | | $324.20 | 100% |
| Meeting Assistance, Inc. | | $3,915.10 | 100% |
| Michael's Finer Meats & Seafood | | $27,571.39 | 100% |
| Michaels Textile Co., Inc. | | $363.34 | 100% |
| Midwest Metal Construction, LLC | | $21,095.00 | 100% |
| Miho Kim | | $242.11 | 100% |
| Modern Reproductions, Inc. | | $281.97 | 100% |
| Murray Avenue Kosher, Inc. | | $417.41 | 100% |
| National Elevator Inspection Services | | $470.00 | 100% |
| National Telecom Services | | $917.53 | 100% |
| NESTLE DSD | | $110.40 | 100% |
| Network Parking | | $1,800.00 | 100% |
| NOR1, Inc. | | $2,718.00 | 100% |
| NUCO2 LLC | | $121.65 | 100% |
| Occupational Health Centers of SWPA | | $119.00 | 100% |
| Office Depot | | $11,263.67 | 100% |

| | | | |
|---|---|---|---|
| Omni William Penn Hotel | | $452.19 | 100% |
| Orion | | $4,725.00 | 100% |
| Otis Elevator Company | | $49,500.00 | 100% |
| P J Dick Incorporated **DISPUTED** | | $1,026,730.00 | ALLOWED AMOUNT WILL BE PAID 100% |
| PA Bureau Of Liquor Control Enforcement | | $0.00 | 100% |
| PA Tourism & Lodging Association | | $2,905.92 | 100% |
| PAETEC | | $2,251.81 | 100% |
| Patel, Kiran | | The Claim of Kiran Patel will be subordinated in payment to all Allowed Claims in all Classes except Class 1 | Subordinated |
| Paragon Monteverde | PACA CLAIM ASSERTED | $14,059.21 | 100% |
| Peerless Industries, Inc. | | $1,220.00 | 100% |
| Penn Fixture and Supply Co. Inc. | | $56.62 | 100% |
| Pennsylvania AFL-CIO | | $750.00 | 100% |
| Penske Truck Leasing Co., LP | | $1,078.45 | 100% |
| Pittsburgh Recycling | | $35.64 | 100% |
| Pittsburgh Steelers | | $0.00 | 100% |
| Platts Conferences | | $3,525.90 | 100% |
| Preferred ITM Inc. | | $1,310.00 | 100% |
| Printing Services Unlimited | | $430.67 | 100% |
| Priority Pak | | $54.14 | 100% |
| Priory Hospitality | | $1,509.53 | 100% |
| Pro TV & Audio Service, Inc. | | $194.33 | 100% |
| Prudential Group Insurance | | $2,205.11 | 100% |
| Quest Diagnostics | | $150.68 | 100% |
| Quicklease Powered by Coactiv | | $547.07 | 100% |
| RCC | | $399.85 | 100% |
| Response Envelope | | $102.30 | 100% |
| Restaurant Solutions, Inc. | | $24,923.00 | 100% |
| RKB Electric and Supply, LLC | | $73,799.38 | 100% |
| Rodney Bullock | | $35.32 | 100% |

| | | | |
|---|---|---|---|
| RONCO | | $541.42 | 100% |
| Rubicon | | $825.00 | 100% |
| Rush Air **DISPUTED** | | $267,931.00 | ALLOWED AMOUNT WILL BE PAID<br>100% |
| S.S.M. Inc. | | $1,376.40 | 100% |
| Sachin Shah | | $16,571.54 | 100% |
| Scentair Technologies,  Inc. | | $263.22 | 100% |
| ServiceMaster | | $0.00 | 100% |
| Seyfarth Shaw, LLP | | $6,874.75 | 100% |
| Shea Stokes Carter | | $18,070.58 | 100% |
| Shelly Ames | | $22.36 | 100% |
| Sheraton Myrtle Beach Convention Center | | $1,279.40 | 100% |
| Ski Supply Kit International | | $373.94 | 100% |
| Society for Vascular Ultrasound | | $4,446.90 | 100% |
| Sri Sanamvienkata | | $86.13 | 100% |
| Stanley Access Tech | | $1,379.24 | 100% |
| Star Systems Services, Inc. | | $688.08 | 100% |
| Starcite, Inc. | | $2,241.18 | 100% |
| Stericycle, Inc. | | $340.20 | 100% |
| SYSCO Foods Of Pittsburgh | | $0.00 | 100% |
| Tammie Pontsler **DISPUTED** | Personal Injury – Slip and Fall<br>Allowed claim to be paid by insurance | $0.00 | ALLOWED AMOUNT WILL BE PAID<br>100% |
| Tanika Connesero | | $62.99 | 100% |
| Taylor Rental | | $3,566.26 | 100% |
| Technology Insurance Company | | $12,371.50 | 100% |
| Teleadapt | | $1,184.86 | 100% |
| The Hite Company | | $1,241.20 | 100% |
| The Home Depot Supply | | $3,816.66 | 100% |
| The Knowland Group, Inc. | | $297.00 | 100% |
| The Leasing Experts | | $89,608.71 | 100% |
| The Manning Group | | $8,300.55 | 100% |
| The Marek Group | | $324.29 | 100% |
| The Sushi Bar | | $434.80 | 100% |

