# PRELIMINARY TERM SHEET FOR POST-PETITION USE OF CASH COLLATERAL AND POST-PETITION FINANCING

## NOVEMBER _____ , 2010

The following is a Preliminary Term Sheet of the principal terms and conditions under which Carbon Capital II Real Estate CDO 2005-1 Ltd. ("Carbon"), and BlackRock Financial Management, Inc. ("BlackRock", and with Carbon, the "Lender") for itself and as sub-servicer for Carbon, would (a) allow the use of Cash Collateral and (b) provide post-petition financing (the "Post-Petition Advances") to Shubh Hotels Pittsburgh, LLC ("Shubh"), a Chapter 11 Debtor ("Debtor") in Case No. 10-26337 pending in the United States Bankruptcy Court for the Western District of Pennsylvania ("Bankruptcy Case"), the Debtor being referred to herein as the "Borrower", pursuant to the interim financing order (the "Interim Financing Order") and any final financing order (the "Final Financing Order") each identified below (collectively, the "Financing Orders") for the financing contemplated by this Preliminary Term Sheet (the "Post-Petition Advances"). In connection with the Post-Petition Advances, the terms and conditions of the Borrower's use of cash collateral will be incorporated into Financing Order(s).

This Preliminary Term Sheet for Post-Petition Financing in the form of Servicing Advances and Servicing Expenses under the Pre-Petition Credit Agreement and the Special Servicing Agreement between BlackRock and Midland Loan Services, Inc., as Special Servicer.

The existence of this Preliminary Term Sheet and its contents may not be offered or admitted into evidence by reason of, without limitation, Federal Rule of Evidence 408, and nothing contained herein is intended or shall ever be construed to be, an admission of fact or a waiver of any rights, remedies, claims, causes of action or defenses of the Lender. This Preliminary Term Sheet is not intended to, and shall not, create any binding obligation to negotiate and the Lender reserve the right to add to or otherwise modify any requirement herein at any time or to terminate negotiations and proceed to exercise any right or remedies which it may have.

This Preliminary Term Sheet is an expression of interest in considering a transaction on the general terms and conditions outlined below. It is not intended to and does not create any binding legal obligation on the part of any party. This Preliminary Term Sheet is not, and is not to be construed as, a commitment by any Lender to provide financing or to change the terms of their specific transaction. Any such offer or commitment would be in a definitive writing, and would be preceded by the satisfactory completion of credit review and analysis and a field survey, and the receipt of all requisite approvals by the Lender. Moreover, the effectiveness of any commitment would be conditioned upon the prior execution and delivery of final documentation acceptable to the Lender and respective counsel, and be subject to adequate and accurate financial information.

The summary of terms, covenants and considerations set forth in this Preliminary Term Sheet is not intended to be comprehensive and if, in the course of the due diligence review of the Borrower, the Lender determine that additional covenants and terms are necessary to protect

their interests, they reserve the right to address such matters.

**SUMMARY OF TERMS AND CONDITIONS**

I.    PARTIES TO POST-PETITION ADVANCES; PROPERTY

| | |
|---|---|
| Borrower: | Shubh Hotels Pittsburgh, LLC ("Shubh"), a Chapter 11 Debtor ("Debtor") in Case No. 10-26337 pending in the United States Bankruptcy Court for the Western District of Pennsylvania ("Bankruptcy Case" and "Bankruptcy Court"). |
| ~~Loan Party/Parties~~ | ~~Debtor, and any trustee of the Debtor's Estate, Guarantor, all insiders and equity owners of the Debtor, and Hotel Manager.~~ |
| Hotel Manager: | Prism Hospitality, L.P. ("Prism") |
| Lender: | Carbon Capital II Real Estate CDO 2005-1, Ltd. ("Lender"), is a Cayman Islands exempted company with limited liability, having an address in care of BlackRock, Inc., 40 East 52nd Street, New York, New York, 10022. |
| | Black Rock Financial Management, Inc. ("Black Rock") is a Delaware corporation, having an address of BlackRock, Inc., 40 East 52nd Street, New York, New York, 10022. BlackRock manages and administers the hereinafter described loan as sub-special servicer to Midland Loan Services which is the special servicer to Lender, and, in that capacity, BlackRock is authorized to administer the Loan and enforce Lender's rights and remedies thereunder. |
| Property | The 713 room hotel located at 600 Commonwealth Place, Pittsburgh, PA 15222 (the "Hotel" or the "Property") |

II.    Pre-Petition Financing Arrangements

| | |
|---|---|
| Pre-Petition Credit Agreement and Loan: | The Pre-Petition Loan ("Pre-Petition Credit Agreement") consist of:<br><br>1. On or about August 17, 2007, Column Financial, Inc. ("CFI"), a Delaware corporation, and Mortgagor entered into that certain Loan Agreement (the "Loan Agreement"), pursuant to which CFI extended a loan in the aggregate original principal amount of $49,600,000.00 (the "Loan" or the "Pre-Petition Loan") to Mortgagor (the "Loan Agreement").<br><br>2. The Loan is evidenced by an Amended and Restated Promissory Note dated January 14, 2010, from |

Mortgagor in favor of Lender in connection with the Loan Amendment (defined in paragraph 9 below), in the original principal amount of $49,600,000.00 (the "<u>Note</u>").

3.  The Note and Loan are secured by, inter alia:

a.  that certain Open End Construction Mortgage and Security Agreement dated as of June 18, 2007 and effective as of August 17, 2007 and duly recorded on August 22, 2007 with the Recorder of Deeds of Allegheny County, Pennsylvania in Mortgage Book Volume 34345, Page 431 (the "<u>Mortgage</u>");

b.  that Certain Assignment of Leases and Rents dated as of June 18, 2007 and effective as of August 17, 2007 and duly recorded on August 22, 2007 with the Recorder of Deeds of Allegheny County, Pennsylvania in Mortgage Book Volume 13348, Page 366 (the "<u>Assignment of Leases</u>"); and

c.  that certain Guaranty of Payment executed as of August 17, 2007 by Atul Bisaria for the benefit of CFI, that certain Guaranty of Completion executed as of August 17, 2007 by Atul Bisaria for the benefit of CFI, that certain Guaranty of Recourse Obligations executed as of August 17, 2007 by Atul Bisaria for the benefit of CFI (collectively, the "<u>Guaranties</u>").

4.  Pursuant to that certain Loan Sale Agreement dated as of August 29, 2007 between CFI and Lender, CFI agreed to sell and Lender agreed to purchase the Loan, pursuant to which CFI assigned all of its rights, title and interest in the Loan to the Lender, as noted in the Assignment from CFI to the Lender, dated August 29, 2007 and recorded on December 19, 2007 duly with the Recorder of Deeds of Allegheny County, Pennsylvania in Mortgage Book Volume 34830, Page 594 (the "<u>Assignment</u>").

5.  The Loan was amended by the First Amendment to Loan Agreement, dated as of January 14, 2010, ("<u>Loan Amendment</u>", together with the Loan, the "<u>Loan Agreement</u>").

6.  Pursuant to the Loan Amendment, the Mortgage was amended by Amendment to Open-End Construction Mortgage and Security Agreement between the Mortgagor and the Lender, dated January 14, 2010, and recorded on January 28, 2010, with the Recorder of Deeds of Allegheny County, Pennsylvania in Mortgage Book Volume 37682, Page 333, (the "First Amended Mortgage" and together with the Mortgage, the "<u>Mortgage</u>").

7.  In addition to the Mortgage and Assignment of Leases, the Lender also perfected its interest in that collateral subject to the Loan Agreement, by, inter alia, filing UCC Financing Statements with the Allegheny County Department of Real Estate at No. 68049, and No. 68168, and No. 68866.

8.  The property secured by the Mortgage and

UCC's include all that real and personal property described in the Mortgage and the Security Agreement (the "<u>Pre-Petition Collateral</u>").

