IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 10-26337-JAD |
| SHUBH HOTELS PITTSBURGH, LLC., <br> Debtor. | Chapter 11 |
| | Judge Jeffrey A. Deller |
| | Doc. No._____ |
| SHUBH HOTELS PITTSBURGH, LLC <br> Movants. | Related to Docket No. 402 |
| | Hearing Date: November 12, 2010 |
| v. | |
| CARBON CAPITAL II REAL ESTATE CDO 2005-1, LTD., and BLACKROCK FINANCIAL MANAGEMENT, INC., as sub-special servicer to CARBON CAPITAL II REAL ESTATE CDO-2005-1, LTD.'S special servicer, MIDLAND LOAN SERVICES, INC., | |
| Respondent. | |

**SUPPLEMENT TO DEBTOR'S AMENDED EXPEDITED MOTION FOR AN ORDER AUTHORIZING IT TO USE CASH COLLATERAL, OR, IN THE ALTERNATIVE DEBTOR-IN-POSSESION SENIOR LENDING FACILITY**

Supplementing the Emergency Motion that was filed on November 9, 2010, the Debtor represents as follows:

1. In order to streamline the process and clarify for the Court and the other creditors in this case the documents to be used for the Debtor-In-Possession financing, the Debtor attaches hereto:

    a. a Sixth Stipulation Bridge Order Approving Sixth Stipulation Regarding To Payment Of Operating Expenses And Payroll Pending Interim Cash Collateral Hearing For Motion For Relief From Stay And Motion To Appoint A Chapter 11 Trustee; and,

b. Order Granting Debtor's Amended And Expedited Motion For Order Authorizing It To Enter Into Alternative Debtor In Possession Senior Lending Facility.

See Exhibits "A" and "B".

2. The Debtor has elected to document ongoing use of cash collateral and obtain an alternative DIP Senior Lending Facility based upon pleadings and orders previously filed, entered and approved by this Court.

3. The Debtor submits that the simplified and previously approved documents provide the best basis for relief to allow the Debtor to maintain its ongoing operations and obtain new funds.

4. The Debtor is further pleased to report to this Court that based upon continuing and ongoing negotiations with the Committee of Unsecured Creditors and Wyndham Hotels and Resorts, LLC ("Wyndham"), Wyndham has agreed to subordinate its liquidated damages claim contained in the Franchise Agreement to <u>any and all unsecured claims allowed in this case</u> with the exception of the BlackRock's unsecured claim and the unsecured claim of any insider[1]. Thus, in the event that Wyndham is ultimately not deemed to be the final approved franchisor in this Chapter 11 case, any liquidated damages claims incurred pursuant to the Franchise Agreement would be subordinated <u>below allowed unsecured creditors</u>. This substantial concession from Wyndham removes a significant financial impediment against approving Wyndham as the "flag of choice" in this case especially prior to the final outcome of these proceedings. See, Exhibit "C".

5. This concession from Wyndham further supports the Debtor's business judgment in selecting Wyndham as its flag of choice and as a true partner in this Chapter 11 case.

---

[1] It is highly doubtful that BlackRock will have an unsecured claim. Dr. Patel's guaranty of the liquidated damages provisions is not subordinated - yet another indication of the good faith of Dr. Kiran Patel.

6.      In the BlackRock Response filed on November 11, 2010, counsel bemoans the fact that the Debtor has elected not to select BlackRock as post-petition financier without having negotiated any terms or conditions in its continuing stream of Term Sheets.

7.      As abundantly clear from the proposed terms offered thus far, BlackRock's overbearing and onerous financial business terms are not in the best interest of the Debtor, nor any other creditor in this case with the exception of BlackRock.

8.      Specifically (and without limitation), BlackRock continues to demand from the Debtor: (a) the sweeping validation of all claims in the case notwithstanding the pending Complaint in Equitable Subordination; (b) the payment of Lender's substantial professional fees and expenses without approval of the Bankruptcy Court – both in monitoring the loan and arguably professional fee claims for the whole case; (c) upon termination of the loan, and at the election of the lender, any and all pre and post-petition claims become super-priority administrative claims thus depriving reorganization plans for the benefit of all creditors by requiring payment in full of its new created Administrative Claim on the Effective Date of the Plan; (d) disguising the fact that default interest rates are being charged; (e) creating an artificial distinction between "capping" compensation to Committee counsel and Debtor's counsel on one hand, yet providing unlimited carve out to the Examiner on other hand; (f) consenting to automatic relief from stay; (g) requiring that the lender be able to "credit bid" its claim under either a 363 sale or plan or reorganization thus attempting to avoid Third Circuit Precedent as established in *re: Philadelphia Newspaper, LLC, et al.* (C 2010 U.S.APP. Lexus 8505), and obtain a stranglehold on the Plan process rather than filing a competing plan as invited by the Court. The BlackRock agenda is clear, use this Court to effect the same type of foreclosure and "lien stripping" that it was attempting in the Court of Common Pleas of Allegheny County.

9.      For these and a host of other reasons, the Debtor has elected to proceed with Dr. Kiran Patel (or a financial designee) as a lender of choice.

10.     BlackRock further suggests that certain creditors holding lien claims have been not been served or provided with due process. The undersigned counsel has in fact served and/or

obtained consent of lien holders identified in the Title Report attached as Exhibit to the BlackRock's response. (See Exhibit "D")

11. In preparing its budget and ongoing projections for the next 17 weeks, the Debtor has conservatively estimated the effects of Hilton's termination of its flag on September 1, 2010, and the onset of the Hotel's traditionally slow winter season. Giving effect to these circumstances; the Prism professionals and hotel management have assembled and updated a budget consistent with reasonable business prospects and financial objections. In short, the Debtor believes that it will require $2.7 million of financing until an exit from Chapter 11 occurs. This compares favorably with BlackRock's $3 million proposal. See Exhibit "E".

WHEREFORE, for each of the foregoing reasons, the Debtor prays for an Order of Court authorizing it to use cash collateral and obtain post-petition DIP senior lending facility in accordance with prior order of Courts and the Motion, as supplemented hereby.

Respectfully submitted,
Rudov & Stein, P.C.

*/s/ David K. Rudov*
David K. Rudov, Esq.
drudov@rudovstein.com
Pa. I.D. # 35579

100 First Avenue, Suite 500
First & Market Building
Pittsburgh, PA 15222
Tel: 412-281-7300

AND

*/s/ Scott M. Hare*
Scott M. Hare, Esquire
scott@scottlawpgh.com
Pa. I.D. # 63818

1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219
Tel: 412-338-8632