IN THE UNITED STATES BANKRUPCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

                Chapter 11

SHUBH HOTELS PITTSBURGH, LLC    Case No.: 10-26337-JAD

    Debtor.

                Re: Docket Nos. 70 and 463

**MOTION FOR CLARIFICATION OF MEMORANDUM OPINION
AND ORDER DATED NOVEMBER 23, 2010**

  COMES NOW Shubh Hotels Pittsburgh, LLC, the debtor and debtor in possession ("Shubh" or "Debtor"), by and through its undersigned counsel, and submits this Motion pursuant to, *inter alia*, Rule 9023 of the Federal Rules of Bankruptcy Procedure for Clarification of the Memorandum Opinion and Order dated November 23, 2010 and respectfully represents as follows:

  1. At the very core of this bankruptcy case is a dispute between the management of the hotel and its main secured lender on how to reorganize and reposition the hotel to exit this chapter 11 bankruptcy case.

  2. On September 1, 2010, without prior notice, HLT Existing Franchise Holding, LLC ("Hilton") unilaterally and wrongfully terminated its franchise agreement with the Debtor.

  3. Debtor's management fashioned a business plan to rebrand the Debtor's iconic hotel as a "Wyndham Grand"® and add the Debtor's hotel to the existing operations of 28 other elite hotels and resorts located throughout the world and include the Debtor in the world's largest hotel and resort reservation system.

  4. As part of the negotiations to reflag the hotel as a "Wyndham Grand"®, the Debtor, Dr. Patel and Wyndham Hotels & Resorts, LLC ("Wyndham") executed a Franchise Agreement ("Franchise Agreement") subject to bankruptcy court approval. The Franchise Agreement contained various duties and responsibilities of the parties in creating a long term, fifteen (15) year franchise agreement[1].

---

[1] The Franchise Agreement has been filed under seal at docket #196.

5. Consistent with standard hotel franchise agreements, the Wyndham Franchise Agreement contains a liquidated damages provision ("Liquidated Damages") which imposes upon the Debtor a significant financial liability in the event that the Franchise Agreement is prematurely terminated. See Sections 18.C and 30.4 of the Franchise Agreement. Liquidated Damages are to be calculated pursuant to a formula agreed to by the parties and detailed in the Franchise Agreement. Id.

6. However, unlike many other franchise agreements, the Debtor and Wyndham negotiated a development incentive loan (the "Development Incentive Loan") which provides the Debtor with a $1,000,000 loan from Wyndham to be issued and used consistent with the terms of the Franchise Agreement and the "Development Incentive Note" described therein. See Section 30.6 and Schedule A (2) of the Franchise Agreement. The loan from Wyndham is to be amortized over a fifteen (15) year period and $1/15^{th}$ of the principal loan amount will be forgiven by Wyndham each year if the Franchise Agreement has not been terminated and Shubh has complied with the provisions of the Development Incentive Note. If the Franchise Agreement were to be terminated prematurely, or if Shubh otherwise breaches the terms of the Development Incentive Note, Shubh and Dr. Patel would be obligated to repay the monies loaned by Wyndham plus any interest, fees and costs set forth in the note.

7. On September 20, 2010, Debtor filed a Motion for authority to (1) enter the Franchise Agreement with Wyndham and (2) use cash collateral to pay transaction and franchisees fees in connection therewith (the "Franchise Agreement Motion"). Docket No. 70.

8. Upon presentation of the Franchise Agreement to the Court, the Official Committee of Unsecured Creditors (the "Committee") expressed concern that the Liquidated Damages might be considered damages entitled to administrative claim status. Therefore, the Committee opined that the Liquidated Damages, if entitled to administrative claims status, would prejudice the interest of all unsecured creditors. Further, the Court has expressed concerns that the Liquidated Damages might somehow create an "uneven playing field" in the event a non-debtor party proposed a plan of reorganization and sought to terminate the Franchise Agreement. As a result, the Committee requested that any clam of Wyndham for Liquidated Damages be subordinated to the proceeds which would be derived from any avoidance actions brought under article 5 on the Bankruptcy Code. After significant negotiations, Wyndham agreed to

subordinate its Liquidated Damages claim to recovery from any <u>avoidance actions</u> and same was announced by Wyndham and the Committee at the first day of the trial on the Franchise Agreement Motion. The Committee did <u>not</u> request that Wyndham subordinate its claim for repayment of the Development Incentive Loan.

