# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Chapter 11 |
| SHUBH HOTELS PITTSBURGH, LLC, | Case No. 10-26337-JAD |
| Debtor. | Judge Jeffrey A. Deller |
| SHUBH HOTELS PITTSBURGH, LLC, | |
| Movant, | Docket No. _____ |
| v. | Related to Docket No. 544 |
| CARBON CAPITAL II REAL ESTATE CDO 2005-1, LTD. and BLACKROCK FINANCIAL MANAGEMENT, INC., as sub-special servicer to CARBON CAPITAL II REAL ESTATE CDO 2005-1, LTD.'s special servicer, MIDLAND LOAN SERVICES, INC., | |
| Respondents. | |

**AMENDED RESPONSE TO DEBTOR'S MOTION TO COMPEL MEDIATION
PURSUANT TO BANKRUPTCY COURT GENERAL COURT PROCEDURE RULE #4**

Carbon Capital II Real Estate CDO 2005-1, Ltd. and BlackRock Financial Management, Inc., as sub-special servicer to Carbon Capital II Real Estate CDO 2005-1, Ltd.'s special servicer, Midland Loan Services, Inc. (together, the "Lender"), by and through their undersigned counsel, hereby respond to the Debtor's Motion to Compel Mediation Pursuant to Bankruptcy Court General Court Procedure Rule #4 (the "Motion"), and in support thereof, state as follows:

1. Under normal circumstances, the Lender would be amenable to and even welcome the opportunity to amicably resolve its disputes through a form of alternative dispute resolution. Unfortunately, however, these are not normal circumstances. The Court itself

observed at the November 4, 2010 hearing that it has never seen this level of animosity between parties. Due to the considerable lack of trust and animus between the parties, which has only deepened since the commencement of the case, any effort at an amicable solution involving ownership by Dr. Patel is futile. In fact, it is difficult to imagine any universal resolution that does not eliminate one of the parties from the equation entirely; the level of mistrust simply precludes any continuing business relationship.

2. In opposing the Debtor's request for mediation, the Lender does not intend to be obstructive, only realistic. The Lender requests that the Court acknowledge the unusual level of mistrust and animosity in this case and its likely toxic effect on any mediation effort.

3. The Court's mediation procedures are governed by General Court Procedure No. 4 ("GCP No. 4"), located in the Court Procedures Manual of the United States Bankruptcy Court for the Western District of Pennsylvania. See LR 9019-2.

4. Under GCP No. 4, the Court's ability to order mediation is discretionary. Section 2.0 states that the Court "*may* assign any matter deemed relevant to the Mediation Program *sua sponte*, upon written stipulation of the parties to the matter, or on motion of a party to the matter or the U.S. Trustee." See GCP No. 4 at § 2.0 (emphasis added). Among other things, the purpose of mediation is to "reduce delay, cost, stress, and other burdens often associated with litigation." See GCP No. 4 at § 1.0.

5. The Lender believes that mediation is inappropriate in this case because the results of such effort will be contrary to the purposes of the Mediation Program. Indeed, given the current environment surrounding this case, any effort at mediation is futile and will only serve to unnecessarily increase the costs and expenses of the parties. The Lender requests

US_ACTIVE-105156914.7

that the Court weigh the low likelihood of success of mediation with the costs, expenses, and delay associated with the process, and deny the Motion.

6. The likelihood that the parties will reach a universal settlement agreement through mediation is low. On prior occasions, the parties attempted amicable settlement negotiations, but to no avail.

7. The source of the Lender's lack of trust and animus towards the Debtor, and its agents and insiders (collectively, the "Debtor Parties"), is the Debtor Parties' history of complete disregard for the promises they made to the Lender under the loan documents. The Debtor Parties repeatedly have breached their agreements, made material misrepresentations to the Lender, misused funds of the Debtor that consisted of the Lender's collateral, acted outside the scope of the loan documents, and engaged in activities that expressly require the Lender's prior written consent, without obtaining that consent.

8. Prior to the Debtor's bankruptcy case, the Debtor was in constant and serious default under the loan documents, evidence of which has been offered in the Trial that was conducted before this Court.

9. Post-petition, the Debtor continued to ignore its obligations under the loan documents. Specifically, on September 21, 2010, the Debtor's members sold their equity interest to Pittsburgh Grand, LLC and Dr. Patel and have effected a change in control of the Debtor's ownership without the Lender's consent. Additionally and prior to the appointment of the Examiner, the Debtor was mismanaged and would not produce even the simplest accountings with any clarity. While the Debtor had to obtain post-petition financing, Patel's "Asset Manager" – Frank Amedia is being paid a handsome fee from the estate assets; so is Mr. Amedia's two daughters – neither of whom live in Pennsylvania- and now the Debtor wants to

