# EXHIBIT C-2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: ) | Case No. 10-26337-JAD |
| ) | |
| SHUBH HOTELS PITTSBURGH, LLC, ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | Related Docket Nos. 799 |
| ) | |
| ) | Hearing Date and Time: |
| ) | March 29, 2011 at 10:00am |
| ) | |
| v. ) | Response Date and Time: |
| ) | March 28, 2011 at 4:00pm |
| _____ ) | |

EXHIBIT "A"

TERM SHEET REFELCTING THE RESOLUTION FOR DISPUTES BETWEEN THE
COMMITTEE, CHAPTER 11 TRUSTEE AND PLAN PROPONENT

This term sheet reflects the Committee, Chapter 11 Trustee and Plan Proponent's understanding of the terms and conditions surrounding the resolution of disputes relating to the treatment of the claims of general unsecured creditors under the proposed March 8, 2011 Amended Plan (the "Amended Plan"). As discussed, these terms and conditions are subject to review, modification and approval by the Committee and the Chapter 11 Trustee.

Class 4(a) Treatment

- Class 4(a) will be reclassified as Class 4.

- Class 4 creditors will receive the treatment options for Class 4(a) Claims currently provided in the latest Amended Plan (e.g. the creditors who chose the 100% treatment will be paid in eight equal semi-annual payments). The first semi-annual payment to Allowed Class 4 Claims will be the first day of the calendar month that is 6 months after the Effective Date (e.g., if the Effective Date occurs on May 30, 2011 then the first annual payment date would be December 1, 2011) (the "Annual Payment Date") and the second payment would be due 6 months after the Annual Payment Date (the "Semi-Annual Payment Date"). Thereafter, the balance of the allowed Class 4 claims would be paid in 6 successive equal payments made every six months on the Annual and Semi-Annual Payment Dates. For the avoidance of doubt, while the Reorganized Debtor may pay Allowed Claims from Hotel Cash Flow, the payment obligations are not limited to that source of payment.

- Class 4 will be given a release in the Amended Plan of any avoidance actions.

- By March 28, 2011, the Plan Proponents will provide to the Committee and Chapter 11 Trustee with a schedule of the creditors/claims to be included in Class 4.

- Dr. Patel and his wife will personally guarantee, jointly and severally, the payments for Class 4 creditors that elect the 100% payment paid over 8 semi-annual installments. The Guaranty agreements will need to be in a form and substance satisfactory to the Committee and the Chapter 11 Trustee. In the event of a default in payment to Class 4 allowed claim(s), that is not cured within twenty (20) days of notice to the Guarantors by the Creditor Trust or the defaulted Allowed Class 4 Claimant, the Creditors Trust shall have the right, among other remedies, to prosecute or otherwise enforce the guaranty against Dr. Patel and his wife. Nothing in this term sheet affects or impairs any other rights or remedies available to the Class 4 Claimants or the Creditor Trust on their behalf.
-

3564033-7

Class (4)(b) Treatment

- Class 4(b) will be reclassified as Class 5.

- By March 28, 2011, the Plan Proponents will provide to the Committee and the Chapter 11 Trustee with a schedule of the creditors/claims to be included in Class 5.

- Also by March 28, 2011, the Plan Proponents will provide to the Committee and the Chapter 11 Trustee with a list of the Class 5 claims/creditors whose claims will be objected to by the Plan Proponents prior to the effective date.

- On the effective date of the Amended Plan, the Plan Proponents will pay to the Creditor Trust an amount equal to thirty-five percent (35%) of all non-objected to or otherwise allowed Class 5 claims (which amount the Creditor Trust shall promptly distribute to holders of Allowed Class 5 claims in satisfaction thereof) and $100,000 (the "Initial Trust Funding"). The $100,000 to be used for administrative costs of the Creditor Trust, including but not limited to, the pursuit of avoidance actions.

- The avoidance actions will be assigned to and vest with the Creditor Trust for the sole and exclusive benefit of Class 5 allowed claims. The net proceeds realized from the pursuit of avoidance actions will act to supplement/increase the 35% distribution for Class 5 allowed claims.

