# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 10-26337-JAD |
| SHUBH HOTELS PITTSBURGH, LLC, | Chapter 11 |
| Debtor. | Honorable Jeffery A. Deller |

## CONFIRMATION DECLARATION OF DR. KIRAN C. PATEL IN CONNECTION WITH THE MODIFIED SECOND AMENDED PLAN OF REORGANIZATION DATED APRIL 6, 2011

Dr. Kiran C. Patel, as the principal of Pittsburgh Grand, LLC (an equity holder of Shubh Hotel Pittsburgh, LLC; the "Debtor") and on behalf of myself and Pittsburgh Grand, LLC (the "Plan Proponents")[1], being duly sworn, hereby declares and says:

1. My name is Dr. Kiran C. Patel. I am over 21 years of age and fully competent to make this declaration. Unless otherwise stated, I have personal knowledge of the facts set forth in this affidavit.

2. I make this declaration in support of the confirmation of the Modified Second Amended Plan of Reorganization dated April 6, 2011 (Doc. No. 927), as supplemented by the Plan Supplements filed on April 27, 2011 (Doc. No. 1055), April 29, 2011 (Doc No. 1062) and May 6, 2011 (Doc. No. 1101)(the "Plan" or the "Amended Plan").

3. The Debtor is a Florida Limited Liability Company. The original members of the Debtor were affiliates of Atul Bisaria ("Bisaria"). After the Petition Date, and without Lender approval, on September 21, 2010, the members of the Debtor transferred one hundred percent (100%) of their membership interests so that Pittsburgh Grand LLC, a Florida limited liability company ("PG"), owns 99% of the Debtor's equity and Pittsburgh Grand Manager, LLC, a Delaware limited liability company ("PGM"), owns the remaining 1% and serves as the Debtor's

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed such terms in the Plan.

Manager. I own PG and PGM. Because of Bisaria's equity transfer, I presently hold one hundred percent (100%) of the membership interests in the Debtor. Following the transfer, Bisaria has had no role going forward with the Debtor's operations or the Amended Plan.

4. The Debtor owns and operates the largest hotel in the City of Pittsburgh (the "Hotel"), with more than 700 guest rooms and approximately 40,000 square feet of meeting space. Hilton Hotels International ("Hilton") owned and operated the Hotel until May 22, 2006, when it was sold to the Debtor for approximately twenty-eight million dollars ($28,000,000). After the sale, the new owners still maintained the Hilton flag through a franchise arrangement. Toward the end of their ownership of the Hotel, the Plan Proponents allege Hilton stopped investing in the property, and allowed the Hotel to deteriorate substantially below their franchise standards. By the time of the sale, the Hotel required a substantially expensive and elaborate renovation (including structural improvements to all of the Hotel rooms) to bring the Hotel up to Hilton brand standards. The Debtor financed the acquisition of the Hotel, in part, from the predecessor in interest to the Debtor's present lender, Column Financial, Inc. ("CFI"), through an acquisition and construction loan of $49.6 million (the "Loan").

5. Carbon Capital II Real Estate CDO 2005-1 Ltd., a Cayman Islands exempted company ("Lender" or "Carbon Capital") acquired a first lien on, and security interest in, substantially all of the Debtor's real and personal assets to secure repayment of the Loan. On September 15, 2010, Carbon Capital filed a Proof of Claim (Claim No. 3-1), as amended on February 1, 2011 (Claim No. 3-3). Lender asserts its Class 1 Claim, as of March 2011, has an aggregate value of between approximately $56.4 million and $60 million, consisting of at least $49.6 million in principal, more than $4.6 million in accrued and unpaid interest at the default rate provided under the Loan Documents, plus more than $2.2 million in fees and costs incurred by Lender in enforcing its rights and remedies under the Loan Documents as a result of the

Debtor's defaults thereunder, with interest at the default rate, fees, and costs continuing to accrue thereafter (subject to the Settlement Order). In connection with and subject to the Settlement and the Settlement Order, and upon the Bankruptcy Court's approval of the Disclosure Statement, Lender holds an Allowed Class 1 Claim in the amount equal to the aggregate of: (a) the $49.6 million principal balance, (b) at least $2.3 million of accrued and accruing default interest (subject to the Settlement Order), and (c) subject to the Settlement Order, reasonable fees, costs and charges incurred by the Lender or provided under the Loan Documents and allowable under 11 U.S.C. §506(b).