| | | | |
|---|---|---|---|
| The Wasserstrom Company | | $4,620.84 | 100% |
| The Weavertown Group | | $13,945.00 | 100% |
| Thermal Netics, c/o Kerr Russel Weber | | $13,177.13 | 100% |
| Thomas Lang | | $500.00 | 100% |
| Tom Brown, Inc. | | $1,425.70 | 100% |
| Tourwerks, Inc. | | $1,393.80 | 100% |
| Travelclick | | $770.00 | 100% |
| Tri State Valet | | $20,000.00 | 100% |
| Tri-State Land Co., Inc. | | $640.26 | 100% |
| Turner Dairy Farms Inc | | $4,281.02 | 100% |
| UPS | | $584.35 | 100% |
| US Chess Federation | | $2,915.00 | 100% |
| Verizon | | $918.70 | 100% |
| Victory Security | | $3,955.00 | 100% |
| Vincent Allen, Inc. | | $3,350.00 | 100% |
| Visit Pittsburgh | | $2,352.00 | 100% |
| Waste Management | | $25.38 | 100% |
| Wedding Wire, Inc. | | $3,500.00 | 100% |
| Weddingpages, inc. | | $2,317.00 | 100% |
| Westmoreland Supply Pittsburgh | | $23,263.98 | 100% |
| Wex Fleet Fueling, c/o Receivable Mgmt | | $660.72 | 100% |
| Whirl Magazine | | $1,950.00 | 100% |
| William Otto | | $10.90 | 100% |
| William Penn Parking | | $925.00 | 100% |
| Willis of Pennsylvania, Inc. | | $75,189.00 | 100% |
| Winebrenner Red Carpet Travel | | $1,400.60 | 100% |
| Wm. A. Fischer Carpet Co., Inc. | | $1,520.00 | 100% |
| Zurich Insurance | | $10,608.36 | 100% |
| **TOTAL:** | | **$4,144,897.50** | |

10.    Treatment of General Unsecured Tax Claims

## *GENERAL UNSECURED TAX CLAIMS*

| Creditor | Class | Total Amount Owed | Percent of Dividend |
|----------|-------|-------------------|---------------------|
| none | | | |

11.    Will periodic payments be made to unsecured creditors?

Yes    ☒    No    ☐

If so: *Payment to Unsecured Creditors well be made in full and in equal quarterly installments (4 payments per year) over a period of time following the Effective Date. The exact amount of time to fully pay unsecured creditors (Class 4) will be determined by the available Hotel Cash Flow and the total amount of Allowed Claims in Class 4 as guaranteed by a Letter of Credit in the amount of $4.8 million.*

State source of funds for planned payments, including funds necessary for capital replacement, repairs, or improvements:

*The source of payment for all distributions under the Plan will be the Hotel Cash Flow generated from the continued operations of the Wyndham Grand Pittsburgh Downtown and guaranteed by the initial posting of $8 million in Letters of Credit to be procured by the Plan Proponent for the benefit of all Classes of Creditors..*

*In addition, Dr. Kiran Patel (or an entity controlled by him) shall, immediately following the Effective Date of the Plan, provide for a Completion Bond in the amount of $4 million to finish all construction that remains to be completed in order to permit the Hotel to achieve AAA 4 Diamond status with Wyndham Hotel & Resorts. As construction is completed, construction reserves held by Key Bank Real Estate Capital or BlackRock (approximately $1.6 million) shall be released and paid to the contracting parties, and the remaining construction costs will be furnished by the Plan Sponsor.*

Other significant features of the Plan:

*All claims held by Dr. Kiran Patel shall be subordinated in repayment to the Allowed Claims of all parties except Carbon Capital / BlackRock.*

*The Reorganized Debtor will fund a Disputed Claim Reserve to assure that Disputed Claims that subsequently become Allowed receive the same Distributions as provided for in the Plan.*

Include any other information necessary to explain this plan:

V.    Comparison of Plan with Chapter 7 Liquidation

*As the date of this Disclosure Statement and Plan, Carbon Capital / BlackRock is aggressively seeking to obtain Relief from the Automatic Stay; proceed back to the Court of Common Pleas of Allegheny County; obtain the Appointment of a Receiver and Foreclose on the Hotel and seek payment of its claim exclusively, all at the prejudice of the remaining creditors of this bankruptcy estate. If that occurs Management and counsel are of the opinion that the only creditor that would be paid is Carbon Capital / BlackRock. In fact, insofar as the value of the Debtor's assets exceed the Allowed Claim asserted by Carbon Capital / BlackRock, it is reasonably certain the Carbon Capital will profit handsomely from this foreclosure and will obtain substantially more than it is owed if Relief from Stay is granted. The Debtor's Plan will pay the Allowed Claims of all creditors in full over a period of time; retain the employment of over 300 dedicated long term employees and permit the largest hotel in the city of Pittsburgh to remain open "under the flag" of the world largest hotelier, Wyndham Hotels and Resorts.*