9. Pursuant to the Amended Loan, the Mortgagor and the Lender also entered into the Post Closing Agreement, dated January 14, 2010, (the "Post Closing Agreement, and together with the Loan Agreement, the Note, the Mortgage, the Assignment of Leases, the UCC's and each of the other loan documents, and all other agreements, instruments or documents evidencing, securing or otherwise delivered in connection with the Loan, the "<u>Loan Documents</u>").

10. The Mortgage is an "open-end mortgage" as defined in 42 Pa.C.S.A. §8143

| | |
|---|---|
| Principal Amount due as of the Petition Date | The principal amount due under the Pre-Petition Loan as of the Petition Date is $49,600,000.00. |
| Use of Cash Collateral and Post-Petition Replacement Liens: | As adequate protection, the Financing Orders shall provide that the Lender shall be granted a replacement lien to secure the Pre-Petition Loans on all Post-Petition Collateral for and to the extent of the post-petition use of Pre-Petition Collateral and proceeds thereof and for any Post-Petition diminution in value of Pre-Petition Collateral (the "<u>Replacement Lien</u>").  The Replacement Lien shall be subordinate only to (i) the liens granted to the Post-Petition Loans for the benefit of the Lender to secure the Post-Petition Advances (as hereinafter defined) and all obligations relating to the Post-Petition Advances, (ii) the Administrative Expense Carve Out (as hereinafter defined), and (iii) other Permitted Liens to the extent expressly agreed to by the Lender in writing. |

Nothing herein shall subordinate the first lien of the Lender's Mortgage on the Hotel Property.

III.    POST-PETITION ADVANCES FACILITY

| | |
|---|---|
| Post-Petition Commitment: | Advances under the Pre-Petition Credit Agreement and Sub-Servicing Agreement for operating expenses, including but not limited to the preservation of the Collateral and protection of the Lender's first lien priority, in the maximum amount of up to **$3,000,000** (the "<u>Post-Petition Loan Commitment</u>").  To the extent the Post-Petition Commitment is utilized by, or otherwise advanced to or for the account of the Borrower, it is hereinafter referred to as "<u>Post-Petition Advances</u>." |

| | |
|---|---|
| Form of Post-Petition Advances: | The Post-Petition Loan Commitment shall be made available in the form of Post-petitionPetition Advances under the Pre-Petition Credit Agreement, Financing Orders, and this Term Sheet and any Post-Petition Financing Agreement (if any) (collectively, the "Financing Agreements") and, subject to the limit set forth herein. |
| Closing Date: | The Closing Date will occur immediately upon the entry of the Interim Financing Order but no later than November 12, 2010 (the "Closing Date"). |
| Availability of the Post-Petition Advances: | From the Closing Date until the Termination Date referred to below. |
| Interim Post-Petition Advance | Up to $500,000 of the Post Petition Loan Commitment shall be advanced under an Interim Financing Order. |
| Maturity Date: | January 15,February 28, 2011, or such later date as may be agreed upon by the Borrower and the Lender. |
| Termination Date: | The earliest to occur of (vw) the entry of a court order approving a sale of substantially all assets of the Debtor's Estate pursuant to section 363(d) of the Bankruptcy Code; (wx) the Maturity Date; (x) anyone proposes to the Bankruptcy Court a sale of substantially all of the Debtor's Estate assets or a plan of reorganization not approved by the Lender; (y) the filingy) the confirmation of a plan of reorganization that does not provide for payment in full of the Lender's Claims within 15 days of the entry of the confirmation order; or (z) the date the Lender terminates the Post-Petition Commitment because of an Event of Default (as defined in the Financing Orders or the Financing Agreement) upon notice given by the Lender to the Borrower of the occurrence of such Event of Default and termination of the Post-Petition Loan Commitment (any such event being referred to herein as a "Terminating Event" and the date following any applicable notice to the Borrower by the Lender being referred to herein as the "Termination Date"). |
| Purpose of Post-Petition Advance Agreement: | The Post-Petition Advances shall be available solely for (a) loans for payment of approved Cash Expenses (as defined in the Loan Agreement)expenditures detailed in a Bi-weekly cash flow projection acceptable in form and substance to the Lender (the "Budget") where there are insufficient funds available (i) in the Cash Management Account, (ii) in Debtor's Operating and/or Manager's Accounts, or (iii) Rents and revenues |

-6-

generated by the Property to fund and/or pay for such Cash Expenses reflected on the Budget ("Cash Shortfalls"), (b) loans for ~~the payment of fees and interest on, and professional fees of, the Lender, (c) loans for~~ payment of the Administrative Expense Carve Out (as hereinafter ~~referred to~~defined) and U.S. Trustee Fees; and (~~d~~c) loans for the payment of adequate protection payments to or for the benefit of the Lender in the minimum amount of interest due on the Loan to be applied as provided for in the Financing Agreement. Fees and expenses of the Lender ("Lender Costs") may be paid from the Post-Petition Advances upon agreement of the Debtor and the Lender; otherwise, the Lender Costs shall be included in the payoff amount due on the Lender's Claim and paid upon the earlier of (a) a court order authorizing payment or (b) on the Termination Date as set forth herein.

Budget:    The Budget shall be prepared by the Borrower and Hotel Manager showing receipts and disbursements projected in bi-weekly intervals (meaning in two week intervals, "Bi-weekly") through ~~January~~March 15, 2011. The Budget may be amended with the prior written consent of the Lender. The Borrower and Hotel Manager shall represent that the Budget (including any proposed amendments thereto) has been prepared in good faith based upon assumptions believed by the Borrower and the Hotel Manager.

The Budget shall ~~prioritize the payment of Commonwealth of Pennsylvania sales and use taxes, Allegheny County hotel room rental taxes and Allegheny County drink taxes ("Trust Taxes") and Cash Expenses and Debtor shall pay and/or reserve for such Trust Taxes and Cash Expenses in the following order of priority: (i) Trust Taxes; (ii) employee payroll, contributions and other benefits; and (iii) Cash Expenses~~include (a) all current amounts needed for the operation of the Hotel Property, (b) all current sales, use and hotel taxes, (c) all payroll and payroll related expenses, (d) interest then due in respect of the Post-Petition Advances, (e) adequate protection payments to the Lender in the form of current interest on the Pre-Petition Loan and interest on the Post-Petition Advances, and (f) payment of professional fees and expenses in accordance with the Financing Order and other orders of the Court.

To the extent the Budget includes any capital expenditures or the replacement of any furniture, fixtures and/or equipment, such expenditures shall be segregated in a separate category in the budget (e.g. "FF&E"). Borrower shall pay for and perform

all such capital expenditures and replacements of FF&E in accordance with Article 7 of the Pre-Petition Loan Agreement including, without limitation, complying with the payment and/or reimbursement procedures set for the in the Pre-Petition Loan Agreement.

The Borrower and Hotel Manager shall provide to the Lender within five business days after the end of each Bi-weekly period a Bi-weekly budget report showing actual receipts and disbursements for the Bi-weekly period then ended, in comparative form with those budgeted for the same period (the "Budget Variance Report"). The Budget Variance Report will be in such form as will permit the Lender to (i) determine all collections for the prior Bi-weekly period and cumulatively from the Petition Date; (ii) determine amounts spent during the prior Bi-weekly period and cumulatively from the Petition Date; and (iii) identify amounts available to be spent in each of the categories set forth in the Budget during the remaining term of the Budget; with such Budget Variance Report to be in form and substance reasonably satisfactory to the Lender.

Budget Amounts shall NOT include: (a) any taxes that arose or arise from the Membership Transfer Agreement which purportedly transferred all equity of the Debtor to Patel or entities owned or controlled by Patel; (b) dividends, payment of management fees (including any asset management fees) and any other distributions or expenses, to insiders (unless the Lender expressly approves the same as clearly disclosed on the Budget), (c) without Bankruptcy Court approval and the consent of the Lender, purchases or sales of assets outside the ordinary course of business, the assumption of executory contracts, the payment of pre-petition debt or payments outside the ordinary course of business (including a prohibition of payments of pre-petition trade payables to pre-petition trade creditors except for payments provided for in the Budget that have been approved by the Bankruptcy Court for the payment of pre-petition claims of essential creditor that are trade creditors), or (d) payments to any guarantor or any transactions with affiliates.