9. After this Court's hearing on the pending Motions, on or around November 4, 2010, the Committee further requested that Wyndham favorably consider subordinating the <u>entirety</u> of the Liquidated Damages claim to any and all claims except the claims of equity or any other fully subordinated unsecured claim. This request sought to expand the agreed exclusion of Wyndham's Liquidated Damages claim from nonparticipation in any avoidance action recoveries to subordination of (only that claim) to the claims of most other creditors. Wyndham initially refused this request and indicated that it had already provided the Debtor and its bankruptcy estate with significant incentive to rebrand the hotel as a Wyndham Grand®. Negotiations continued and Wyndham eventually agreed to fully subordinate its claim for Liquidated Damages <u>only</u>, to all claims except the claims of equity or any other fully subordinated unsecured claim. Again, the Committee did <u>not</u> request that Wyndham subordinate its claim for repayment of the Development Incentive Loan.

10. Wyndham has never indicated to the Debtor, the Committee or the Court that it was agreeable to subordinating its claim for repayment of the Development Incentive Loan to the claim of any party. In fact, it would be inequitable, and illogical, to ask Wyndham to advance the Debtor up to $1,000,000 of new cash to be used to enhance the hotel for the benefit of all parties, including the secured creditors, and then insist that Wyndham's right to repayment of its Development Incentive Loan be subordinated to claims of other creditors in the event that the Franchise Agreement is prematurely terminated. Such a provision was simply not part of the agreement negotiated by Wyndham, the Committee, Dr. Patel and the Debtor.

11. On November 12, 2010, the Debtor filed its Supplement to Debtors Amended and Expedited Motion for an Order Authorizing it to Use Cash Collateral, or an Alternative Debtor-In-Possession Lending Facility at docket # 418. At paragraph 4, the Supplement advised the Court and all other parties in interest of Wyndham's agreement to subordinate its "Liquidated Damages claim" to claims of certain creditors:

> *4. The Debtor is further pleased to report to this Court that based upon continuing and ongoing negotiations with the Committee of Unsecured Creditors and*

> *Wyndham Hotels and Resorts, LLC ("Wyndham"), Wyndham has agreed to subordinate its liquidated damages claim contained in the Franchise Agreement to any and all unsecured claims allowed in this case with the exception of the BlackRock's unsecured claim and the unsecured claim of any insider. Thus, in the event that Wyndham is ultimately not deemed to be the final approved franchisor in this Chapter 11 case, any liquidated damages claims incurred pursuant to the Franchise Agreement would be subordinated below allowed unsecured creditors. This substantial concession from Wyndham removes a significant financial impediment against approving Wyndham as the "flag of choice" in this case especially prior to the final outcome of these proceedings. See, Exhibit "C".*

12. At Exhibit C to the Supplement, a draft Amendment to Franchise Agreement provides, among other things, that ". . . Wyndham shall subordinate <u>only</u> its claim for liquidated damages under sections 18.C and 30.4 of the Franchise Agreement which may arise as a result of premature termination of the Franchise Agreement (the "Liquidated Damage Claim") . . ." Section 30.4 of the Franchise Agreement includes a formula for calculating "Liquidated Damages". Section 30.4 of the Franchise Agreement also provides that in the event of a premature termination of the Franchise Agreement, any outstanding amounts under the ". . . Development Incentive Note (described in Section 30.6) will be due and payable to Franchisor within ten days . . ." The amounts which may become due under Development Incentive Note described in Section 30.6 are <u>not</u>, however, included in the definition of Liquidated Damages under 30.4. Simply put, Section 30.4 of the Franchise Agreement references two defined claims: (i) claims related to the Development Incentive Note, and (ii) claims for Liquidated Damages. However, the subordination agreement provides that ". . . <u>only</u> [Wyndham's] claim for liquidated damages under sections 18.C and 30.4 of the Franchise Agreement . . ." is to be subordinated. Per the Franchise Agreement, any of Wyndham's claims related to the Development Incentive Note are not part of any of Wyndham's Liquidated Damages claims. Moreover, these distinct contractual claims were not linked by request or agreement in the negotiations concerning subordination of the termination claims of Wyndham.

13. Later that morning, the undersigned counsel advised the Court that based upon continuing negotiations Wyndham agreed to subordinate its Liquidated Damage claim.

14. On November 15, 2010, the Debtor filed a supplemental brief (the "Brief") pursuant to the Order of Court dated November 8, 2010. <u>See</u> Docket No. 431. At, among other places, pages 17-18 of the Brief, the Debtor recited Wyndham's agreement to subordinate only its Liquidated Damages claim in the event of a premature termination of the Franchise Agreement prior

to confirmation of a plan or dismissal of the bankruptcy case. The proposed document reflecting the Wyndham agreement further provided: "Nothing contained herein shall be deemed to subordinate any claim of Wyndham against the Debtor other than the Liquidated Damage Claim." See Docket No. 431 at pp. 17-18.