US_ACTIVE-105156914.7

pay Mr. Amedia's "construction company- MAC Construction" for Mr. Amedia to "oversee the construction."[1] It appears that Prism insiders may have convinced the Debtor to add a relative of David Martin of Prism to the Hotel payroll, but the Lender has not received confirmation of the same. The Debtor is well aware that during the first week of September, 2010, that more than $170,000 was taken from the Lender's account, and transferred to the Union Account, and then transferred to Jonathan Kamin, Dr. Patel, and Lalawani/Black Diamond, but the Debtor has not sought to recover any portion of this – other than "holding a check from Jonathan Kamin in the amount of $50,000." Additional sums were distributed by the Debtor Parties to Lalwani on the day of the filing of the Petition. While Dr. Patel has filed one lawsuit against the Lender (the adversary action pending in this Court) and has funded a second (the "Bisaria v. BlackRock" pending in Florida) (collectively – the "Patel Lawsuits against the Lender"), no action has been taken to recover any of the millions of dollars wrongfully taken from the Debtor and/or the Lender's collateral, and wrongfully distributed to Lalwani, Kamin, Patel and others who wrongfully received distributions. Similarly, after winning the Court's approval for entering into the Wyndham Franchise Agreement over the Lender's objection, the Debtor Parties failed to "access" the subordinated Wyndham loan – a key part of the Wyndham Franchise Agreement and the Court's Opinion approving the Wyndham Franchise Agreement, because – according to the Examiner - Patel did not want to guaranty the Wyndham loan- contrary to the Wyndham Franchise Agreement as approved by the Court.

10. As a result of the Debtor's pre- and post-petition defaults and the level of mistrust that these defaults created, the Lender filed its motion for relief from stay and request to appoint a trustee. These filings were an acknowledgement by the Lender that it could no longer

---

[1] The Lender reserves all rights to challenge post-petition payments to insiders.

trust the Debtor Parties to comply with the terms of their agreements and, as a result, a continuing business relationship between the parties was unworkable.

11. Since the filing of the motion for relief from stay and request to appoint a trustee, the level of mistrust and animus between the parties has intensified, further decreasing the likelihood of an amicable settlement and successful mediation. Through discovery taken in this case, the Lender found substantial evidence of dishonesty, fraud, misrepresentations, and gross mismanagement. Such conduct is evidenced by, *inter alia*, the following: (i) the blatant disregard of creditor rights prepetition by the misuse of the Lender's collateral and corporate revenues to pay insiders and non-corporate expenses in violation of the loan documents and while concealing the same from the Lender; (ii) the apparent sheer number of actual or potential conflicts of interest among the Debtor and Dr. Patel and other entities Dr. Patel directly or indirectly owns or controls; (iii) the number and magnitude of the inter-company and insider transactions; (iv) the commingling of affairs of the Debtor with affiliated companies/persons; and (v) Dr. Patel's attempt to circumvent the scrutiny of avoidance actions, by the filing of a plan which seeks to shelter all avoidance actions by having the reorganized Debtor take ownership of them free and clear of any claims.[2]

12. The Lender is now aware of the Debtor Parties' dishonest and fraudulent conduct; the Lender has no reason to believe that the Debtor Parties will honor the terms of any potential settlement agreement reached in mediation.

13. Moreover, the Debtor's request for mediation is likely an effort to delay the plan process and hide the fact that it is unable to present a confirmable reorganization plan.

---

[2] Notwithstanding the Debtor's agreement to give the Committee ownership of the avoidance actions, no amended plan has been filed to that effect.

US_ACTIVE-105156914.7

For example, the Debtor's plan provides that creditors will be paid in full over time and that these future payments are backed by letters of credit. Despite the Lender's numerous requests, the Debtor has not identified the issuing banks or the terms and conditions of the letters of credit. If the Debtor is unable to obtain letters of credit, its plan is not feasible or, at least, at high risk of not being feasible. By requesting mediation, the Debtor is merely seeking additional time to obtain the credit it needs to present a confirmable plan.

14. Furthermore, the Debtor Parties have not substantiated the Patel Claim or the alleged post-petition advances by Dr. Patel, even though the Lender requested such support be provided in the discovery that was conducted at Trial, and Dr. Patel allegedly hired a "forensic accountant" to find out "where his money went." Notwithstanding the lack of any evidence on the "Patel Claims" – the Debtor's Mediation request asks that the Patel Claims be the subject of mediation. Furthermore, the Mediation request appears to include the two Patel Lawsuits filed against the Lender, which were filed to be used as "leverage by Patel" against the Lender.

15. In this extraordinarily antagonistic case, the delay, costs, and expenses associated with mediation outweigh the low probability of success. The Lender wishes to emphasize that this response is not intended to obstruct a reasonable avenue to settlement, but rather is intended to underscore the unusually hostile relationship between the parties. The Lender believes that the Debtor Parties intentionally orchestrated fraudulent conduct against the Lender's interests which resulted in damage to the Lender, consequently, substantially undercutting the likelihood that mediation will yield positive results. In light of the parties' relationship, the Lender submits that it is in the best interests of the estate and the creditors to forego a futile mediation effort and allow the adversarial plan process to run its course.

WHEREFORE, the Lender respectfully requests that the Court enter an order denying the Debtor's request to compel mediation.

Dated: December 21, 2010

Respectfully submitted,

REED SMITH LLP

By: */s/ Robert P. Simons*
Robert P. Simons, Esq. (PA I.D. No. 48892)
Amy M. Tonti, Esq. (PA I.D. No. 33468)
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: rsimons@reedsmith.com
Email: atonti@reedsmith.com

*Attorneys for Carbon Capital II Real Estate CDO 2005-1, Ltd. and BlackRock Financial Management, Inc., as sub-special servicer to Carbon Capital II Real Estate CDO 2005-1, Ltd.'s special servicer, Midland Loan Services, Inc.*