- Upon a disputed Class 5 claim being recognized as an Allowed Claim through a settlement or a non-appealable judgment and/or order, the Reorganized Debtor will pay (as provided below) thirty-five percent (35%) of the allowed claim to the respective Class 5 claimant. The Reorganized Debtor shall pay 35% of the allowed amount of the Class 5 claim in two annual installments unless the terms of any settlement provide for different terms regarding payment of the respective allowed Class 5 claim. The term "Annual Installment Date" shall be defined in the Amended Plan. If a disputed claim is resolved, settled or allowed not less than sixty (60) days prior to the Annual Installment Date, the first such installment payment shall be made on the Annual Installment Date in the calendar year that the claim is resolved, settled or allowed. The second and final installment payment will be made on the Annual Installment Date in the following year. If the disputed claim is settled, resolved or allowed within sixty (60) days of the Annual Installment Date then the first such installment payment shall be made on the Annual Installment Date for the following calendar year. The second and final installment payment will be made on the Annual Installment Date in the following year.

- Once all claims disputes have been resolved and paid and all avoidance actions are concluded and/or settled, a final distribution from the net avoidance action proceeds ("Net Avoidance Action Proceeds") will be made by the Creditor Trust on a prorated basis by the holders of allowed Class 5 Claims.

- The Creditor Trust shall have the right and authority to object to the amount and classification of claims.

- Beginning in June 2011 and continuing for 10 months thereafter, the Reorganized Debtor shall make monthly payments in the amount of $20,000 (for a total of $200,000) as a Fixed Expense (as that term is used in the projections/forecasts attached to the Amended Disclosure Statement) to the Claims Reserve for Class 5 Claims. The Claims Reserve shall serve as collateral and an additional funding source for the Reorganized Debtor's obligations to pay allowed Class 5 claims. If the Claims Reserve for Class 5 Claims is reduced below $200,000, then the Reorganized Debtor shall resume making $20,000 monthly deposits into the Claims Reserve for Class 5 until the $200,000 balance is restored. In the event all Class 5 allowed claims have been paid by the Reorganized Debtor and there are no defaults in payments to allowed Class 5 claims, the Claims Reserve will be refunded to the Reorganized Debtor, less any amounts previously paid to allow Class 5 claimants whose payments were in default or otherwise.

- The Amended Plan shall provide that the Bankruptcy Court shall retain jurisdiction until all Class 4 and 5 claims are paid in full.

- The Class 5 claimant whose payment is in default may seek, among other remedies, payment from the Claims Reserve, which may be paid in the discretion of the Creditor Trust. Nothing in this term sheet affects or impairs any other rights or remedies available to the Class 5 Claimants or the Creditor Trust on their behalf.

- The Reorganized Debtor and the Plan Proponents represent and warrant that the Second Amended Loan Documents will provide that a failure to pay when due the allowed claim of a Class 5 creditor that is not timely cured may be declared an Event of Default by the Lender.

- In the event of the Reorganized Debtor defaults in payment to an allowed Class 5 Claimant or fails to fund the Claims Reserve as agreed, and fails to cure such default within 20 days after notice from an Allowed Class 5 Claimant or the Creditor Trust on its behalf (a "Class 5 Event of Default"), any right of Dr. Patel or his agents, representatives, affiliates, designees, etc. to payment from the Reorganized Debtor including but not limited to his participating interest in the Plan Loan and/or Mezzanine Loan shall be subordinated to the Creditor Trust and Class 5 Claimants until the defaulted payments are made in full.

The release given to Dr. Patel and his agents, representatives, affiliates, etc. under the Amended Plan (the "Patel Claims") shall be void and ineffective as against the Class 5 Claimants and the Creditor Trust on their behalf upon the occurrence of a Class 5 Event of Default. Dr. Patel (for himself and on behalf of his agents, representatives, affiliates, etc.) shall enter into a tolling agreement, tolling any and all statute of limitations for any

claims that may be brought until such time as all allowed Class 5 claims are paid in full. Claims and causes of action that may be asserted against Dr. Patel and his agents, representatives, affiliates, etc. shall upon the occurrence of a Class 5 Event of Default be assigned to and vest with the Creditor Trust to be prosecuted to recover up to 100% of the Allowed Class 5 Claims and the fees and costs of collecting the Patel Claims.

- Upon the occurrence of a Class 5 Event of Default and in the discretion of the Trustee of Creditor Trust, any net recovery from other avoidance actions may be used to fund litigation costs and expenses to pursue the Patel Claims.