6. On September 7, 2010 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

7. The Bankruptcy Case began very contentiously, but diligent work on all sides has produced a resolution of the majority of the disputes as more fully described in the Disclosure Statement and the Amended Plan. Significantly, after much litigation and many disputes, the Plan Proponents reached a settlement with BlackRock and Carbon Capital, (the "Settlement") which is set forth in the Term Sheet dated February 25, 2011 (the "Term Sheet") as modified by the Settlement Order. The Settlement, *inter alia,* proposes a consensual resolution of the claims asserted by Carbon Capital, the Debtor and the Plan Proponents against one another and provides for releases of all claims and litigation relating thereto, assuming all parties are in full compliance with the terms of the Settlement and the Plan Support Agreement contemplated by the Term Sheet. Pursuant to a motion brought by the Plan Proponents and the Lender, the Bankruptcy Court approved the Settlement on March 29, 2011, (the "Settlement Order"). In addition, on March 28, 2011, the Plan Proponents concluded certain negotiations and reached certain agreements with the General Unsecured Creditors Committee (the "Committee") and Chapter 11 Trustee relating to the treatment of Classes 4 and 5 under the Amended Plan and

related matters, and a summary of those terms is contained in a term sheet attached to the Disclosure Statement (the "Committee Term Sheet").

8. Additionally, the Plan Proponents have reached settlements and resolved issues with respect to the majority of the various union claims. These settlements reflect agreements as to the amounts of claims, the treatment of the claims and will allow the union members to receive payments under the Plan, including significant payments on the Effective Date of the Plan.

9. On April 6, 2011, the Plan Proponents filed their Modified Amended Disclosure Statement (Doc. No.. 929) and the Amended Plan. The Disclosure Statement was approved on April 8, 2011 (Doc. No.. 934).

10. Under the Amended Plan, the Plan Proponents will receive 100% of the Reorganized Debtor's equity. The Amended Plan contemplates substantial payments on or about the Effective Date, including without limitation the $10+ million Settlement Payment to Lender, payment of Allowed Administrative Expenses, and payments due on the Effective Date to Classes 2, 3, 4 and 5. The Plan Proponents (and Wyndham) will finance these payments by a combination of the Plan Loan (as provided in the Term Sheet), up to the amount required to consummate the Amended Plan but not exceeding $11 million, to be secured by a junior lien on the Hotel, and payable (subject to the Subordination Agreement) interest only until the Amended Loan is paid in full or the Lender otherwise consents) and the Mezzanine Loan (as provided in the Term Sheet and the Pre-Petition Credit Agreement, up to $6 million, funded and repaid on a revolving basis). The Plan Loan and the Mezzanine Loan will each bear interest at 10% per annum, payable annually after every Annual Payment Date to Allowed Claims in Class 4 (i.e., after the second, fourth, sixth and last such distribution) and thereafter on the anniversaries of the Effective Date until the Plan Loan and the Mezzanine Loan are paid in full (a "Loan Payment

Date"). The Emergence Financing shall mature when the Class 1 Claim matures. Hotel Cash Flow (remaining after the Distribution to Allowed Claims) on such Loan Payment Dates will be applied first to pay accrued interest on the Plan Loan and then to pay accrued interest on the Mezzanine Loan (with any remaining Cash Flow after such application being available to pay customary tax distributions and principal on the Mezzanine Loan). Any accrued interest on the Plan Loan and/or Mezzanine Loan that exceeds the Cash Flow available to pay same will remain accrued and become payable at the next succeeding Loan Payment Date (or upon the maturity or acceleration of the Plan Loan and/or Mezzanine Loan). The Plan Proponents, myself and my wife will also provide Guarantees to Lender for $3 million (declining by $1 million a year over 3 years) and for the lien-free completion of the pending construction of the pending Hotel improvements. I and my wife will also personally guaranty the eight (8) semi-annual payments in respect of the Class 4 Claims, which Class 4 Guaranty shall be subordinate to each Class 1 Guaranty in favor of Lender upon the occurrence of an Event of Default under the Second Amended Loan Documents, in which event no payments under or in connection with the Class 4 Guaranty shall be made unless and until each Class 1 Guaranty has been honored, paid, released or terminated. Upon the occurrence of a Class 5 Event of Default, any participation interest and right to payment that I or my affiliates, representatives or agents holds in the Emergence Financing shall be subordinated to the Allowed Claims of Class 5 and the Creditor Trust (on behalf of the Allowed Claims of Class 5) until the defaulted payments are made in full and the release of the Patel Claims becomes void. Additionally, and not by way of limitation, under the Mezzanine Loan will fund from Wyndham to Pittsburgh Grand Hotel Manager, LLC (managing member of the Reorganized Debtor) and Pittsburgh Grand Hotel Member, LLC (a member of the Reorganized Debtor). The loan will fund $5,800,000 at the closing on the Effective Date and $200,000 paid over time to fund the Class 5 Claim Reserve. Repayment of the Mezzanine Loan