*If this case is converted and a Trustee is appointed, it is the opinion of the Debtors Management and counsel that a Chapter 7 liquidation of assets will not result in a meaningful distribution to any parties except Carbon Capital / BlackRock since all of the assets will be liquidated in the Chapter 7 proceeding or the state court foreclosure proceeding and there would be no remaining asserts of meaningful collection value to satisfy the payment of any Claims.*

Will the creditors fare better under the plan than they would in a Chapter 7 liquidation?

Yes    ☒    No    ☐

Explain:

*Under this Chapter 11 plan, all Allowed Claims will be paid in full. By contrast, Relief from Stay assures payment only to the Lender.*

VI.    Feasibility

A.    Attach Income Statement for Prior 12 Months.

B.    Attach Cash Flow Statement for Prior 12 Months.

C.    Attach Cash Flow Projections for Next 12 Months.

*See attached Financial Projection*

Estimated amount to be paid on effective date of plan, including administrative expenses.

Show how this amount was calculated.

$400,000          Administrative Class [Fees]

$none             Taxes – to be paid current

$                 Unsecured Creditors

$none             UST Fees To be paid current

$400,000.00    TOTAL

What assumptions are made to justify the increase in cash available for the funding of the plan?

Will funds be available in the full amount for administrative expenses on the effective date of the plan?  From what source?  If not available, why not and when will payments be made?

Cash on hand $_____ (Current).  Attach current bank statement.

Cash on hand $_____ (Estimated amount available on date of confirmation)

If this amount is less than the amount necessary at confirmation, how will debtor make up the shortfall?

***The Plan Proponent will obtain a Letter of Credit in the Amount of $400,000 to fund Effective Date Administrative Expenses.***

VII.    Management Salaries

MANAGEMENT SALARIES

| Position/Name of Person Holding Position | Salary at Time of Filing | Proposed Salary (Post-Confirmation) |
|---|---|---|
| Currently not determined / To be disclosed prior to the Confirmation with full disclosure as required pursuant to the Bankruptcy Code | | |
| | | |
| | | |

VIII.    Identify the Effect on Plan Payments and Specify Each of the Following:

1.      What, if any, litigation is pending?

***As of the Date of this Disclosure Statement, the pending litigation involves Relief from Stay which is rendered moot by this Plan; Use of Cash Collateral and an Expedited Motion to***

*Approve the Wyndham Franchise Agreement*

2.       What, if any, litigation is proposed or contemplated?

*The Debtor or the Reorganized Debtor shall reserve the right to object to any and all Claims asserted by any Claimant. Further the Debtor or the Reorganized Debtor shall commence litigation against Hilton Hotels and all related entities; Crescent Hotels & Resorts and Carbon Capital / BlackRock*

IX.    Additional Information and Comments

IX.    Certification

The undersigned hereby certifies that the information herein is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

If Debtor is a corporation, attach a copy of corporate resolution authorizing the filing of this Disclosure Statement and Plan. ***See Attached***

If Debtor is a general partnership, attach a copy of the consent agreement of all general partners to the filing of the bankruptcy.

**THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. EACH CREDITOR AND EQUITY INTEREST HOLDER IS STRONGLY URGED TO REVIEW THE PLAN BEFORE CASTING A BALLOT.**

**THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

**THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR AND INTEREST HOLDER SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.**

Respectfully submitted,

Dated: October 6, 2010                Shubh Hotels Pittsburgh, LLC,
                                       by its Manager, Pittsburgh Grand
                                       Manager, LLC

                                       By:   ***/s/ Frank Amedia***
                                       Name: Frank Amedia

Title:   Manager


AND

Pittsburgh Grand LLC

By:      */s/ Frank Amedia*
Name: Frank Amedia
Title:   Manager


Respectfully submitted,
Rudov & Stein, P.C.

*/s/ David K. Rudov*
David K. Rudov, Esq.
drudov@rudovstein.com
Pa. I.D. # 35579

100 First Avenue, Suite 500
First & Market Building
Pittsburgh, PA 15222
Tel:    412-281-7300


AND

*/s/ Scott M. Hare*
Scott M. Hare, Esquire
scott@scottlawpgh.com
Pa. I.D. # 63818

1806 Frick Building
437 Grant Street
Pittsburgh, PA  15219
Tel:    412-338-8632


AND

*/s/ James Gassenheimer*
James Gassenheimer, Esq
Daniel Lampert, Esq.
Brian Rich, Esq.
Berger Singerman
200 South Biscayne Blvd. Suite 1000
Miami, FL 33131
Tel: 305-714-4383

Attorneys for Pittsburgh Grand LLC