The form of the Budget and the Budget Variance Report shall be substantially in the format attached hereto and marked as **Exhibit A** and **Exhibit B**.

| | |
|---|---|
| Due Diligence: | It is expressly understood that the Lender must be provided with additional information to enable Lender to determine the appropriate terms of a Final Financing Order and any appropriate adjustments to the terms of the financial covenants that may be needed to the Post-Petition Advances Agreement in connection with the Final Financing Order based on the then existing circumstances. The Borrower and Hotel Manager shall provide to the Lender all such information requested by them no later than 2 weeks prior to the date of the hearing on the Final Financing Order. |
| Cash Management: | The <u>Cash Management Account</u> (Key Bank) and the <u>Blocked Account</u> (PNC Bank) as established under the Pre-Petition Credit Agreement shall continue to be used. All accounts of the Debtor or the Hotel Manager (that relate to the Debtor's Estate) shall be referred to as "<u>Estate Operating Accounts</u>." All cash and cash equivalents (other than payroll accounts and trust accounts) of the Loan Parties and all proceeds of Collateral shall be deposited into the Blocked Account, and then swept into the Cash Management Account in accordance with the terms of the Loan Agreement, Blocked Account Agreement and Cash Management. Disbursements to the Estate Operating Accounts shall be made from the Cash Management Account in accordance with the Financing Agreement and the approved Budget. All funds in the Cash Management Account shall be applied and paid in accordance with the order of priority set forth in Section 2.5.2(b) of the Loan Agreement, as amended by Section 2.8 of the Loan Amendment, including the payment of Debt Service on the Loan <u>in the form of adequate protection</u>. All Post-Petition Advances shall be made directly by the Lender by Lender depositing into the Cash Management Account the amount of any Post-Petition Advance needed to cover any Cash Shortfalls under the Financing Agreement up the aggregate amount of the Post-Petition Commitment. Lender shall be granted a post-petition security interest in and a deposit account control agreement over all cash management accounts including but not limited to the Blocked Account, the Cash Management Account, and the Estate Operating Accounts, pursuant to the Financing Orders. |

IV.   FINANCING ORDERS

As to Liens:                    An order of the Bankruptcy Court in form and substance
                                satisfactory to the Lender, authorizing and approving the Post-
                                Petition Advances pursuant to Bankruptcy Rule 4001(d) and:

(a)    finding that the Lender has extended credit to the
       Borrower in good faith within the meaning of Section
       364(e) of the Bankruptcy Code;

(b)    stipulating that the Lender is fully secured by the
       Pre-Petition Collateral by means of a valid, first priority,
       senior, fully perfected and non-avoidable security
       interest and lien on the Pre-Petition Collateral, ~~excluding
       only Permitted Liens hereinafter referred to, and the
       Borrower agrees not to contest the same~~.   Such lien
       finding shall be subject to the right of the Official
       Committee of Unsecured Creditors to commence a
       contested matter or adversary proceeding to object to or
       challenge such finding by no later than December ~~1,~~15,
       2010 (the "Challenge Period").   Absent any timely
       objection, the lien finding shall automatically be final at
       the end of the Challenge Period.  This process (including
       the requirements of the Bankruptcy Court's affirmation
       of the lien finding if there is an objection) is herein
       referred to as the "Lien Validation Process."

(c)    granting post-petition liens on the Pre-Petition Collateral
       as defined above and Post-Petition Collateral (as
       hereinafter defined) to secure first the Post-Petition
       Advances and then any diminution in the value of the
       Pre-Petition Collateral as a Replacement Lien for the
       benefit of the Lender. The term "Post-Petition
       Collateral" means all assets of the Debtor's Estate, as of
       and after the Petition Date, excluding Avoidance
       Actions (as hereinafter defined).

(d)    granting superpriority administrative claim status (senior
       to any other superpriority administrative claims) to the
       Lender for the use of cash collateral or Pre-Petition
       Collateral or any diminution in value of the Pre-Petition
       Collateral, *provided* that the superpriority administrative
       expense status of the ~~Lender~~Post-Petition Advances
       shall be senior to any superpriority claim granted as
       adequate protection in respect of the Pre-Petition Claim.

(e)    setting a deadline for objections to the Interim Financing Order that is not longer than prior to its entry.

(f)    ~~providing that all Loan Parties acknowledge and agree that neither they nor anyone claiming by, through or under them, have any claims, offsets, defenses, counterclaims, causes of action of whatsoever kind or nature against the Lender, their respective officers, directors, employees, agents, advisors, servicers, or attorneys arising out of or related to the Pre-Petition Credits or the Post-Petition Advances and, if any such exist, they are fully released without prejudice to the rights, if any, of an Official Unsecured Creditor's Committee, as to the lien validation process during the Challenge Period.~~

(~~g~~f)    providing that the ~~Prism Management Agreement shall be collaterally assigned to the Lender pursuant to~~ <u>Debtor shall execute the</u> Lender's form Assignment of Management Agreement and Subordination of Management Fees<u>; pursuant to which the Prism Management Agreement shall be collaterally assigned to the Lender.</u>

(~~h~~g)    providing that all liens and Replacement Liens granted to the Lender shall be perfected upon the entry of such Financing Order without any recordation or filing of any nature whatsoever; and shall be encompassed in and part of the Financing Agreements<u>;</u><u>.</u>

(~~i~~h)    if ~~any Loan Party~~<u>the Borrower</u> defaults with respect to the ~~adequate protection required~~<u>any Financing Order,</u> upon ~~two~~<u>five</u> (~~2~~<u>5</u>) business days written (including email, facsimile, U.S. mail and personal delivery) notice, the Lender will be entitled to relief from the automatic stay pursuant to the Financing Order and the only issue that the objecting party can raise is whether a default actually exists; and during any notice period no Loan Party shall be permitted to use any cash collateral unless expressly consented to by the Lender, subject to the approval of the Bankruptcy Court.

<u>(i)    to the extent that a Final Order is entered on the Patel Equitable Subordination Complaint against the Lender [Dkt _____] pursuant to which any portion of the Pre-Petition Liens of the Lender are equitably subordinated,</u>

then such finding shall not effect the priority of the Post-Petition Advances as provided in the Financing Orders.

As to Cash Collateral:    The Financing Orders, taken together with the Post-Petition Advances, shall also serve as cash collateral orders authorizing the use of cash collateral as follows:

(a)    cash collateral collected after the Petition Date but prior to the Termination Date shall be applied as provided in Section VI below;

(b)    cash collateral collected after the Termination Date shall be applied as provided in Section VI below;

(c)    the Lender's consent to the use of cash collateral by the Loan Parties for any purpose (whether in the form of cash collateral or credit) shall be subject to termination upon the occurrence of an Event of Default under the ~~Loan Agreement, Loan Documents or~~ Financing Orders;

(d)    cash collateral shall not be used to obtain letters of credit from third party lenders without the Lender's express consent;

(e)    post-petition liens shall be granted to or for the benefit of the Lender on the Post-Petition Collateral as Replacement Liens (subordinate only to the liens granted to the for the benefit of the Lender to secure the Post-Petition Advances) to secure the Pre-Petition Loan;

(f)    ~~estimated fees and expenses of the Lender's attorneys and advisors through the Closing Date, and previously invoiced amounts not yet paid, shall be paid at closing;~~

(~~g~~f)    interest on the Pre-Petition Credits shall accrue after the Petition Date at the default rate set forth in the Pre-Petition Credit Agreement, but (i) only the non-default rate of 1.613% shall be paid currently; and (ii) the differential between the default rate and the amounts previously paid as non-default rate shall be paid on the Termination Date at which time all such amounts shall be due and payable;

(~~h~~g)    interest on the Post-Petition Advances shall accrue at Base Rate and Default Rates as hereinafter defined; and

(~~i~~h) cash collateral shall only be used for the payment of ~~Cash Expenses and Trust Taxes and shall be applied by Lender in accordance with Section 2.5.2(b) of the Loan Agreement, as amended by Section 2.8 of the Loan Amendment~~items included on the Budget, except to the extent that such items are capital improvements in connection with the Expansions (as defined in the Loan Amendment) or are FF&E items, in which case, such expenditures shall be paid in accordance with the provisions of Article 7 of the Loan Agreement and Loan Amendment with respect to the Expansions and the Expansion Reserve Fund, and the Replacement Reserve Fund, with respect to FF&E..