15. On November 23, 2010, this Court entered its Memorandum Opinion (the "Opinion") bringing to a conclusion six days of trial stretched over two months which included numerous witnesses and thousands of pages of documents. In its Opinion, the Court indicated in footnote 8 that its decision to approve the Wyndham Franchise Agreement prior to confirmation of a plan of reorganization was based in part by an agreement of Wyndham to permit its termination damages to be fully subordinated:

> *Specifically, while the language of the documents made differ to a degree, Counsel to the Debtor and Counsel to the Committee have represented to the Court that any termination claim that could be asserted by Wyndham shall be subordinate to any and all allowed unsecured claims in this case (including any allowed unsecured claim that may be asserted by the lender). The court understands this representation to mean that in essence that any <u>termination charges</u> or <u>debt</u> asserted by Wyndham is subordinate to any and all priority claims and administrative expenses and the termination charges <u>or debt</u> of Wyndham (if any) would only be senior to both interests of equity and creditor claims, if any, that are (under principals of equitable subordination) adjudicated to be subordinate. (Emphasis Added)*

This language is repeated in paragraph #2 of the Court's order of November 23, 2010 (the "Order").

16. While same was not the intent or agreement of the involved parties, the Opinion and Order ***could*** be interpreted to mean that Wyndham's claim for repayment of the Development Incentive Loan is subordinated to the allowed claims of unsecured creditors. The Debtor seeks clarification of the Opinion and Order to remove any unintended ambiguity.

17. Upon conferring with counsel to the Committee regarding the requested subordination of the Liquidated Damage claim, the undersigned counsel has confirmed the Committee was requesting that Wyndham's claim for repayment of the Development Incentive Loan was ***<u>not</u>*** to be subordinated or grouped in the same category as Wyndham's Liquidation Damages claim. Undersigned counsel has confirmed same with counsel for Wyndham and Dr. Patel as well. Same also comports with the Debtor's understanding of "the deal".

18. Consequently, the Debtor seeks the entry of an order clarifying the Opinion and Order to provide that Wyndham's claim for repayment of the Development Incentive Loan is <u>not</u> to be subordinated. Specifically, Debtor requests that paragraph 2 of the Order be replaced with the following:

> 2. Only Wyndham's claims for "liquidated damages" under sections 18.C and 30.4 of the Franchise Agreement (the "Liquidated Damage Claim"), which may arise as a result of premature termination of the Franchise Agreement, are subordinated by agreement to all: (i) allowed administrative claims, (ii) allowed priority claims and (iii) allowed general unsecured claims (including any allowed unsecured claim of any "Lender" as such term is defined in the Memorandum Opinion). Wyndham's Liquidated Damage Claim (if any) will only be senior to both the interests of equity and creditor claims, if any, that are (under principles of equitable subordination) adjudicated to be subordinate by the Court.
>
> Wyndham's claims for repayment of the "Development Incentive" loan and under the "Development Incentive Note" which are described in Section 30.6 and Schedule A-2 of the Franchise Agreement are <u>not</u> part of the Liquidated Damage Claim defined above and are <u>not</u> subordinated to any (i) allowed administrative claims, (ii) allowed priority claims, and (iii) allowed general unsecured claims (including any allowed unsecured claim of any "Lender" as such term is defined in the Memorandum Opinion). Nothing contained herein shall be deemed to waive, limit, or compromise any claim of Wyndham arising from or in connection with the Development Incentive loan or the Development Incentive Note and any such claims are preserved against the Debtor, Guarantor (Dr. Patel) or any other person/entity. Nothing contained herein shall be deemed to subordinate any claim of Wyndham against the Debtor other than the Liquidated Damage Claim.
>
> The aforementioned subordination of only the Liquidated Damage Claim shall automatically expire without notice upon the earlier of: (i) entry of an order confirming a chapter 11 plan proposed by the Debtor in the Bankruptcy Case and/or (ii) entry of an order dismissing the Bankruptcy Case.
>
> Nothing contained herein shall be deemed to waive, limit, or compromise any Liquidated Damage Claim or other claim of Wyndham against the Debtor, Guarantor or any other person/entity.
>
> The Debtor is authorized to execute an amendment to the Franchise Agreement reflecting these terms.

WHEREFORE, the Debtor prays for an Order of Court clarifying the Memorandum Opinion dated November 23, 2010 to be consistent with the intention of the parties that only Liquidated Damages but not the Development Incentive Loan be deemed subordinated as set forth above.

Respectfully submitted,
Rudov & Stein, P.C.

***/s/ David K. Rudov***
David K. Rudov, Esq.
drudov@rudovstein.com
Pa. I.D. # 35579

100 First Avenue, Suite 500
First & Market Building
Pittsburgh, PA 15222
Tel: 412-281-7300

AND

***/s/ Scott M. Hare***
Scott M. Hare, Esquire
scott@scottlawpgh.com
Pa. I.D. # 63818

1806 Frick Building
437 Grant Street
Pittsburgh, PA  15219
Tel: 412-338-8632

December 7, 2010