will be based upon a formula calculated by, and a function of, the Excess Cash Flow of the Reorganized Debtor; and be collateralized by, among other things, a Junior Pledge Agreement on the Member Equity. Dr. Patel will hold the equity in the Reorganized Debtor through Pittsburgh Grand Hotel Manager, LLC and Pittsburgh Grand Hotel Member, LLC, which will contribute the $6,000,000 to the Reorganized Debtor as a capital/equity infusion. This value, all by itself, is new, substantial, in money or money's worth, necessary for debtor's successful reorganization, and reasonably equivalent to value or equity interest received.

11. With respect to the deferred Plan payments, now that the Bankruptcy Court has approved the execution of a franchise agreement with Wyndham to flag the Hotel as a Wyndham Grand, Wyndham has committed substantial capital to the Hotel and agreed to serve as its Manager after the Effective Date, the Debtor's ability to fund the claims payments from the Hotel's cash flow is further assured. The flag of a hotel, especially a hotel that caters to conferences and other organized events, has a direct and significant effect on its cash stream. The financial projections for the Hotel's cash flow during the next four years provide more than reasonable assurances that the Hotel will generate sufficient profits to pay all the Classes according to the Plan terms.

12. Payments to be made on and after the Effective Date, including any payments to be made into the Disputed Claim Reserve for all Classes and the Class 5 Reserve Fund shall be made by the Plan Proponents or the Reorganized Debtor.

13. **<u>Post-Confirmation Operations of the Debtor</u>**. The Reorganized Debtor plans to operate the Hotel immediately after the Effective Date of the Plan under the management and operational control of Wyndham. I will not receive any salary from the Reorganized Debtor, or any dividends or distributions from the Reorganized Debtor (other than in respect of my participating interest in the Emergence Financing and customary tax distributions) until all Class

2, 3, 4 and 5 Allowed Claims are paid in full to the extent provided in the Amended Plan, and Disputed Claims in those Classes are resolved. Other than in respect of the participating interest in the Emergence Financing and customary tax distributions, neither I or any of my affiliates, including relatives, will receive any salary or other payments from the Reorganized Debtor except on arm's length competitive terms consistent with the Second Amended Loan Documents until all Class 2, 3, 4 and 5 Allowed Claims are paid in full, to the extent provided in the Amended Plan, and Disputed Claims in those Classes are resolved.

14. As a Plan Proponent, I am familiar with the business, operations, assets and books and records of the Debtor and the terms of the Amended Plan.

15. I am also familiar with and have participated in the negotiations leading to, and the terms and conditions of, the Term Sheet, the Committee Term Sheet and the Disclosure Statement, the Amended Plan and Disclosure Statement, and the documents related thereto.

16. The Plan includes the following principal features:

| | |
|---|---|
| **17. UNCLASSIFIED CLAIMS** | **Unimpaired** |
| **Administrative Expense Claims**<br><br>**Administrative Expense Claims, including Allowed Cure Claims** | Unless otherwise agreed to by the holder of an Allowed Administrative Expense Claim or as otherwise expressly provided for in the Amended Plan, each holder of an Allowed Administrative Expense Claim (including Professional Compensation Claims addressed below) will receive in full and final satisfaction of its Administrative Expense Claim an amount of Cash equal to the amount of such Allowed Administrative Expense Claim either: (a) in Cash on the Effective Date, (b) in the ordinary course following the Effective Date for claims arising in the ordinary course, or (c) if the Administrative Expense Claim is not Allowed as of the Effective Date, within thirty (30) days after the date on which an order Allowing such Administrative Expense Claim becomes a Final Order, or as soon as reasonably practicable thereafter; provided however, that Allowed Administrative Expense Claims representing post-petition liabilities incurred by the Debtor in the ordinary course of business which are not materially past due shall be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any related agreements. Receipt of the amount of the Allowed Administrative Expense Claim by a holder of such Claim as provided for in the Amended Plan shall constitute full satisfaction, settlement, release, extinguishment, and discharge of such Allowed Administrative Expense Claim as of the date paid.<br><br>Estimated Amount: less than $1,100,000<br><br>Estimated Recovery: 100% |
| **DIP Loan** | Must be paid in full on or prior to the Effective Date**.** The DIP Loan shall be repaid pursuant to the terms of the DIP Order, and if outstanding on the Effective Date, pursuant to the Amended Plan, Settlement, Settlement Order, and the Term Sheet. |
| **Professional Compensation** | All Professionals that have been retained pursuant to |