As to Other Matters: The Financing Orders, taken together with the Post-Petition Advances, shall also contain such provisions as the Lender requires for financing and cash collateral orders, including, without limitation:

(a) no rights, claims, liens, or the like of the Lender with respect to the Post-Petition Advances can be modified in any plan of reorganization or subsequent financing;

(b) validation of pre-petition and post-petition liens and security interests of the Lender and pursuant to the Lien Validation Process; and liens on deposit and securities accounts deemed to confer "control" for purposes of Sections 8-106, 9-104, and 9-106 of the Uniform Commercial Code;

(c) the Lender shall reserve their rights to seek Bankruptcy Court modification of the Financing Orders for cause;

(d) the automatic stay shall be modified to the extent necessary to effect the Financing Orders, subject to the requirement that the Lender give the Borrower ~~two~~five (~~2~~5) business days notice prior to the exercise of rights or remedies by the Lender;

(e) in the event any or all of the provisions of the Financing Orders are modified, amended or vacated by a subsequent order of the Bankruptcy Court or any other Court, the Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code, and no such

appeal, modification, amendment or vacation shall affect the validity and enforceability of any ~~advances~~Post-Petition Advances made or the liens or priority authorized or created ~~thereby~~under the Financing Orders with respect to the Post-Petition Advances;

(f)     nothing in the Financing Orders shall affect the Lender's claims against third parties;

~~(g)     waivers of relief, claims (including administrative claims), charges and limitation of the Lender's pre-petition or post petition rights under Sections 105, 506(c) and 553(b) of the Bankruptcy Code or otherwise (at least as to Post Petition Advances and Final Financing Order and subject to the Lien Validation Process), and, if any such exist, they are fully released to the extent permitted by the Bankruptcy Court and applicable law;~~

(~~h~~g)    binding the Borrower and any successors and assigns, including any subsequently appointed Chapter 7 or 11 trustee, to the terms of the Financing Orders;

~~(i)     waivers of claims pursuant to Sections 506(c), 510, 544, 547, 548 and 549 of the Bankruptcy Code (at least as to Post Petition Advances and Final Financing Order and subject to the Lien Validation Process);~~

~~(j)     finding that the Lender does not control the Borrower;~~

~~(k)     the automatic stay shall be modified to the extent necessary to permit the Lender to exercise their rights and remedies on or after the Termination Date provided the Lender has given two (2) business days notice to the Borrower prior to exercising any rights or remedies;~~

~~(l)     approval of the various aspects of the Post Petition Advances and the Pre Petition Credit Agreement, including the payment of fees and expenses of the Lender and the fees and expenses of their attorneys and advisors and the indemnification provisions thereof;~~

(~~m~~h)    the rights under the Financing Orders are in addition to the rights of the Lender existing as of the Petition Date;

~~(n)     the Final Order shall be entered no later than thirty (30) days after the Petition Date or later if so agreed by the~~

-14-

~~Lender;~~

(~~o~~i) the reservation of rights in the event of the occurrence of an Event of Default or the occurrence of the Termination Date;

(~~p~~j) the reservation of rights to seek additional adequate protection;

(~~q~~k) the reservation of rights of the Lender to assign all of its rights, claims and obligations under the Post-Petition Advances Agreement and the Pre-Petition Credit Agreement and related documents;

~~(r)     fee letters and the contents thereof are to be treated as confidential information pursuant to Bankruptcy Rule 9019, subject to required disclosures to the U.S. Trustee;~~

(~~s~~l) the ~~Loan Parties~~Borrower, Examiner and Hotel Manager will provide access and information with respect to the Hotel Property to the Lender and their agents and advisors; and

(~~t~~m) all payments made to the Lender with respect to the Post-Petition Advances or the Pre-Petition Credit Agreement will be free and clear of all liens and encumbrances.

V.    PAYMENTS, MANDATORY PREPAYMENTS, AND REDUCTION OF THE POST-PETITION LOAN COMMITMENT

All Post-Petition Advances, both for principal and interest and ~~fees~~Lender Costs not sooner paid, shall mature and become due and payable by the Borrower on the earlier of the Maturity Date or the Termination Date.

If at any time the unpaid principal balance of the Post-Petition Advances then outstanding shall exceed the Post-Petition Commitment, the Borrower shall immediately and without notice or demand pay over the amount of the excess to the Lender as and for a mandatory prepayment on such obligations.

~~To the extent that any sales of assets that include any Pre-Petition Collateral or Post-Petition Collateral occur prior to the Termination Date and outside the ordinary course of~~

business in an amount in excess of $5,000 in the aggregate (none to occur without Bankruptcy Court approval and with the Lender reserving all rights, if any, to object to any such sale), 100% of the Net Proceeds (as hereinafter defined) thereof must be paid to the Lender for application to the Post-Petition Advances and the Pre-Petition Loan as described below. Asset sale proceeds shall not include any casualty or condemnation proceeds to the extent the relevant Loan Party has elected to use such proceeds to repair, rebuild, or replace the assets subject to such casualty or condemnation, no Event of Default exists and, to the extent of proceeds in excess of $5,000 with respect to any single casualty or condemnation event, the Lender have approved such repair, rebuilding or replacement. Any property so repaired, rebuilt or replaced shall constitute part of the Post-Petition Collateral and shall be subject to the Replacement Liens for the benefit of and the Lender. As used herein with respect to asset sales, the term "Net Proceeds" means the gross sale price less actual taxes payable and the costs of such sale which have been approved in advance by the Lender. Any such proceeds of sale designated to pay such taxes and costs of sale which are not required to be disbursed at the closing of such sale shall be held in escrow by the Lender and shall be subject to the lien and security interests of the Lender until applied to pay such taxes and costs of sale.

Prior to the Termination Date, the Net Proceeds of asset sales in excess of $5,000 in the aggregate shall be applied as follows: 100% as a permanent pay down to the Post-Petition Advances unless the Lender otherwise agrees, and then to the Pre-Petition Credit Agreement. If the Post-Petition Advances shall become fully paid from the Net Proceeds of asset sales, then any remainder Net Proceeds shall be applied to reduce the Pre-Petition Loan as provided for in the Pre-Petition Credit Agreement.

VI.    APPLICATION OF PAYMENTS

Prior to the occurrence of the Termination Date, except as otherwise provided herein, all payments and collections from Collateral (including all proceeds from Collateral) shall be applied, *first*, to pay in accordance with the costs, fees and expenses of the Lender (including any cash management liabilities of the Borrower owing to the Lender), *second,* to pay interest and fees then due in respect of the Post-Petition

Advances; ~~*third*, to reduce the Post-Petition Advances, and *fourth* to be held in an account (or accounts) subject to the Lender's first priority lien and under the Lender's exclusive dominion and control (collectively, the "~~Budget, and *second,* to be held in the Cash Management Account~~") until such time as the amounts held therein are applied by the Borrower (or the relevant Loan Party) to pay Cash Expenses set forth on the Budget (subject to permitted variances) on the same conditions that Post-Petition Advances are available, except that the Net Proceeds of asset sales shall be applied as set forth in Section V above~~ until further order of Court. So long as no Event of Default shall have occurred and be continuing under the Financing Orders and Post-Petition Advances Agreement, subject to the terms and conditions hereof, amounts held in the Cash Management Account shall be made available to the Borrower ~~(or the relevant Loan Party) to pay Cash Expenses pursuant to~~ to make disbursements to fund the approved Budget.