| | |
|---|---|
| **Claims, Exclusive of Lender Professional Claims.** | Court orders seeking Bankruptcy Court approval of Professional Compensation (including fees and expenses) incurred through and including the Effective Date, must file, where applicable, their respective final applications for allowance of Professional Compensation within thirty (30) days following the Effective Date; and Allowed Professional Compensation Claims shall be paid when the Order allowing and approving the same becomes a Final Order. All rights to object to any Final Fee Applications are hereby reserved by the Plan Proponents and the Lender.<br>Total estimated Allowed Administrative Expense Claims (including Professional Compensation Claims) are not expected to exceed $1,100,000. The Plan Proponents will produce at the confirmation hearing on the Amended Plan, evidence of adequate availability under the Emergence Financing, or other sources, sufficient to pay Allowed Administrative Expense Claims (including Professional Compensation Claims) in full when due.<br><br>Recovery: 100% |
| **Priority Tax Claims** | Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agreed to other treatment, Allowed Priority Tax Claims will be paid in full in Cash, including statutory interest by the Reorganized Debtor in equal monthly installments commencing in the first full month following the Effective Date such that Allowed Priority Tax Claims will be paid in no more than sixty (60) months from the Effective Date. The Reorganized Debtor may, in its sole discretion, at any time, pre-pay Allowed Priority Tax Claims. Any tax claims which are presently secured by the Hotel or Collateral shall be treated as Class 2 Secured Claims and shall be paid in full on the Effective Date or, if they are Disputed, the full amount of the asserted Class 2 Secured Claim shall be deposited in the Disputed Claim Reserve on the Effective Date and held until such time as the claim is Allowed and thereafter paid from the Disputed Claim Reserve by the Reorganized Debtor. No liens shall remain attached to the Hotel or the Lender's Collateral with respect to these claims and any such liens on the Hotel or Collateral shall be |

| | |
|---|---|
| | extinguished, with such liens attaching solely to the amounts deposited in the Disputed Claim Reserve.<br><br>Total Estimated Allowed Priority Tax Claims are not expected to exceed $366,000.<br><br>Recovery: 100% |
| **U. S. Trustee Fees** | All fees payable in the Case under 28 U.S.C. § 1930, if and to the extent due, or as otherwise determined by the Bankruptcy Court, will, if not previously paid, be paid in full in Cash on the Effective Date and will continue to be paid by the Reorganized Debtor as required under 28 U.S.C. § 1930 until such time as an order is entered by the Bankruptcy Court closing the Case; provided that if, after the second anniversary of the Effective Date, the holder of the Class 1 Claim desires to keep the Case open, Lender agrees to reimburse the Reorganized Debtor for such fees thereafter incurred until such time as the Lender requests that the Case be closed.<br><br>Total Estimated Allowed Claims for US Trustee Fees are not expected to exceed $20,000<br><br>Recovery: 100% |
| **CLASSIFIED CLAIMS** | |
| <u>Class 1</u> | <u>**Impaired**</u> |
| **Senior Secured Claims- Pre-Petition Credit Agreement** | The Class 1 Claim shall be an Allowed and fully Secured Claim in its entirety, including all professional fees and accrued and accruing default interest (subject to the Settlement Order). The Class 1 Claim shall be reinstated as amended under the terms of the Settlement, the Term Sheet, and the Second Amended Loan Documents, including the payment on account of the Class 1 Claim by a portion of the Settlement Payment required to be made on the Effective Date. Class 1 Claim shall retain its first priority mortgage on the Hotel and first liens on other Collateral after the Effective Date. |
| <u>Class 2</u> | <u>**Unimpaired**</u> |
| **Other Secured Claims** | Holders of Class 2 Claims consist of holders of |