On or after the occurrence of the Termination Date, all payment and collections from Collateral (including asset sales) shall be applied: *first*, to the costs, fees and expenses of the Lender (including attorney fees, auditor fees, and related fees, and any cash management liabilities of the Borrower owing to the Lender; *second*, to repay the accrued but unpaid interest and fees on the Post-Petition Advances; *third*, to permanently reduce the remaining obligations outstanding under the Post-Petition Advances; *fourth*, to reduce the obligations under the Pre-Petition Credit Agreement according to the priorities and on the basis set forth in the Pre-Petition Credit Agreement (*provided* a portion of the Cash Collateral shall be available to pay ~~an~~any remaining or applicable Administrative Expense Carve Out ~~in aggregate amount to be determined with the consent of the Lender~~); and *fifth*, to the Borrower ~~(or relevant Loan Party)~~ or as otherwise required by applicable law.

VII.   COLLATERAL

Pursuant to the Financing Orders and documentation satisfactory in form and substance to the Lender, all obligations of the Loan Parties to the Lender, including, without limitation, all accrued interest, costs, fees and expenses, shall be secured by a first priority lien on, and security interest in, all assets and properties of any kind and nature of the Loan Parties, including, without limitation, real property (including without limitation

all leasehold interests, mineral leases, and mineral and water rights), the Blocked Account, the Cash Management Account and all other deposit accounts and securities accounts, accounts, hotel revenues and rents chattel paper (including electronic chattel paper), instruments, documents (including electronic documents of title), deposits and reserves held by utilities and trade creditors, inventory, equipment, rolling stock (including titled and non-titled vehicles), all rights of the Loan Parties under all license, lease, franchise and similar agreements, general intangibles (including, without limitation, payment intangibles, intellectual property, interests in partnerships and joint ventures, tax refunds, and bankruptcy-related causes of action, including any recovery thereon, including but not limited to all causes of action under Chapter 5 of the United States Bankruptcy Code, including Section 506(c), and Section 553 or other applicable law), letter of credit rights, supporting obligations, commercial tort claims, and investment property, pursuant to Section 364(c) and (d) of the Bankruptcy Code; but excluding avoidance actions under Sections 544 through 550 ("Avoidance Action Carve Out").  Such lien and security interest shall not be subject to challenge, and shall attach and become valid and perfected without the requirement of any further action by the Lender.  However, the Borrower will assist and cooperate with the Lender in taking such actions as the Lender deems necessary to protect their respective liens and security interests in the Pre-Petition Collateral and the Post-Petition Collateral.  No liens under Section 364 of the Bankruptcy Code or otherwise shall be permitted on the Pre-Petition Collateral and Post Petition Collateral, except for liens disclosed to the Lender and Lender and agreed to in writing as permitted by the Lender and ("Permitted Liens"), the liens and security interests securing the Post-Petition Advances and Pre-Petition Loan, and the liens granted to the Lender under the Financing Orders for adequate protection and use of Cash Collateral.

To the extent that all cash and checks of the ~~Debtor, or~~ Borrower or Hotel Manager currently in their possession, bank accounts, ~~lockbox~~Blocked accounts or otherwise, and the proceeds thereof, if any, are proceeds of the collateral, upon entry of the Interim Financing Order, the Borrower or relevant party shall deliver such proceeds to the Lender, and thereafter the Borrower and any successor to the Borrower, including without limitation any successor trustee or trustees, and Hotel Manager, shall immediately deliver any and all payments or proceeds realized upon the sale, liquidation, collection or

disposition of the Post-Petition Collateral or Pre-Petition Collateral~~, including without limitation the proceeds of sales authorized pursuant to Bankruptcy Code §363 or any plan of reorganization~~ ("Proceeds") which come into their possession to the Lender in the form received (together with any necessary endorsements thereto) for deposit into the ~~Lockbox~~Blocked Account. Without limiting the forgoing, the Borrower and Hotel Manager shall cause all proceeds of collateral and all revenues, income and cash flow of the Borrower to be deposited in the ~~Lockbox~~Blocked Account at PNC Bank (which funds shall continue to be swept daily into the Cash Management Account at KeyBank pursuant to the Loan Agreement and Cash Management Agreement), such that the Lender attains exclusive dominion and control of such ~~Lockbox~~Blocked Account and Cash Management Account and proceeds of collection deposited therein. With respect to any Cash Management Accounts not held at KeyBank, such exclusive dominion and control shall be evidenced by a deposit account control agreement in form and substance satisfactory to the Lender, which shall provide for, among other things, that all statements and reports with respect to such account shall be sent to the Lender.

VIII.  PRIORITY

The Lender's liens on and security interests in the collateral as security for the Post-Petition Advances shall be a first priority lien senior to all competing claims and liens, including liens and claims securing the Pre-Petition Loan, and not subject to any other lien that is avoided and preserved for the benefit of any debtor's estate under Section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien under Section 364(d) of the Bankruptcy Code.

Pursuant to the Financing Orders, the Post-Petition Advances shall have, pursuant to Section 364(c)(1) of the Bankruptcy Code, the priority of an expense of administration senior to all other administrative expenses of the kind specified in Sections 503(b) or 507 of the Bankruptcy Code.

IX.  GENERAL TERMS AND PROVISIONS

A.  Administrative Expense Carve Out

Administrative expense carve out (collectively, the "Carve-Out Amount") for (i) to the extent allowed by the Bankruptcy Court~~, not to exceed $150,000 in the aggregate~~: (x) incurred or accrued and pending applications for professional fees and

expenses of the ~~Borrower~~Debtor and professionals for ~~any official committee of unsecured creditors~~the Committee incurred in the Bankruptcy Cases to the extent provided for in the Budget and incurred prior to the Termination Date not to exceed $300,000 in the aggregate, and (y) professional fees and expenses of the ~~Borrower~~Debtor and professionals for ~~any official committee of unsecured creditors~~the Committee incurred in the Bankruptcy Cases after the Termination Date to the extent allowed by the Bankruptcy Court for the payment of costs of winding up the Borrower' Chapter 11 cases not to exceed $50,000 in the aggregate, ~~and~~ (ii) the approved fees and expenses of the Court Appointed Examiner, and (iii) allowed United States Trustee administrative expenses pursuant to 28 USC §1930(a)(b). ~~No carve out~~None of the Carve-Out Amount allocated for the professional fees and expenses of the Debtor and/or the Committee shall be used to object to or contest any post-petition lien or post-petition obligations or to challenge (as opposed to investigate) any pre-petition lien or the rights of the Lender to protect its interests under the Loan Agreement.

Interest Rate/Payments:    The Post-Petition Advances Base Rate shall be the Prime Rate (as announced by the Wall Street Journal)~~, plus 200 basis points~~ per annum (floating), payable monthly in arrears (the "Base Rate").  The Post-Petition Default Rate of interest shall equal the Base Rate plus 8.50% per annum.  Interest shall be calculated on the basis of a year of 365 days or 366 days, as the case may be, for the actual number of days elapsed.

As provided above, interest on the Pre-Petition Loan shall accrue after the Petition Date at the Default Rate set forth in the Pre-Petition Credit Agreement, but (i) only the Applicable Rate of 1.613% shall be paid currently; and (ii) the differential between the default rate and the amounts previously paid as non-default rate shall be paid on the Termination Date at which time all such amounts shall be due and payable.

X.    CONDITIONS OF INITIAL POST-PETITION ADVANCES

~~The obligation to provide the initial Post Petition Advances shall be subject to satisfaction of the following conditions:~~

~~(a)    Entry of the Interim Financing Order in form and~~

substance satisfactory to the Lender after notice given and a hearing conducted in accordance with Bankruptcy Rule 4001(c).

(b) If requested, delivery to the Lender of promissory notes evidencing the loans extended under the Post-Petition Advances, each executed by the Borrower.