| | Allowed Secured Claims other than the Secured Claims of the Lender.  In full and final satisfaction, settlement, release, extinguishment of liens and discharge of Allowed Class 2 Claims, and except to the extent holders of Allowed Class 2 Claims agree to different treatment, on the Effective Date, the holders of Allowed Class 2 Claims shall be paid the full amount of their Allowed Class 2 Secured Claim. If a Class 2 Claim is Disputed, then the full amount of the asserted Class 2 Claim shall be deposited in the Disputed Claim Reserve on the Effective Date and held until such time as the claim is Allowed and thereafter paid from the Disputed Claim Reserve by the Reorganized Debtor.  No liens shall remain attached to the Hotel or the Lender's Collateral with respect to these claims and any such liens on the Hotel or Collateral shall be extinguished, with such liens attaching solely to the proceeds deposited in the Disputed Claim Reserve.

Total estimated Allowed Class 2 Claims are not expected to exceed $750,000

Estimated Recovery: 100% |
|---|---|

| Class 3 | **Impaired** |
|---|---|
| **Priority Claims** | Holders of Class 3 Claims consist of holders of Allowed Priority Claims, excluding Allowed Priority Tax Claims, and shall be paid ninety percent (90%) of the amount of their Allowed Claim on the Effective Date (or such later date on which their claims become Allowed) and the balance, with interest at Prime Rate, on the first Semi- Annual Payment Date for Allowed claims in Class 4 thereafter. If a Class 3 Claim is Disputed, then on the Effective Date, ninety percent (90%) of the amount of such Disputed Class 3 Claim shall be deposited in the Disputed Claim Reserve and held until such time as the claim is Allowed and thereafter paid by the Reorganized Debtor from the Disputed Claim Reserve. If any Class 3 Claim is still disputed on the first Semi-Annual Payment Date for Allowed claims in Class 4, then the remaining ten percent (10%) shall also be deposited in the Disputed Claim Reserve and held until such time as the claim is Allowed and thereafter paid by the Reorganized Debtor from the Disputed Claim Reserve<br>Total estimated Allowed Class 3 Claims are not expected to exceed $1 Million<br><br>Estimated Recovery: 100% of principal |
| **Class 4** | **Impaired** |
| **General Unsecured Claims For Creditors Necessary to the Continued Operations of the Reorganized Debtor** | Class 4 Claims consist of holders of Allowed Claims of Creditors Necessary to the Continued Operations of the Reorganized Debtor, are identified on Exhibit D, and shall be paid as follows:<br><br>(1) Holders of Allowed Claims in this Class may elect to receive a lump sum payment on the Effective Date representing 35% of their Allowed Claim in full and final satisfaction of their Allowed Claim. Holders of Claims in this Class that become Allowed after the Effective Date also may elect to receive a 35% lump sum payment on the next Class 4 Payment Date in full and final satisfaction of their Allowed Claim; or<br><br>(2) 100% of Allowed Claim, with interest from the Effective Date until paid, at Prime Rate. Payable in |

|  | eight semi-annual installments (on the Class 4 Payment Dates) until paid in full from the Hotel Cash Flow, draws on the Emergence Financing or otherwise by the Reorganized Debtor and personally guaranteed by Dr. Patel and his wife, Dr. Palllavi Patel, which Class 4 Guaranty shall be subordinate to each Class 1 Guaranty in favor of Lender upon the occurrence of an Event of Default under the Second Amended Loan Documents, in which event no payments under or in connection with the Class 4 Guaranty shall be made unless and until each Class 1 Guaranty has been honored, paid, released or terminated. |
|---|---|
|  | If a Class 4 Claim is Disputed, then on any date (after the Effective Date) on which Distributions shall be made to the Allowed Class 4 Claims, the amount of Distributions to which such claim would be entitled if it were Allowed at such time shall be deposited in the Disputed Claim Reserve and held until such time as the claim is Allowed and thereafter paid by the Reorganized Debtor from the Disputed Claim Reserve. If any Class 4 Claim is still disputed on the succeeding Class 4 Payment Dates, then the additional payments due on such Class 4 Payment Date shall also be deposited in the Disputed Claim Reserve and held until such time as the claim is Allowed and thereafter paid by the Reorganized Debtor. |
|  | Class 4 Claims shall not receive any proceeds of Avoidance Actions, and shall not be liable for any Avoidance Actions. |
|  | Total estimated Allowed Class 4 Claims not expected to exceed $2.9 Million[2]. |
|  | Estimated Recovery: 100% for those not electing the 35% Effective Date payment option. |
|  | **This is a summary of the Class 4 treatment only. Please refer to Article IV, Section 5(d) for a more detailed description of the treatment of Class 4 Claims.** |

---

[2] This includes the payment with respect to the unsecured (and non-priority) portion of presently asserted priority wage and benefit claims. These claims will be treated as Class 4 claims.