(c) Execution and delivery by all appropriate parties of all other loan and security documentation, all satisfactory in form and substance to the Lender.

(d) Payment of all fees and other amounts then due and payable in accordance with this Term Sheet, including the payment of the outstanding and currently estimated fees and expenses of the Lender's attorneys and advisors.

(e) Receipt by the Lender of the Budget, in form and substance reasonably satisfactory to the Lender, including itemization on a Bi-weekly basis of all expenditures proposed to be made during the term of the Post-Petition Advances Agreement.

(f) Receipt by the Lender of a release (which shall be satisfactory in form and substance to the Lender) of all claims and causes of action of the Borrower against the Lender in respect of the Pre-Petition Credits and assurance that the Pre-Petition Credits shall be subject to the Lien Validation Process.

(g) Entry of a Cash Management Order including, without limitation, confirming that all Rents and/or other reserves derived from the Hotel Property shall continue to be deposited in the PNC Bank lockbox, swept daily into the KeyBank cash management account, and applied by Lender in accordance with Section 2.5.2(b) of the Loan Agreement, as amended by Section 2.8 of the First Amendment, and used and applied by Borrower strictly in accordance with the approved Budget, such that the Lender retains exclusive dominion and control of such account and proceeds of collection deposited therein, and that the Lender has a perfected security interest in the Blocked Account, the Cash Management Account and the Estate Operating

-21-

Accounts and the proceeds deposited therein.

(h) An acceptable bidding procedures order that includes, among other terms and conditions to be agreed by the Lender:

    (1) The right for and on behalf of the Lender to credit bid under Section 363(k) of the Bankruptcy Code whether the sale be pursuant to a Plan or motion.

    (2) A sale order acceptable to the Lender approving the sale shall be entered sixty (60) days (or such longer period as the Lender may agree) after the entry of the Interim Financing Order.

(i) Entry of an order approving the retention of a Chief Restructuring Officer or a Chapter 11 Trustee on terms and with a scope acceptable to the Lender.

(j) In the reasonable judgment of the Lender, no material adverse change or material disruption has occurred after the date hereof in the financial, banking or capital markets generally (including, without limitation, the markets for loans to or debt securities issued by companies similar to Borrower), which has had or could reasonably be expected to have a material adverse effect on the syndication of any portion of the Post-Petition Advances.

(k) The Borrower shall have provided the documentation and other information to the Lender that is required by regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including, without limitation, the Patriot Act.

(l) The Lender shall be satisfied, in their discretion, with the results of their business due diligence relating to background checks on each Loan Party's directors and management.

(m) All motions and related orders (including, without limitation, any motions related to the Post-Petition Loan, cash management, Sale Motion (as defined below) and bid procedures and any critical vendor or

supplier motions) entered by the Bankruptcy Court in the Bankruptcy Cases shall be in form and substance reasonably satisfactory to the Lender and its counsel.

(n)     The Lender shall be named as loss payee (property/casualty) and additional insured (liability) in respect of all insurance policies of the Borrower, and riders to provide 30 days advance notice to the Lender in the event of any non-renewal, cancellation or amendment thereof shall be included in all such policies.

(o)     All documents and instruments required or, in the opinion of the Lender, desirable to perfect the Lender's security interest in the collateral described under the heading "Collateral" in the Term Sheet shall have been executed and delivered and, if applicable, be in proper form for filing, and none of such collateral shall be subject to any other pledges, security interests or mortgages, except Permitted Liens (including liens securing the Pre-Petition Credits).

The obligation to provide the Initial Post-Petition Advances shall be subject to satisfaction of the following conditions, to be part of an Interim Financing Order in form and substance satisfactory to the Lender after notice given and a hearing conducted in accordance with Bankruptcy Rule 4001(c):

(a)     If requested, delivery to the Lender of promissory notes and loan documents evidencing the loans extended under the Post-Petition Advances, each executed by the Debtor, in form satisfactory to the Lender.

(b)     Requiring that Amended Schedules and Statement of Financial Affairs be filed not later than November 18, 2010, to be signed by Dr. Kiran Patel.

(c)     Receipt by the Lender of the Budget, in form and substance reasonably satisfactory to the Lender, including itemization on a Bi-weekly basis of all expenditures proposed to be made through December 31, 2010.

(f)     Confirming that all Rents and/or other revenues and reserves derived from the Hotel Property shall continue to be deposited in the PNC Bank Blocked Account, swept daily into the KeyBank cash management account, and applied by Lender in accordance with Section 2.5.2(b) of the Loan Agreement, as amended by Section 2.8 of the First Amendment, and used and applied by Borrower strictly in accordance with the approved Budget, such that the Lender retains exclusive dominion and control of such account and proceeds of collection deposited therein, and that the Lender has a perfected security interest in the Blocked Account, the Cash Management Account and the Estate Operating Accounts and the proceeds deposited therein.

(g)     Providing that the Lender shall have the right to credit bid under Section 363(k) of the Bankruptcy Code whether the sale be pursuant to a Plan or motion.

(h)     Providing the Lender shall be named as loss payee (property/casualty) and additional insured (liability) in respect of all insurance policies of the Borrower, and riders to provide 30 days advance notice to the Lender in the event of any non-renewal, cancellation or amendment thereof shall be included in all such policies.

(i)     Providing that all documents and instruments required or, in the opinion of the Lender, desirable to perfect the Lender's security interest in the collateral described under the heading "Collateral" in the Term Sheet shall have been executed and delivered and, if applicable, be in proper form for filing, and none of such collateral shall be subject to any other pledges, security interests or mortgages, except Permitted Liens (including liens securing the Pre-Petition Credits).

XI.   CONDITIONS PRECEDENT

   A.   Conditions of Each Extension of Post-Petition Advances

The obligation to provide each extension of Post-Petition Advances (including the first such extension) shall be subject to the satisfaction of the following conditions:

(1)     No Event of Default, and no condition which would

constitute an Event of Default with the giving of notice or lapse of time, or both, shall exist.

(2) Representations and warranties shall be true and correct in all material respects as of the date of each Post-Petition Advances.

(3) After giving effect to any requested extension of credit under the Post-Petition Advances, the aggregate principal amount of all Post-Petition Advances shall not exceed the Post-Petition Loan Commitment.

(4) ~~Provided that the Bankruptcy Court has not granted Relief from Stay in favor of the Lender by November 15, 2010, exclusivity~~Exclusivity of the Debtor to file a plan of reorganization shall be terminated in favor of the Lender.

(5) The applicable Financing Order(s) shall be in full force and effect and the Borrower shall be in compliance with all the terms hereof.

(6) Receipt by the Lender of a certificate executed by a responsible officer of the Borrower ~~on behalf of~~and the ~~Borrower~~Hotel Manager to the effect that (i) the proposed Post-Petition Advances is consistent with the terms of the Budget and is to be used solely for Budget items, and (ii) to the best of such officer's knowledge, the Borrower has observed or performed all of its covenants and other agreements, and satisfied in all material respects every condition contained in the Post-Petition Advances Agreement and the collateral documents to be observed, performed or satisfied by the Borrower, and that such officer has no knowledge of any Event of Default except as specified in such certificate. ~~A form of certificate shall be annexed to the Post-Petition Advances Agreement.~~

B. General Conditions Precedent

(a) ~~Execution and delivery of definitive loan documentation that the Lender may require. Initially, this Term Sheet along with the Interim Order shall be defined as the "Post-Petition Financing Agreement"~~Entry of the Financing Orders incorporating the terms of this Term Sheet.

(b)     The Lender shall hold perfected, security interests in and liens upon the Pre-Petition and Post-Petition Collateral.