PT1 524336v1 05/10/11    13

| | |
|---|---|
| **Class 5** | **Impaired** |
| **General Unsecured Claims For Creditors That Are Not Necessary to the Continued Operations of the Reorganized Debtor** | Class 5 Claims consist of the holders of Allowed Claims of Creditors Not Necessary for the Continued Operations of the Reorganized Debtor, and include all general unsecured claimants not set forth in Exhibit D, including those identified on Exhibit E. These claims shall be paid as follows:<br><br>(1) Holders of Allowed Claims in this Class as of the Effective Date shall receive a lump sum payment on the Effective Date representing 35% of their Allowed Claim in full and final satisfaction of their Allowed Claim; or<br><br>(2) Holders of Disputed Class 5 Claims that become Allowed after the Effective Date shall receive 35% of Allowed Claim, Payable in Two Equal Annual Installments, the first of which shall be paid on the Annual Payment Date that first occurs at least 60 days after the Claim becomes Allowed, and the second of which shall be paid at the next succeeding Annual Payment Date. Payments to Allowed Class 5 Claimants shall be made subject to the provisions of the Bankruptcy Code relating to distributions to creditors that have received avoidable transfers from the Debtor.<br><br>In addition, on the Effective Date, the Plan Proponents will fund $100,000 to the Creditor Trust, for administrative expenses, and assign to the Creditor Trust rights to recover Avoidance Actions (other than transfers to creditors in Class 4, and other avoidance claims which are otherwise released pursuant to the Amended Plan). Allowed Claims in Class 5 will also be entitled to the Net Avoidance Actions Recoveries, distributable by the Creditor Trust to Allowed Class 5 Claims, pro rata, after all objections to Class 5 Claims have been resolved.<br><br>Total estimated Allowed Class 5 Claims, after giving effect to objections and counterclaims, are not expected to exceed $5 Million.<br><br>Estimated Recovery: 35% plus a Pro Rata share of the aggregate net proceeds of Avoidance Actions. |

| | |
|---|---|
| **Creditor Trust to Pay Proceeds of Avoidance Actions to Class 5 Claims** | A Creditor Trust will be created as set forth in the Amended Plan. On the Effective Date, the Creditor Trust will be funded with $100,000 from the Plan Proponents to fund legal and other administrative expenses of the Creditor Trust. Additionally, and as more fully described herein, the Creditor Trust will be assigned, receive and administer Avoidance Actions, which proceeds shall be utilized to make further payments by the Creditor Trust to the holders of Allowed Class 5 Claims, pro rata. |
| <u>**Class 6**</u> | <u>**Impaired**</u> |
| **Subordinated Unsecured Claims** | Class 6 consists of any Subordinated Unsecured Claims asserted by Dr. Patel, which Dr. Patel has asserted in the amount of $3.9 million and which the Lender, Creditor Trust, Committee or other parties can challenge. Dr. Patel and the Plan Proponents or their designees shall receive nothing for this asserted Claim, but shall receive 100% of the Reorganized Debtor's equity, in consideration of, among other things, their agreement to extinguish the asserted Class 6 Claim, and their provision of funding and Guarantees on the Effective Date in accordance with the Committee Term Sheet and the Settlement and the Term Sheet with respect to BlackRock. |

| | |
|---|---|
| <u>**Class 7**</u> | <u>**Impaired**</u> |
| <u>**Equity**</u> | All parties that hold or assert an equity interest in the Debtor, including but not limited to the Plan Proponents or their designees, shall receive nothing for their Interests, but Dr. Patel's designee shall receive 100% of the Reorganized Debtor's equity, in consideration of the Plan Proponents' provision of funding and Guarantees on the Effective Date in accordance with the Committee Term Sheet and the Settlement and the Term Sheet with respect to BlackRock. The funding and consideration that Dr. Patel provides in connection with consummation of the Amended Plan includes (a) guaranty of up to $2.9MM of Class 4 Claims, (b) guaranty of Lender of up to $3MM, (c) guaranty/indemnity of Lender against Third Party Releasor Claims, and for certain costs of completing the pending improvements in the Hotel, (d) guaranty of certain obligations to |

| | Wyndham, and (e) agreement to void his release regarding Avoidance Actions and subordinate his participation interest in the Emergence Financing upon a Class 5 Event of Default. |
|---|---|