(c)     The Borrower shall comply in full with the notice and other requirements of the U.S. Bankruptcy Code in a manner acceptable to the Lender and its counsel, with respect to the Financing Orders.  The Interim Financing Order shall have been entered by the United States Bankruptcy Court having exclusive jurisdiction over the Chapter 11 cases (the "Bankruptcy Proceeding") of the Borrower (the "Bankruptcy Court") authorizing the secured financing of Post-Petition Advances on the terms and conditions contemplated herein, in form and substance and satisfactory to the Lender and, *inter alia*, modifying the automatic stay, authorizing and granting the security interests and liens described above, and granting a super-priority administrative expense claim to the Lender with respect to all obligations to the Lender, subject to no priority claim or administrative expenses of the Chapter 11 cases of the Borrower or any other entity (except the Administrative Expenses Carve Out in Section IX above and as the Lender may specifically agree in writing), and any future proceeding which may develop out of any such cases, including liquidation in bankruptcy.   The Interim Financing Order shall authorize financing under the Post-Petition Advances for the Borrower for a period not to exceed thirty (30) ~~days in an amount acceptable to the Lender~~not in excess of $500,000.00 and shall contain such other terms ~~and provisions as the Lender and its counsel shall require~~as set forth herein.

(d)     On or before the expiration of the Interim Financing Order, the Bankruptcy Court shall have entered a Final Financing Order, in form and substance satisfactory to the Lender, authorizing the secured financing under the Post-Petition Advances on the terms and conditions contemplated by this term sheet granting to Lender the security interests and liens and super-priority administrative expense claim status described above, modifying the automatic stay subject to the requirement that the Lender give the Borrower ~~two~~five (~~2~~5) business days prior notice prior to the exercise of rights or remedies by the Lender, and other provisions

required by the Lender and its counsel. The Lender shall not provide any loans or use of cash collateral other than those authorized under the Interim Financing Order unless, on or before the expiration of the Interim Financing Order, such Final Financing Order shall have been entered, there shall be no appeal or other contest with respect to either of such orders, and the time to appeal or contest such orders shall have expired.

(e) ~~A CRO or Chapter 11 trustee acceptable to the Lender shall have been appointed or designated with respect to the Debtor's Bankruptcy Estate.~~

(f) ~~The Lender shall have received evidence in form and substance satisfactory to the Lender, that the Borrower have obtained all necessary consents and approvals of their respective boards of directors (or equivalent body) to the Post-Petition Advances facility.~~

(~~g~~e) The Lender shall have received, in form and substance satisfactory to the Lender evidence of insurance coverage (which shall be satisfactory to Lender), including lender's loss payee endorsements in favor of the Lender as to casualty insurance and containing all endorsements, including assurances of affirmative coverage, requested by the Lender for the protection of its interests.

(h) ~~The Borrower shall have established if and as requested by the Lender blocked accounts or lockboxes for its collections and the transfer thereof to the Lender, which shall be in form and substance acceptable to the Lender.~~

(~~i~~f) There shall exist no event of default or potential default which, with the giving of notice or lapse of time, would become an event of default, under any of the Pre-Petition or Post-Petition agreements with the Lender, except for those existing as of the Petition Date.

(j) ~~The Lender and its counsel will have had the opportunity to conduct customary legal due diligence (all of which shall be satisfactory to the Lender and its counsel).~~

(k) ~~Provided that the Bankruptcy Court has not granted Relief from Stay in favor of the Lender by November 15, 2010, exclusivity of the Debtor to file a plan of reorganization shall be terminated in favor of the Lender.~~

(l) ~~The Borrower and Hotel Manager shall have delivered a plan for the management of the businesses of the Borrower (including plans for staffing and key employee retention) reasonably acceptable to the Lender.~~

(~~m~~g) The Assignment of the Hotel Management Agreement in favor of the Lender, in the form previously submitted by the Lender and executed by Prism.

## XII. REPRESENTATIONS AND WARRANTIES

~~Similar to those set forth in the Pre-Petition Credit Agreement, plus full force and effect of the Financing Orders.~~

(a)      Dr. Kiran Patel is the responsible officer for the Debtor.

(b)      Prism [designate specific persons] shall have sole ability to disburse funds from the Debtor's Operating Accounts.

## XIII. COVENANTS

Those negative, affirmative and financial covenants reasonably required by the Post-Petition Lender, including, without limitation, covenants which:

(a)      require access to the Borrower, Prism and the books and records maintained by any Loan Party and Prism with respect to the Hotel and the Property;

(b)      require deposit accounts be subject to first priority liens in favor of the Lender and maintained with or otherwise under the control of the Lender, as it may require, and

collection of all cash collateral through such accounts;

(c)    prohibit or limit the incurring of indebtedness (which would require, among other things, that each Loan Party agree not to seek to borrow funds on a super-priority basis other than the Post-Petition Advances and other than any credit facility which pays and satisfies the Post-Petition Advances and the Pre-Petition Credit obligations in full), investing, lending, granting of liens and security interests, and capital expenditures;

(d)    prohibit dividends, payment of management fees (including any asset management fees) and any other distributions or expenses, except as expressly provided for in the Budget, and, without Bankruptcy Court approval and the consent of the Lender, purchases or sales of assets outside the ordinary course of business, the assumption of executory contracts, the payment of pre-petition debt or payments outside the ordinary course of business (including a prohibition of payments of pre-petition trade payables to pre-petition trade creditors except for payments provided for in the Budget that have been approved by the Bankruptcy Court for the payment of pre-petition claims of essential creditor that are trade creditors), payments to any guarantor or any transactions with affiliates that are out of the ordinary course or not on commercially reasonable terms;

(e)    rohibit the payment of any expenses or taxes related to or that result from the post-petition transfer of the Debtor's Equity, unless and until a Final Order of the Bankruptcy Court is entered, with notice to the Lender and Lender's counsel;

(ef)    the Borrower and Hotel Manager shall continue to furnish, or cause to be furnished, to the Lender all financial information, projections, budgets, business plans, cash flows and such other information as required by the Post-Petition Advances Agreement and as the Lender shall reasonably request from time to time.  The Lender shall receive the Bi-weekly Budget Variance Report, together with supporting documentation and other documents and information as

requested by the Lender;

(~~f~~g) require reporting of requested information regarding the Borrower and their subsidiaries (which will include disclosure to the Lender of all expressions of interest, offers, negotiations and agreements regarding the sale or recapitalization of the Borrower, and will prohibit the Borrower from entering into confidentiality agreements which limit such disclosure);

(~~g~~h) permit the Lender to discuss the business and financial condition of the Borrower with the Hotel Manager, the unions, and any vendor or creditor of the Borrower, and the ~~CRO or Trustee~~Examiner (as appointed by the Court), and with prospective purchasers of their business, and hotel franchisees;

(~~h~~i) prohibit the outstanding obligations for the Post-Petition Advances from exceeding the Post-Petition Loan Commitment;

(~~i~~j) prohibit proceeds of the Post-Petition Advances and any ~~Rents,~~ cash collateral ~~or revenues derived from the ownership and operation of the Hotel~~ to be used for any purpose except ~~to pay Cash Expenses and Trust Taxes included in the Budget~~as set forth herein;

(j) ~~permit the Lender to perform field examinations of the business, operations and assets of the Debtor's Estate (and at the Debtor's expense) in accordance with the Lender's customary procedures and practices and as otherwise required by the nature and circumstances of the businesses of the Borrower, the results of which shall be satisfactory to the Lender, in each case at Borrower's expense;~~

(k) The total aggregate actual disbursements for any Bi-weekly Budget period ~~and for the cumulative Post-Petition period~~ cannot exceed the ~~amounts for those respective periods as established by the Budget by more than $50,000~~amount of budgeted expenses for any such Bi-weekly Budget period as reflected in such Budget by more than $10,000 for any Bi-Weekly period, or by more than five percent (5%) for the cumulative Post-Petition period, and actual aggregate ~~net~~budgeted cash flow for any Bi-weekly Budget

-30-

period ~~and cumulatively from the Petition Date~~ cannot have a negative variance from the ~~amounts for those respective periods as established by the Budget of~~budgeted cash flow for such Bi-weekly Budget period as reflected in the Budget by more than $50,000 for any Bi-Weekly Budget period, or by more than five percent (5%) cumulatively from the Petition Date;