## Liquidation Analysis

18. The Plan Proponents believe that the Distributions under the Plan will provide Creditors of the Debtor a greater recovery on account of Allowed Claims then would Distributions by a Chapter 7 trustee. The Liquidation Value of the debtor's assets available to general creditors would be reduced by the costs and expenses of the liquidation, as well as other administrative expenses of the Chapter 7 case. The costs of liquidation under Chapter 7 would include the compensation of a trustee or trustees, as well as counsel and other professionals retained by the trustee, disposition expenses, all unpaid expenses incurred by the debtor during its chapter 11 proceeding (such as compensation for attorneys and accountants) that are allowed in a Chapter 7 proceeding, and litigation costs and claims against the debtor arising from its business operations during the pendency of the Chapter 11 case and Chapter 7 liquidation proceedings. These costs, expenses and claims would be paid in full out of the debtor's liquidation proceeds before the balance would be made available to pay general unsecured claims or to make any distribution in respect of equity interests.

19. Once the percentage recoveries in liquidation of secured claimants, priority claimants, general unsecured creditors and equity security holders are ascertained, the value of the distribution available out of the Liquidation Value is compared with the value of the property offered to each of the classes of claims and interests under the plan to determine whether the plan is in the best interests of each class.

**Feasibility**

20. Section 1129(a)(11) of the Bankruptcy Code requires that the Reorganized Debtor and the Plan Proponents to be able to perform its obligations under the Plan. For the purposes of determining whether the Plan meets this requirement, I analyzed the Reorganized Debtor's ability to meet their obligations under the Plan based upon the settlement with BlackRock, the Committee Term Sheet and the post-bankruptcy operations through the new Wyndham arrangement. I believe that the Reorganized Debtor will have adequate funding to be able to meet the obligations under the Plan.

21. The necessary funds as set forth on the Plan Proponents Report have been posted or will be posted to make the initial distributions under the Plan.

**The Plan Meets the Requirements of 11 U.S.C. § 1129**

22. To the best of my knowledge, information and belief, the Amended Plan and the Plan Proponents have complied with the provisions of the Bankruptcy Code and the Amended Plan has been proposed in good faith and not by any means forbidden by law.

23. To the best of my knowledge, information and belief, any payment made or to be made by the Plan Proponents and/or the Reorganized Debtor, for services or for costs and expenses in or in connection with the case, or in connection with the Amended Plan and incident to the case, besides payments made by the Debtor in the ordinary course of business, have been approved by, or are subject to, the approval of the Court as reasonable.

24. Jeff Granger of Focus Management will serve as Disbursing Agent with respect to all Distributions to Holders of Class 2, 3, 4 and 5 Claims and will make all Distributions required to be made under the applicable provisions of the Plan. The Disbursing Agent will receive reasonable fees for his services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services.

25. The Amended Plan has discloses that no insiders shall receive any payments from the Reorganized Debtor, until the payments under the Plan have been made, except for tax related payments.

26. To the best of my knowledge, information and belief, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has either accepted the Plan or will receive or retain, under the Plan on account of such claim or interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would so receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

27. The Plan divides creditors and equity security holders into seven classes. Creditors in Class 2 are unimpaired, while Classes 1, 3, 4, 5, 6 and 7 are impaired. At least one impaired Class has accepted the Plan, excluding the votes of insiders.

28. To the best of my knowledge, information and belief, the confirmation of the Plan is not likely to be followed by any further liquidation or the need for further financial reorganization of the Debtor under the Plan.

29. The Plan provides for payment in full of all fees payable under 28 U.S.C. § 1930. To the extent any fees remain due and owing, they will be paid upon the Effective Date.

30. All payments to be made for contribution to a benefit plans will be made.

31. The Plan is fair and equitable with respect to all classes of creditors.

Based upon the foregoing, I submit that the Plan satisfies all of the requirements of the Bankruptcy Code and the Plan should be confirmed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 10, 2011     *s/ Kiran C. Patel*
                                                  Dr. Kiran C. Patel