(l)     Maximum Capital Expenditures as agreed by the Lender and ~~Loan Parties~~Borrower and as provided for in a separate ~~Capital Improvement Budget~~line item or section in the Budget for Capital Improvements which Capital Expenditures, to the extent such Capital Expenditures are part of the Expansions (as defined in the Loan Amendment), shall be paid for and performed in accordance with Section 7.5 of the Loan Agreement;

(m)    ~~the Borrower shall continue to engage a chief restructuring officer acceptable to the Lender at all times. The scope of the chief restructuring officer's engagement and the authority granted to such chief restructuring officer must be reasonably satisfactory to the Lender;~~

(n)    ~~the Borrower and their advisors shall provide Lender with weekly telephonic reports of all sale efforts, expressions of interest and offers received. The Borrower shall keep the Lender informed on a current basis of the status of all written proposals for any sale received and provide the Lender with copies of all such proposals and other related communications received from third parties within one (1) business day after the Borrower's receipt thereof;~~

(~~o~~m)    the replacement of FF&E (as defined in the Loan Agreement) shall be subject to the Loan Agreement and Lender's approval pursuant to Section 7.3.2 of the Loan Agreement;

(~~p~~n)    Borrower shall observe and perform all of Borrower's covenants set forth in the Loan Agreement and other Loan Documents.

## XIV. EVENTS OF DEFAULT

Usual provisions as deemed appropriate by the Lender, together with the Events of Default which are substantially the same as those in the Pre-Petition Credit Agreement (modified as appropriate), and in addition including (all such Events of Default are Terminating Events upon notice to the Borrower being given by the Lender):

(a)     ~~Any~~Debtor's Chapter 11 case ~~of any Loan Party~~ shall be dismissed or converted to a Chapter 7 case.

(b)     Any Chapter 11 plan is confirmed without the Lender's consent.

(c)     Any other superpriority claim or lien equal or superior in priority to that granted pursuant to or permitted under the Financing Orders shall be granted.

(d)     Either Financing Order shall be amended, reversed, stayed, vacated or otherwise modified in a way which materially and adversely affects the rights of the Lender and which is not acceptable to the Lender.

(e)     The failure to obtain a lien finding acceptable to the Lender within fifteen (15) days after the last day of the Challenge Period (or such later date as may be agreed to by the Lender)

(f)     The Final Order shall not be entered within thirty (30) days after the Petition Date or such later date as to which the Lender may agree.

(g)     ~~Other than as contemplated in the Budget, any Loan Party ceases operation of any of its business or takes any material action for the purpose of effecting the foregoing without the prior written consent of the Lender.~~

(~~h~~g)     The failure of any Loan Party to comply with the Financing Orders ~~or the terms and conditions of Post-Petition Financing Documents~~.

(~~i~~h)     Termination of Prism as Hotel Manager without express written consent of Lender.

(j)  ~~the occurrence of an Event of Default under the Pre-Petition Credit Agreement or any of the other Pre-Petition Loan Documents.~~

XV.  EFFECTS OF EVENTS OF DEFAULT

Upon the occurrence and during the continuance of any Event of Default ~~beyond the applicable grace period (if any)~~ and after ~~two~~five (~~2~~5) business days prior written notice by the Lender to the Borrower of such Event of Default, and upon the occurrence of any other Termination Event, the Lender may take any or all of the following actions without further order of or application to the Bankruptcy Court:

(a)  Declare the principal of and accrued interest on the outstanding Post-Petition Advances to be immediately due and payable.

(b)  Set off amounts in accounts (including the existing accounts maintained by any Loan Party with the Lender) or otherwise take steps to foreclose upon the collateral for the Post-Petition Advances.

(c)  Terminate the Post-Petition Loan Commitment and thereby terminate any further commitment to extend any further Post-Petition Advances to the Borrower.

(d)  Require that any cash collateral be applied against the Post-Petition Advances and the Pre-Petition Loan as provided in this Term Sheet.

(e)  Require payment of the default interest rate on the Post-Petition Advances.

(f)  The automatic stay shall be deemed lifted as to the collateral and the Lender shall have the right to proceed with the remedies set forth in the Post-Petition Advances Agreement, including without limitation, foreclosure of the collateral with proceeds applied as set forth in Section VI above.

(g)  ~~The Loan Parties shall be deemed to have consented to the appointment of a Chapter 11 trustee acceptable to Lender in its sole discretion pursuant to Lender's~~

motion to appoint a Chapter 11 Trustee, or, in the alternative, and in Lender's sole and absolute discretion, a chief restructuring officer acceptable to Lender in its sole discretion.

XVII . COST AND EXPENSES

The Borrower shall pay (a) all reasonable costs and expenses of the Lender incurred in connection with the Post-Petition Advances (including all reasonable fees and expenses of professionals engaged by the Lender relating to the Post-Petition Advances Agreement and the administration thereof and including all reasonable diligence, computer, duplication, consultation, travel, appraisal, audit, collection, search, filing and recording fees, whether or not the Post-Petition Advances Agreement is consummated), and (b) all reasonable costs and expenses (including reasonable professional fees and disbursements) of the Lender in connection with the enforcement and administration of, or in any way connected to, the Post-Petition Advances Agreement and the Post-Petition Facility provided for thereunder. The Borrower shall pay all such reasonable costs, fees and expenses when invoiced and at the Termination Date to the extent not previously invoiced; provided, however, the Bankruptcy Court will retain jurisdiction over the reasonableness of such costs, fees and expenses in the event that an objection to the amount thereof is brought before the Bankruptcy Court.

The Borrower shall pay as adequate protection all reasonable costs and expenses of the Lender to the extent provided in the Pre-Petition Credit Agreement. The Borrower shall pay all such reasonable costs, fees and expenses when invoiced and at the Termination Date to the extent not previously invoiced; *however*, the Bankruptcy Court will retain jurisdiction over the reasonableness of such costs, fees and expenses in the event that an objection to the amount thereof is brought before the Bankruptcy Court.

XVIII. INDEMNITY

The Borrower shall indemnify and hold harmless the Lender, and their respective directors, officers, agents, attorneys, advisors, servicers, representatives and employees from and against all losses, claims, damages, expenses or liabilities, including, but not limited to, legal or other expenses incurred

~~in connection with investigating, preparing to defend, or defending any such loss, claim, damage, expense or liability, incurred in respect of the Post-Petition Advances or the Pre-Petition Loan, or the relationship between any Loan Party and the Lender, but excluding therefrom all expenses, losses, claims, damages and liability to the extent that they are determined by the final judgment of a court of competent jurisdiction to have resulted from willful misconduct or gross negligence of such indemnified party. The obligations of the Borrower under this section shall survive the termination of the Post Petition Advances Agreement and payment of the Post Petition Advances.~~

~~XIX~~ XVII.    ASSIGNMENTS

The Lender may grant participations in the Post-Petition Advances and assign outstandings and commitments therein, without the consent of the Borrower.

~~XX~~ XIX. DOCUMENTATION

Satisfactory in form and substance to the Lender, and the Borrower.

XXI.    GOVERNING LAW

State of New York, except as governed by the Bankruptcy Code.

# Exhibit A

## Budget Format

# EXHIBIT B

## BUDGET VARIANCE FORMAT

Document comparison by Workshare Professional on Monday, November 08, 2010 10:26:45 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DIGITALFILE/US_ACTIVE/104809376/4 |
| Description | #104809376v4<US_ACTIVE> - Shubh/Carbon/BlackRock DIP Term Sheet Nov-10.doc |
| Document 2 ID | interwovenSite://DIGITALFILE/US_ACTIVE/104809376/6 |
| Description | #104809376v6<US_ACTIVE> - Shubh/Carbon/BlackRock DIP Term Sheet Nov-10.doc |
| Rendering set | ReedSmith Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 119 |
| Deletions | 151 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 270 |